TRACY L. WILKISON
Acting United States Attorney
CHRISTOPHER D. GRIGG
Assistant United States Attorney
Chief, National Security Division
MARK TAKLA (Cal. Bar No. 218111)
Assistant United States Attorney
Terrorism Export Crimes Section
    8000 United States Courthouse
    411 West Fourth Street
    Santa Ana, California 92701
    Telephone: (714) 338-3591
    Facsimile: (714) 338-3561
    E-mail: mark.takla@usdoj.gov
CHRISTINE M. RO (Cal. Bar No. 285401)
Assistant United States Attorney
Terrorism Export Crimes Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-4496
    Facsimile: (213) 894-2927
    E-mail: christine.ro@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>        v.<br><br>JASON FONG,<br>  aka "asian_ghazi",<br><br>    Defendant. | No. SA CR 20-00146-DOC<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO RECUSE THE HONORABLE DAVID O. CARTER; EXHIBITS |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Christine M. Ro and Mark Takla, hereby files its Opposition to Defendant's Motion to Recuse the Honorable David O. Carter (the "Opposition"). This

opposition is based on the attached memorandum of points and authorities, the exhibits, the files and records in this case, and any further evidence or arguments the Court may allow.

Dated: August 3, 2021　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　TRACY L. WILKINSON
　　　　　　　　　　　　　　　　　Acting United States Attorney

　　　　　　　　　　　　　　　　　CHRISTOPHER D. GRIGG
　　　　　　　　　　　　　　　　　Assistant United States Attorney
　　　　　　　　　　　　　　　　　Chief, National Security Division

　　　　　　　　　　　　　　　　　　　/s/
　　　　　　　　　　　　　　　　　CHRISTINE M. RO
　　　　　　　　　　　　　　　　　MARK TAKLA
　　　　　　　　　　　　　　　　　Assistant United States Attorneys

　　　　　　　　　　　　　　　　　Attorneys for Plaintiff
　　　　　　　　　　　　　　　　　UNITED STATES OF AMERICA

**Table of Contents**

MEMORANDUM OF POINTS AND AUTHORITIES....1
I. Introduction....1
II. Factual and Procedural Background....1
A. Defendant Posts Online About Supporting Foreign Terrorist Organizations....1
B. Defendant Possessed an Assault Weapon, High Capacity Magazines, and Thousands of Rounds of Ammunition....2
C. The District Court Detained Defendant Based on the Facts Supported by the Record....3
III. Argument....4
A. There is No Appearance of Impartiality....5
B. The District Court's Prior Service in the Marine Corps Does Not Amount to Actual Prejudice Against Defendant, Who Was A Marine at the Time of the Charged Offense....11
C. The District Court's Adverse Ruling Against Defendant is Not a Ground for Recusal....14
D. The Ninth Circuit's Reversal of the District Court's Detention Order Is Not a Basis for Recusal....15
IV. CONCLUSION....15

**Table of Authorities**

Page(s)

Cases

Andrade v. Chojnacki,
  338 F.3d 448 (5th Cir. 2003) ........................................ 12
Caperton v. A.T. Massey Coal Co.,
  556 U.S. 868 (2009) ................................................ 4
Cherokee Nation of Oklahoma v. United States,
  26 Cl. Ct. 215 (1992) ............................................. 13
Crater v. Galaza,
  491 F.3d 1119 (9th Cir. 2007) ...................................... 5
F.J. Hanshaw Enter. v. Emerald River Dev., Inc.,
  244 F.3d 1128 (9th Cir. 2001) ..................................... 12
Gonzalez v. United States Air Force,
  88 F. App'x 371 (10th Cir. 2004) .................................. 13
Hook v. McDade,
  89 F.3d 350 (7th Cir. 1985) ....................................... 12
Liteky v. United States,
  510 U.S. 540 (1994) ......................................... 5, 6, 11
Maier v. Orr,
  758 F.2d 1578 (Fed. Cir. 1985) .................................... 13
McBrien v. United States,
  86 Fed. Cl. 390 (2009) ............................................ 12
Taylor v. Regents of Univ. of Cal.,
  993 F.2d 710 (9th Cir. 1993) ...................................... 14
United States v. Balistrieri,
  779 F.2d 1191 (7th Cir. 1985) ..................................... 12

United States v. Hernandez,
   109 F.3d 1450 (9th Cir. 1997) ....................................... 4
United States v. Johnson,
   610 F.3d 1138 (9th Cir. 2010) ...................................... 14
United States v. Jordan,
   49 F.3d 152 (5th Cir. 1995) ........................................ 12
United States v. McTiernan,
   695 F.3d 882 (9th Cir. 2012) ........................... 4, 6, 12, 15
United States v. Motamedi,
   767 F. 2d 1403 (9th Cir. 1985) ...................................... 7
United States v. Wilkerson,
   208 F.3d 794 (9th Cir. 1999) ........................................ 5
Withrow v. Larkin,
   421 U.S. 35 (1975) .............................................. 4, 6
Zahn v. Applebury,
   No. CV-05-371-FVS, 2006 WL 8438083 (E.D. Wash. May 12, 2006) ..... 13

Statutes

18 U.S.C. § 3142(g) ........................................... 7, 9, 14
28 U.S.C. § 455 ................................................... 1,4

Rules

FRAP 9(a) ........................................................ 2, 3

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  Introduction**

There is no appearance of or actual impartiality by the Honorable David O. Carter, United States District Court Judge (hereinafter, "Judge Carter") in this case.  Defendant Jason Fong, also known as "asian_ghazi" ("defendant"), was, during the charged offense, a 24-year-old Sergeant in the United States Marine Corps Reserve.[1]  Judge Carter, who also served in the United States Marine Corps, detained defendant after listening to arguments and reviewing evidence from the government and defendant during a bail review hearing.  During his ruling in finding that defendant was a danger to the community, Judge Carter made comments that were completely supported by the record.  Defendant now questions the district court's impartiality because the court fulfilled its duties. Defendant fails to show that Judge Carter has an appearance of bias under 28 U.S.C. § 455(a) or has actual bias against the defendant under § 455(b)(1), and his motion should be denied.

**II.  Factual and Procedural Background**

**A.  Defendant Posts Online About Supporting Foreign Terrorist Organizations**

From February 2020 through May 2020, defendant communicated using end-to-end encrypted applications with undercover government agents and others and expressed support for two designated Foreign Terrorist Organizations ("FTOs"), Hay'at Tahrir al-Sham ("HTS") and

---

[1] To the extent defendant suggests that he initially enlisted as an active-duty Marine and later re-enlisted as a reservist in July 2020 (Def's Mot. at 2), defendant is incorrect.  Defendant enlisted in the Marine Corps Reserve in 2014 for a period of eight years. (Dkt. No. 57, Defendant's Service Record Book, at 1029-31.)

Hamas. At times, defendant stated he wanted to travel to Syria, join Syrian opposition groups, and die as a martyr in battle. On several occasions from March 2020 through May 2020, defendant sent explosives making information to members of a group he created online after a member expressed a willingness to "blow[] up" an Air Force base and travel to Syria to join HTS. In May 2020, defendant sent members in his group chat a Hamas fundraising website link and explained how members in his group could donate to the FTO by using cryptocurrency to help Hamas. Finally, defendant advocated committing violence against the United States government; law enforcement, members of the lesbian, gay, bisexual, transgender and queer or questioning ("LGBTQ") community; and one of his high school teachers.

### B. Defendant Possessed an Assault Weapon, High Capacity Magazines, and Thousands of Rounds of Ammunition

On May 20, 2020, law enforcement searched defendant's residence and found an illegal and unserialized AR-15-type assault rifle, a bolt-action rifle with a scope, two handguns, nine high-capacity handgun and rifle magazines, and several thousand rounds of ammunition. (See Defendant's FRAP 9(a) Appeal and its Exhibits (filed under seal as Exhibit 1), namely, Exhibit C at 20-21, 64-65.) The assault rifle was facing the window and was loaded with a round in the chamber and a high-capacity magazine with a second, high-capacity magazine taped to it. (Id.) One handgun was found under defendant's pillow on his bed, loaded with a magazine and a round in the chamber. (Id.) The assault rifle was found on an improvised rifle rack on the side of his bed. (Id.)

Law enforcement also found a gas mask and an armor plate carrier containing body armor next to his bed. (Id.) Like defendant's

2

firearms and ammunition, the gas mask and armor plate carrier were not issued by the military. (Exhibit 1, Exh. C at 13.) During an interview, defendant admitted to knowing that HTS and Hamas were FTOs, and to sending explosives making information and a Hamas fundraising link to members of his group chat.

### C. The District Court Detained Defendant Based on the Facts Supported by the Record

On February 25, 2021, contrary to the government's and Pretrial Services' recommendations, the magistrate judge ordered defendant released on bond subject to specific conditions. (Dkt. No. 40.) On March 22, 2021 and April 2, 2021, the district court held hearings on the government's request for reconsideration and denied bail. Dkt. Nos. 53, 59; see Exhibit 2 (Government's Opposition to Defendant's FRAP 9(a) Appeal, filed under seal); see also Government's Supplement to its Opposition to Defendant's FRAP 9(a) Appeal (attached hereto as Exhibit 3). Prior to denying bail, Judge Carter reviewed defendant's Marine Corps records. (Def's Exh. A, at 21; Dkt. 47.)

On April 30, 2021, defendant appealed. On June 3, 2021, the Ninth Circuit remanded and directed the district court to file a written order and address why conditions of release -- such as those imposed by the magistrate judge -- would be inadequate to reasonably address the risk of danger posed by defendant. On June 21, 2021, the district court filed its response to the remand in a written order and findings as to defendant's detention. On July 21, 2021, the Ninth Circuit reversed and remanded Judge Carter's April 2, 2021 order of detention because the Ninth Circuit did not find a discussion in Judge Carter's order of why the specific conditions of release imposed by the magistrate judge explain were inadequate.

(Def. Exh. B.) Defendant now files a motion to recuse Judge Carter based on the statements he made at the April 2, 2021 bail review hearing. (Dkt. No. 77., Def. Mot.)

**III. Argument**

Judges are afforded "a presumption of honesty and integrity," Withrow v. Larkin, 421 U.S. 35, 47 (1975), and "most matters relating to judicial disqualification do not rise to a constitutional level," Caperton v. A.T. Massey Coal Co., 556 U.S. 868, 876 (2009) (alteration adopted). In fact, recusal is constitutionally required only in "extraordinary" situations with "extreme facts" that meet "objective standards" showing that "the probability of actual bias on the part of the judge or decision-maker is too high to be constitutionally tolerable." Id. at 872, 887. Section 455(a) requires disqualification for the appearance of partiality (i.e., when a judge's "impartiality might reasonably be questioned") as compared to § 455(b)(1), which requires disqualification for actual partiality (i.e., when a judge "has a personal bias or prejudice toward a party").

The substantive standard for recusal under 28 U.S.C. § 455 is whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned. United States v. McTiernan, 695 F.3d 882, 891 (9th Cir. 2012) (citing United States v. Hernandez, 109 F.3d 1450, 1453 (9th Cir. 1997) (per curiam) (brackets and internal quotation marks omitted). Importantly, "[p]arties cannot attack a judge's impartiality on the basis of information and beliefs acquired while acting in his or her judicial capacity." Id. As the Supreme Court has explained,

4

> opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible. Thus, judicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.

Liteky v. United States, 510 U.S. 540, 555 (1994); accord United States v. Wilkerson, 208 F.3d 794, 799 (9th Cir. 1999) ("To disqualify a judge, the alleged bias must constitute animus more active and deep-rooted than an attitude of disapproval toward certain persons because of their known conduct." (internal quotation marks omitted)).

Here, there is no appearance of or actual bias by Judge Carter. Defendant argues that recusal is warranted under Sections 455(a) and 455(b)(1) because: (1) Judge Carter, who also served in the United States Marine Corps, made a series of comments about defendant's status as a Marine; and (2) Judge Carter ordered defendant to be detained as a danger to the community based on facts supported by the record. As explained below, none of these arguments support an appearance of or actual impartiality.

**A. There is No Appearance of Impartiality**

The Ninth Circuit has recognized "only three circumstances in which an appearance of bias -- as opposed to evidence of actual bias -- necessitates recusal": (1) the judge "has a direct, personal, substantial pecuniary interest in reaching a conclusion against one of the litigants"; (2) the judge "becomes embroiled in a running, bitter controversy with one of the litigants"; or (3) the judge "acts as part of the accusatory process." Crater v. Galaza, 491 F.3d 1119, 1131 (9th Cir. 2007) (punctuation altered). None of these circumstances applies here and defendant does not contend otherwise.

Rather, defendant's "bias" arguments merely reflect disagreement with Judge Carter's ruling to detain defendant and unsupported assertions that the court is biased solely based on his prior military experience.

The Ninth Circuit has recognized that "expressions of impatience, dissatisfaction, annoyance, or even anger, that are within the bounds of what imperfect men and women, even after having been confirmed as federal judges, sometimes display" do not establish bias or partiality warranting recusal. McTiernan, 695 F.3d at 892. (quoting Liteky, 510 U.S. at 555) (alteration adopted). "The judge who has become exceedingly ill disposed towards the defendant is not thereby recusable for bias or prejudice, since [his] knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings." Id. (alterations adopted).

Here, defendant complains about the following comments made, none of which are cause for concern:

- Comments about defendant receiving specific training and possessing specific skills as a Marine. (Def. Exh. A, RT 62: 4-23.)
- Comments about defendant's communications describing the U.S. military as terrorists. (Id. 66:13-15.)
- Comments that defendant's knowledge and instructions on how to make specific types of improvised explosive devices are in line with military training. (Id. 71:13-23.)
- Comment that people in the military have the "rare combination of knowledge and capability". (Id. 72: 6-9.)

6

- Comment that the civilian world may not understand the term of a "banana clipped" rifle, but that people in the Marine Corps understand the term. (Id. 73:25-74:10.)
- Comment that Judge Carter found defendant "an extraordinary risk beyond clear and convincing, in fact, beyond a reasonable doubt, and that there are no combinations at this time or conditions that would reasonably address the danger you present." (Id. 75:1-4.)

Defendant's accusations aside, these comments were made in the context of a bail review hearing, in which Judge Carter was **required** to consider the nature of defendant's offense, the weight of the evidence, the history and characteristics of the defendant, and the danger he presented to the community. See 18 U.S.C. § 3142(g) (specifying the factors the court must consider when determining whether to grant bail, including: the nature and circumstances of the offense charged; the weight of the evidence; the history and characteristics of the defendant; and the nature and seriousness of the danger of defendant to the community); United States v. Motamedi, 767 F. 2d 1403, 1407 (9th Cir. 1985).

Far from evidencing "deep-seeded antagonism," Judge Carter merely repeated factors supported by the record and focused on defendant's danger to the community as required by law. 18 U.S.C. § 3142(g). The government attached a search warrant affidavit, chats from defendant, transcripts of interviews, and photographs of the assault weapons found in defendant's bedroom. (Exh. A.) To assess defendant's danger to the community, the district court relied on the following record: (1) defendant would not hesitate to shoot a police officer who was just doing his job (Def. Exh. A., RT 12:22-24); (2)

7

defendant is U.S. service member who has been specifically trained in combat (Id. 13: 2-3); (3) defendant demonstrated an ability to purchase an untraceable ghost gun and turn it into an assault rifle illegal in California (Id. 13:4-13); (4) defendant's self-made assault rifle was loaded with a round in the chamber and a high-capacity magazine with a second high-capacity magazine taped (or "banana-clipped") to it (Id. 10:17-11:7); (5) defendant had a gas mask and body armor in his bedroom (Id. 13:19-22); (6) defendant made multiple comments sharing his desire to die violently in the United States (Id. 14:1-4); (7) defendant made multiple comments sharing his desire to kill others (Id. 14:6-9); (8) defendant's own family was concerned with defendant's anger issues and called the police (Id. 15:2-15); and (9) defendant stated that he believes that the Marines and the Army are terrorists and distributed IED-making information and chemical weapon information to an individual who stated he specifically wanted to "blow[] up" a United States Air Force base (Id. 15:22-18:3). Judge Carter was presented with overwhelming evidence that defendant posed a danger to the community. (Exh. A.)

    Unlike an average civilian who may have made violent online statements in his bedroom without any ability to carry out his threats, this defendant had specific military combat training,[2] possessed a self-made assault rifle that was loaded and ready to go with nine high-capacity magazines, and had anger issues to the extent that it caused his close confidant and family to call the police --

---

[2] Judge Carter was aware of this military combat training as it reviewed defendant's Marine Corps service records. (Def's Exh. A, at 21; Dkt. No. 47.)

8

the record sufficiently supported every comment Judge Carter made in his decision to detain defendant based on danger to the community.

Defendant mischaracterizes the record by arguing that Judge Carter had "clearly convicted [defendant] before he even has a jury trial" because Judge Carter "convicted him beyond a reasonable doubt" as to defendant's dangerousness. (Def. Mot. at 8.) First, at the onset of the April 2, 2021 bail hearing, Judge Carter stated that he did not believe defendant was a flight risk. (Def. Exh. A., RT 5: 13-17). Therefore, as required by law, the bail review hearing focused on the second factor -- whether there was clear and convincing evidence that defendant posed a danger to the community. 18 U.S.C. § 3142(g). Second, as stated above, there was overwhelming evidence in the record that defendant posed a danger to the community. In making the statements defendant now mischaracterizes as "bias," Judge Carter was fulfilling his duties. Further, a dangerousness finding required clear and convincing evidence. Thus, Judge Carter was not prejudging defendant's guilt but was merely noting for the record that the evidence satisfied the requisite standard proof.

Defendant also claims that Judge Carter was somehow mocking him by looking at him as he gave his ruling. (Def. Mot. at 6.) There is no evidence in the record to suggest any mocking. Further, the argument that looking at the defendant supports a claim of animosity is absurd. By looking at defendant, Judge Carter demonstrated the seriousness and solemnity of a judge ordering the pretrial detention of a defendant. There is no other place Judge Carter should have been looking.

1   Defendant further argues that the district court is biased for
2 telling defendant not to speak to him.  (Def. Mot. at 7.)  However,
3 the record belies that argument.  Before saying, "I don't want you to
4 speak to me" (Def. Exh. A., RT 66:11), Judge Carter read defendant's
5 communications about defendant's desire to die as a martyr,
6 defendant's loyalty to violent extremism, and jihad –- statements
7 that support defendant's guilt in this case -- and defendant agreed
8 with one of Judge Carter's statements.  (Id. 63:19–65:9.)  When
9 defendant agreed with that statement, Judge Carter stated, "You don't
10 have to answer my question."  (Id. 65:10.)  And when upon further
11 reading defendant's communications about joining a group in Syria,
12 **before** defendant could make another admission, Judge Carter stated,
13 "I don't want you to speak to me.  But you and I know what 'kafir'
14 is."  (Id. 66:2-12.)  Defendant argues that Judge Carter should have
15 asked defendant whether he knew these statements to be true "based on
16 his Marines experience," but this statement had nothing to do with
17 defendant's military experience.  Moreover, defendant's answer to
18 that question could incriminate him.  Like many district and
19 magistrate judges who handle pre-trial or pre-change of plea
20 hearings, Judge Carter was simply deterring defendant from agreeing
21 with any facts about the case, which could later be used as an
22 admission against defendant at trial.  If anything, it would arguably
23 be improper for Judge Carter to ask defendant whether his statements
24 about his desire to help fight with terrorists were true.
25   The totality of the record demonstrates that Judge Carter did
26 not show animus or hostility towards defendant.  Rather, Judge Carter
27 complemented defendant's military service and went to extraordinary
28 lengths to ensure that defendant had access to his counsel during the

1  COVID-19 pandemic by offering the courtroom next door and assuring
2  defendant that Judge Carter would open its doors even on the weekends
3  if needed.  (Def. Exh. A., RT 77:10-78:23.)  There is no appearance
4  of impartiality.

5      Finally, on page 2 of his brief, defendant claims that he left
6  active duty in July 2020 and decided to re-enlist as a reservist.  As
7  stated in footnote two above, this is incorrect.  Defendant also
8  states that he went to the reserves because he became frustrated with
9  the people and structure of the military.  (Def's Mot. at 2.)
10 Defendant provided no citation to anything the record regarding this
11 statement, nor did he provide a citation to his claim that he made
12 derogatory comments about the intelligence of the people in the
13 Marines.

14     **B.  The District Court's Prior Service in the Marine Corps Does Not Amount to Actual Prejudice Against Defendant, Who Was A Marine at the Time of the Charged Offense**

16     Defendant claims that Judge Carter's prior military service is a
17 conflict of interest because defendant was a Marine at the time of
18 the offense conduct.  Defendant's claims run headlong into the
19 "extrajudicial source" doctrine.  Liteky, 510 U.S. at 550.  Except in
20 the rarest circumstances, the doctrine precludes mandatory recusal
21 when the asserted "bias" arises from a judge's rulings, opinions, or
22 statements in prior proceedings.  Id. at 550-55.  Even though a judge
23 who has presided over a criminal case may "be exceedingly ill
24 disposed towards the defendant, who has been shown to be a thoroughly
25 reprehensible person," it is perfectly "normal and proper" for the
26 judge to preside over "successive trials involving the same
27 defendant."  Id. at 550-51.  That a judge forms opinions means she is
28 human, not biased.  Recusal is required only if the judge has

11

"display[ed] a deep-seated favoritism or antagonism that would make fair judgment impossible." Id. at 555; accord F.J. Hanshaw Enter. v. Emerald River Dev., Inc., 244 F.3d 1128, 1145 (9th Cir. 2001).

Further, section 455(b)(1) requires disqualification only if "actual bias or prejudice is 'proved by compelling evidence'." Hook v. McDade, 89 F.3d 350, 355 (7th Cir. 1985) (concluding that a judge's statement that a motion for disqualification was "offensive" and "impugned his integrity" was not sufficiently compelling evidence of an extrajudicial source for actual bias against defendant)). Disqualification under § 455(b)(1) requires that a litigant present evidence of a "negative bias or prejudice [which] must be grounded in some personal animus or malice that the judge harbors against him." United States v. Balistrieri, 779 F.2d 1191, 1201 (7th Cir. 1985). The standard for determining if such bias exists is "whether a reasonable person would be convinced the judge was biased." McTiernan, 695 F.3d at 891. The Fifth Circuit noted that the standard for finding actual bias is objective, and that "it is with reference to the 'well informed, thoughtful and objective observer, rather than the hypersensitive, cynical and suspicious person' that the objective standard is currently established." Andrade v. Chojnacki, 338 F.3d 448, 462 (5th Cir. 2003) (quoting United States v. Jordan, 49 F.3d 152, 156 (5th Cir. 1995)).

Also, courts have found that a reasonable person would not be convinced that a judge was biased from his prior military service. "Distant military or governmental service, with no financial connection to the instant litigation, does not raise any reasonable question as to . . . impartiality." See McBrien v. United States, 86 Fed. Cl. 390, 391 (2009) (unpublished) (denying motion for

disqualification based on a concern that a person with a background in the military would be hearing an action involving the military and Department of Defense) (citing Maier v. Orr, 758 F.2d 1578, 1582 (Fed. Cir. 1985); Cherokee Nation of Oklahoma v. United States, 26 Cl. Ct. 215, 218 (1992); see also Gonzalez v. United States Air Force, 88 F. App'x 371 (10th Cir. 2004) (unpublished)(holding that a service member's motion to recuse the district judge was correctly denied as the judge's background as a military lawyer did not create an appearance or risk of partiality); Zahn v. Applebury, No. CV-05-371-FVS, 2006 WL 8438083 (E.D. Wash. May 12, 2006) (finding that the court's prior service in the Army 35 years ago was not grounds for recusal even though the defendants all served in the Army Corps of Engineers).

Here, Judge Carter's comments were not colored by his prior service in the Marines.  Judge Carter did not serve with defendant, did not have a personal relationship with defendant, and did not know defendant prior to this case.  There is nothing to support that Judge Carter had or has actual bias against defendant.  Again, every comment highlighted by defendant is supported by the record, including the magistrate judge's prior bail review proceeding.  Judge Carter's statements are not rooted in deep-seated animus toward defendant or based on Judge Carter's prior military service.  Rather, Judge Carter came to the only reasonable conclusion -- as argued by the government -- that defendant's danger was exacerbated by his Marine Corps combat training, his rhetoric to commit violence in the United States, and possession of assault rifles.  Judge Carter gained this information and acquired his beliefs while acting in his judicial capacity.  A reasonable person, with or without a military

13

background, would find it concerning that a military member, trained in combat and committed to protecting the United States, would classify military service members as terrorists, provide bomb-making information to an individual who specifically stated he wanted to bomb a United States Air Force base, and threatened violence against the United States government in the homeland.

And again, Judge Carter's statements were made in the course of his duties to make a determination as to bail, which required him to consider the nature of defendant's offense, the weight of the evidence, the history and characteristics of defendant, and the danger he presented to the community. See 18 U.S.C. § 3142(g). A reasonable person with knowledge of all the facts would not conclude that Judge Carter's impartiality might be questioned or that he had actual bias against defendant.

### C. The District Court's Adverse Ruling Against Defendant is Not a Ground for Recusal

Defendant alternatively argues that Judge Carter's "lack of explanation to the Ninth Circuit further demonstrates the personal military-based bias [the court] possessed against [defendant]." (Def. Mot. at 8.) The problem with defendant's argument is that "a judge's prior adverse ruling is not sufficient cause for recusal." Taylor v. Regents of Univ. of Cal., 993 F.2d 710, 712 (9th Cir. 1993) (per curiam) (internal quotation marks omitted); see also, United States v. Johnson, 610 F.3d 1138, 1147-75 (9th Cir. 2010) (adverse findings do not equate to bias.)

### D. The Ninth Circuit's Reversal of the District Court's Detention Order Is Not a Basis for Recusal.

Furthermore, the fact that the Ninth Circuit reversed Judge Carter's decision to detain defendant also does not equate to bias. The Ninth Circuit has noted that "it has long been regarded as normal and proper for a judge to sit in the same case upon its remand." McTiernan, 695 F.3d at 893 (quoting Liteky, 510 U.S. at 551).

## IV. CONCLUSION

For the foregoing reasons, the Court should deny defendant's motion to recuse the Honorable David O. Carter.