KARREN KENNEY, CA. SBN 174872
KENNEY LEGAL DEFENSE
2900 Bristol Street, Suite C204
Costa Mesa, CA 92626
TELEPHONE:(855) 505-5588
E-MAIL: KARREN.KENNEY@GMAIL.COM

CHARLES D. SWIFT, WA Bar No. 41671
CONSTITUTIONAL LAW CENTER FOR MUSLIMS IN AMERICA
100 N. Central Expy. Suite 1010
Richardson, TX 75080
TELEPHONE: (972) 914-2507
FAX: (972) 692-7454
EMAIL: CSWIFT@CLCMA.ORG

ATTORNEYS FOR THE DEFENDANT

JASON FONG

KARREN KENNEY, CA. SBN 174872
KENNEY LEGAL DEFENSE
2900 Bristol Street, Suite C204
Costa Mesa, CA 92626
TELEPHONE:(855) 505-5588
E-MAIL: KARREN.KENNEY@GMAIL.COM

CHARLES D. SWIFT, WA Bar No. 41671
CONSTITUTIONAL LAW CENTER FOR MUSLIMS IN AMERICA
100 N. Central Expy. Suite 1010
Richardson, TX 75080
TELEPHONE: (972) 914-2507
FAX: (972) 692-7454
EMAIL: CSWIFT@CLCMA.ORG

ATTORNEYS FOR THE DEFENDANT

JASON FONG

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA | Case No.: SACR 20-00146-DOC |
|---|---|
| Plaintiff(s), | |
| vs. | |
| JASON FONG | |
| Defendant(s). | MOTION TO DISMISS COUNTS ONE THROUGH THREE |

**MOTION TO DISMISS**
**COUNTS ONE THROUGH THREE**

Comes now the defendant, Jason Fong, by and through undersigned counsel, and moves this Court to dismiss all counts of the indictment returned against him on April 4, 2022. (Doc.110). Mr. Fong moves to dismiss Counts 1-3 of the Indictment as multiplicious in violation of the Double Jeopardy Clause of the Fifth Amendment.

### I. Summary of the Argument

Mr. Fong moves to dismiss Counts One through Three on the grounds that the Counts charge a single course of conduct, providing services to Hay'at Tahrir al-Sham ("HTS"), as multiple violations of 18 U.S.C. §2339B, (multiple-acts/single-statute multiplicity), in violation of the Double Jeopardy Clause of the Fifth Amendment. In support of his motion, Mr. Fong argues that the textual context and legislative history of section 2339B do not establish a clear indication that Congress intended to authorize multiple punishments for providing training to a terrorist organization on multiple occasions. Mr. Fong further argues that providing training to HTS necessarily arises from a singular criminal impulse which remained consistent throughout Counts One through Three, and therefore constitutes one course of criminal conduct. Under these circumstances, Mr. Fong respectfully requests that this Court find that Counts One through Three are multiplicitous pursuant to the Supreme Court's decision in *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218 (1952) and its progeny. Mr. Fong further seeks dismissal without prejudice of Counts One through Three as the appropriate remedy because permitting multiplicitous counts before the jury in this case would unfairly prejudice him by exaggerating his alleged criminal conduct.

### II. Jurisdiction

Federal Rule of Criminal Procedure 12(b)(3)(B)(ii) provides that a motion involving a defect in the indictment, including charging the same offense in more than one count (multiplicity), "must

be raised by pretrial motion if the basis for the motion is then reasonably available and the motion can be determined without a trial on the merits." *United States v. Earnest*, 536 F. Supp. 3d 688, 703 (S.D. Cal. 2021) *citing* Fed. R. Crim. P. 12(b)(3)(B)(ii). This motion is filed in compliance with this Court's scheduling order, which satisfies the timeliness requirement of Fed. R. Crim. P. 12(c). In deciding the legal questions presented by Mr. Fong's multiplicity motion, this Court may make necessary preliminary findings of fact so long as the Court does not "invade the province of the ultimate finder of fact." *United States v. Nukida,* 8 F.3d 665, 669 (9th Cir. 1993).

### III. Counts One through Four

Counts One through Three charge the Defendant with three violations of the of 18 U.S.C. § 2339B(a)(1) for attempted provision of material support in the form of services to Hay'at Tahrir al-Sham, as follows:

- Count One alleges that "[o]n or about March 17, 2020 …. Fong … provided … services, including compiling, archiving, and providing tactical combat, and weapons training materials and information regarding the making of chemical weapons and improvised explosive devices to Hay'at Tahrir al-Sham…";

- Count Two alleges that "[o]n or about April 1, 2020… Fong … provided… services, including, compiling, archiving, and providing tactical, combat, and weapons training materials and information regarding the making of chemical weapons and improvised explosive devices…"; and

- Count Three alleges that "[o]n or about May 7, 2020… Fong … provided… services including combat training and information regarding the making of boobytraps and Improvised explosive devices to Hay'at Tahrir al-Sham….".

Count Four charges a separate course of attempted provision of material support in the form of services and currency to Al Qassam Brigades ("Hamas") on May 18, 2020. Specifically:

- Count Four alleges that "[o]n or about May 18,2020….Fong…provided…services and currency, including fundraising and money, to Hamas, also known as the Al Qassam Brigades ("Hamas")…."

# IV. Argument

## A. Single Statute/Multiple Act Multiplicity

In researching this motion, counsel was not able to find a prior case considering the question of whether 18 U.S.C. §2339B criminalizes a course of conduct (furnishing material support), permitting only one punishment, or instead authorizes punishment for each individual act of support committed during a course of conduct. Accordingly, to the best of the counsel's knowledge, Mr. Fong's motion presents a novel question of law. The legal framework for the analysis, however, is well established.

The potential for multiplicitous charges arises when the government charges an uninterrupted course of criminal conduct either as a violation of multiple statutes or as multiple violations of the same statute. "Where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether these are two offenses or only one is whether each provision requires proof of fact which the other does not." *Blockburger v. United States*, 52 S. Ct. 180, 304 (1932); *See also Illinois v. Vitale*, 100 S. Ct. 2260, 2265 (1980) (reaffirming the *Blockburger test.)* The *Blockburger* test is generally applicable when the same act or transaction constitutes a violation of two distinct statutory provisions, but *is inapplicable when the same act constitutes a violation of only one statutory provision. United States v. PG&E,* 153 F. Supp. 3d 1084, 1088 n.1 (N.D. Cal. 2015) *quoting United States v. Keen*, 104 F.3d 1111, 1118 n.12 (9th Cir. 1996) (internal quotation omitted). Where the same act or transaction is alleged to have resulted in multiple violations of the same statutory provision, the test is '[w]hat Congress has made the allowable unit of prosecution.'" *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218, 221 (1952)); *see also United States v. Chilaca*, 909 F.3d 289, 291-92 (9th Cir. 2018) *quoting United States v. Keen*, 104 F.3d 1111, 1118 (9th Cir. 1996) *quoting C.I.T.*

The Supreme Court's prior decision in *Blockburger*, now synonymous with the "elements" test for single-act/multiple-statutes multiplicity, is helpful in understanding the concept of the "unit of prosecution". In the first section of *Blockburger*, the Court addressed the multiple-acts/single statute situation in the first part of the opinion where the Court analyzed, whether two sales of narcotics to the same person constituted but one violation of the same statute (that is, multiple-acts/single-statute multiplicity). There the Court did *not* use the elements test to determine statutory intent. Instead, it applied statutory interpretation to determine whether the statute was aimed at an "offense continuous in its character" or one "that can be committed *uno ictu.*" *Blockburger*, 120 U.S. at 286.[1] The Court explained that "[t]he test is whether the individual acts are prohibited, or the course of action which they constitute. If the former, then each act is punishable separately. . . . If the latter, there can be but one penalty." *Id*. (cites omitted). Subsequently in *C.I.T.* the Supreme Court articulated this distinction as the "unit of prosecution" authorized by Congress. Mr. Fong's challenge to Counts One through Three arises from a multiple-acts/single-statute multiplicity requiring a determination by the Court of what Congress authorized as the unit of prosecution.

Judge Henderson laid out the framework for the statutory analysis of the unit of prosecution authorized by a statute when he considered the novel question of what the unit of prosecution was under 49 U.S.C. § 60123, for knowing and willful violations of the Pipe Safety Act, in *United States v. PG&E*, 153 F. Supp. 3d 1084, (N.D. Cal. 2015). Judge Henderson explained as follows:

> The Ninth Circuit has affirmed that the rule of lenity animates this inquiry: 'A court may not impose consecutive sentences for a single transaction that violates more than one statutory provision or purpose unless Congress has clearly expressed its intent to make each violation within that single transaction a separate offense subject to separate punishment.' *Brown v. United States,* 623 F.2d 54, 57 (9th Cir. 1980) (emphasis added). Courts must therefore limit their search for what Congress has deemed the 'unit of prosecution' to materials that directly inform congressional intent: 'Unless we can find from the face of the Act or from its legislative history a clear indication that Congress intended to authorize multiple punishments for a

---

[1] *Uno ictu* refers to an offense committed—in one blow. *Cleveland v. United States*, No. 21-3758, 2022 U.S. App. LEXIS 11113, at *7 (6th Cir. Apr. 22, 2022).

single transaction, we are obliged to construe the Act against the harsher penalties that result from cumulative punishments. *Id*. at 57 *quoting United States v. Clements*, 471 F.2d 1253, 1254 (9th Cir. 1972).'

*PG&E*, 153 F. Supp. 3d at 1088-89). [2]

*1. The Plain Language of 18 U.S.C. §2339B Does Not Clearly Prescribe Individual Acts as a Unit of Prosecution*

The text of 18 U.S.C. §2339B does not demonstrate a clear indication by Congress that it intended to authorize multiple punishments for individual acts of support as the unit of prosecution. The text of §2339B(a)(1) describes the unlawful conduct as:

> Whoever knowingly provides material support or resources to a foreign terrorist organization, or attempts or conspires to do so, shall be fined under this title or imprisoned not more than 20 years, or both, and, if the death of any person results, shall be imprisoned for any term of years or for life.

The most natural reading of §2339B(a)(1) is a course of conduct. The plain language meaning of support is "the act or process of supporting." [3] The process of supporting is assistance is a course of conduct which can occur on a singular occasion or over a long period of time. The plain language meaning of resources is "a source of supply or support: an available means —usually used in plural." [4] Again the plain language of meaning resources describes a course of conduct that could occur on one occasions, or occur over a long period of time. Because the rule of lenity informs the analysis, this Court, however, need not go so far as to find that the text of §2339B(a)(1) unambiguously criminalizes a course of conduct. Applying the rule of lenity, in order to prevent judicial expansion of criminal liability, there must be a clear indication that Congress intended to

---

[2] Judge Henderson summation of the rules statutory analysis governing an inquiry into the unit of prosecution authorized by a criminal statute is cited as persuasive authority. Counsel submits, however, that Judge Henderson's analysis is supported by the well-established case law of the Ninth Circuit, which is.
[3] *Support,* Merriam-Webster.com, https://www.merriam-webster.com/dictionary/support (July, 1 2022).
[4] *Resource,* Merriam-Webster.com, https://www.merriam-webster.com/dictionary/resource (July, 1 2022).

authorize multiple punishments for providing separate acts of material support to a terrorist organization. There is no mention of a unit of prosecution in §2339B(a)(1), let alone a clear indication the proper unit of prosecution is each individual instance of services/training provided.

Nor does the descriptions of material support provided in §2339B(g)(4) and (h) clearly indicate that each instance of material support can be a unit of prosecution. Section 2339B(g)(4) describes the term "material support or resources" as having "the same meaning given that term in section 2339A (including the definitions of "training" and "expert advice or assistance" in that section)." Section 2339A(b)(1) defines material support or resources as:

> *any* property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safe houses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel (1 or more individuals who may be or include oneself), and transportation, except medicine or religious materials. (emphasis added).

Arguably, the definition of material support creates a series of offenses each of which can be separately charged as a unit of prosecution during the course of providing material support. However, it can also be argued that the modifier "any" preceding the list results in the list merely defining the breath of what may constitute material support. The rule of lenity tips the argument in favor of finding §2339B authorizes a single punishment for acts of material support. The Supreme Court has held on more than one occasion that the modifier "any" is ambiguous. In *Bell v. United States*, 349 U.S. 81 (1955), the Supreme Court held that the Mann Acts prohibition against transportation of "any woman or girl for the purpose of prostitution or debauchery, or for any other immoral purpose" could be reasonably read to provide a unit of prosecution based on the number of transports or the number of women, and "the ambiguity should be resolved in favor of lenity." *Id.* at 82-83. Accordingly, a defendant could not be convicted on two separate counts for making a single trip with two women. *Id.* at 83. Similarly, in *Ladner v. United States*, 358 U.S. 169 (1958), the Supreme Court applied the rule of lenity to a statute that criminalizes interference with "any person"

engaged in official federal duties. *Id.* at 170 (internal cites omitted). In holding that statute did not unambiguously create separate units of prosecution for each person affected, the Court stated "[i]f Congress desires to create multiple offenses from a single act affecting more than one federal officer … Congress can make that meaning clear." *Id.* at 178.

The Tenth Circuit in *United States v. Elliott*, 937 F.3d 1310 (10th Cir. 2019) applied the Supreme Court's holding in *Bell* and *Ladner* to 18 U.S.C §2252A(a)(5)(B). Section 2252A(a)(5)(B) prohibits the knowing possession of child pornography and is similarly structured to section 2339B.[5] At issue in *Elliott* was whether section 2252A(a)(5)(B)'s language prohibiting multiple forms of possession permitted prosecution for possession of child pornography on four different storage devices. *Id.* at 1312. The Tenth Circuit concluded that it did not, holding that the statute of conviction contains the ambiguous modifier "any" preceding the enumerated list of storage materials. In reaching this conclusion, the Tenth Circuit relied on the Supreme Court's findings in *Bell* and *Ladner,* and its own prior determinations that the modifier "any" creates sufficient ambiguity and under the rule of lenity *Elliot* could only be charges once for possession no matter how many different devices the child pornography was possessed on. The similar use of the modifier "any" in the definition of material support results in the same conclusion here. That is, the unit of prosecution is at best ambiguous and accordingly section 2339B provides for a singular punishment for material to a terrorist organization.

---

[5] Section 2252A(a)(5)(B) prohibits in relevant part [a]ny person who . . . knowingly possesses . . . *any* book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography" shall be subject to the criminal penalties. 18 U.S.C §2252A(a)(5)(B). When §2339A definition of material support is inserted into §2339B; it reads "Whoever knowingly provides *any* property, tangible or intangible, or service, including… training, expert advice or assistance…personnel (1 or more individuals who may be or include oneself)….to a foreign terrorist organization, or attempts or conspires to do so, shall be fined under this title.

*2. The Context of "Service" in 18 U.S.C.§ 2339B is Consistent with a Course of Conduct as the Unit of Prosecution*

The context of "services" within section 2339B further indicates that providing services in the form of training constitutes a singular course of conduct. The broad prohibition against training and expert services in §2339B was the subject of the Supreme Court's ruling in *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010). In *Humanitarian Law Project*, the respondents sought to teach a designated Foreign Terrorist Organization peaceful dispute resolution, and argued in part, that section 2339B prescriptions against providing services in the form of training and expert services violated their First Amendment Rights to speech and association. Alternatively, the respondents argued that the broad potential sweep of the prescriptions against services violated the void for vagueness doctrine. The Supreme Court rejected those arguments holding that providing services in the form of training was constitutional because the prescription was limited to training performed "in coordination with, or at the direction of, a foreign terrorist organization." *Id.* at 24.

In reaching this conclusion, Chief Justice Roberts, observed that if independent activity in support of a terrorist group was characterized as a "service," the statute's specific exclusion of independent activity in the definition of "personnel" would not make sense. Congress would not have prohibited under "service" what it specifically exempted from prohibition under "personnel." *Id.*[6]

This observation is equally true concerning the unit of prosecution. The definition of providing personnel makes clear that the offense is continuous in nature. That is the offense continues for the duration the work performed and is not dependent on the number of people provided or the length of time they worked. It similarly makes no sense that Congress would intend

---

[6] 18 U.S.C. §2339B(h) defines personnel in relevant part as "provid(ing) a foreign terrorist organization with 1 or more individuals (who may be or include himself) to work under that terrorist organization's direction or control or to organize, manage, supervise, or otherwise direct the operation to of that organization."

to punish training for each occurrence rather than the course of conduct provided under direction and control. Such an interpretation would make training on several different occurrences subject to greater punishment than working or supervising a terrorist organization continuously for years.

*3. The Legislative History of 18 U.S.C. §§ 2339A and 2339B is Silent as to The Unit of Prosecution*

The legislative histories of 18 U.S.C. § § 2339A and 2339B focus on the need for prohibiting material support, clarifying the definition of what may constitute material support and providing increasing levels of punishment. Section 2339A was initially enacted as part of the Violent Crime Control and Law Enforcement Act of 1994. Thereafter congress amended §2339A and supplemented it with §2339B. The legislative history of the statutes states an intent by Congress to deny terrorist organizations support of any kind.

> "Allowing an individual to supply funds, goods, or services to an organization, or to any of its subgroups, that draw significant funding from the main organization's treasury, helps defray the costs to the terrorist organization of running the ostensibly legitimate activities. This in turn frees an equal sum that can then be spent on terrorist activities" H.Rept. 104-383, 81 (1995).

In 2001, the USA PATRIOT Act amended both sections in relevant part by increasing the maximum term of imprisonment from 10 to 15 years, and adding "expert advice or assistance" to forms of prescribed material support or resources. Congress passed the USA PATRIOT Act with little debate and no relevant legislative history.

The Intelligence Reform and Terrorism Prevention Act of 2004 amended the definition of "material support or resources" that applies to both sections. Clarifying definitions of the examples "training" and "expert advice or assistance" were added, as was a clarifying explanation of the term "personnel" as used in section 2339B. P.L. 108-458, §6603, 118 Stat. 3762 (2004). In 2015, congress increased the maximum penalty for violations of section 2339B from imprisonment for not more than 15 years to imprisonment for not more than 20 years. P.L. 114-23, tit. VI, §704, 129 Stat. 300 (2015).

In short, the legislative history is concerned with what constitutes material support and the appropriate maximum punishment but is silent as to the unit of prosecution. Again, applying the rule of lenity results in the unit of prosecution being a course of conduct of providing material support to a terrorist organization, rather than authorizing punishment for each individual act of support.

For the reasons set forth above, the Defendant, Mr. Fong, respectfully submits this Court should find Congress has not clearly specified in the text, context, and legislative history §2339B that individual acts of training are an authorized unit of prosecution. Accordingly, the Government may only charge material support in the form of training and services as separate violations if the alleged training and other services on March 17, April 1, and May 7, 2020, constituted separate and distinct courses of conduct.

**B. Counts One through Three do not represent separate and distinct courses of conduct**

"An indictment is not multiplicitous merely because it charges more than one violation of the same statute based on related conduct; instead, a defendant can be convicted of multiple violations of the same statute if the conduct underlying each violation involves a separate and distinct act." *United States v. Chilaca, 909 F.3d 289, 291-92 (9th Cir. 2018)* (internal cites and quotations omitted). Whether the charged violations involve separate and distinct acts is not simply a matter of whether different training materials were used on different dates. Instead, as the Supreme Court explained in *C.I.T.* the test is whether the alleged provision of material support was a different "managerial decision" on each occasion charged, rather than a single "course of conduct." See *C.I.T.*, 344 U.S. at 225 (holding that "a wholly distinct managerial decision that piece workers should be paid less than the statutory requirement in terms of hourly rates involves a different course of conduct, and so would constitute a different offense.") *Id.* (citation omitted). Alternatively, the Supreme Court referred to this as the (impulse test) which treats as one offense all

violations that arise from that singleness of thought, purpose, or action, which may be deemed a single impulse. *United States v. Universal C. I. T. Credit Corp.*, 344 U.S. 218, 224, 73 S. Ct. 227, 231, 97 L. Ed. 260, 265, 1952 22 Lab. Cas. (CCH) P67,295 *Id*. at 224. *See also United States v. Grimes,* 702 F.3d 460, 468 (8th Cir. 2012)

The Counts in this indictment charge four violations of 18 U.S.C. §2339B. Under the above test, Count Four is clearly not multiplicitous with Counts One through Three – not because it charges material support on a different day, but because it charges material support to a different terrorist organization and through different means – fundraising, and currency. Count Four clearly constitutes a separate and distinct course of conduct because it arose from a different managerial decision—to support Hamas, and to support them in a different manner.[7]

The same is not true for Counts One through Three. For those, the managerial decision was to provide material support to HTS through the provision of training and training materials. In fact, each of the Counts share a common theme, military and explosives training. The singular managerial decision and impulse is necessary to provide the training either in coordination or under

---

[7] Count Four as applied to the facts in this case raises a separate constitutional question under the Due Process Clause and the Void for Vagueness Doctrine. Mr. Fong did not have contact with Hamas nor with a person he believed to represent Hamas. Instead, he advocated an independent opinion that Hamas was worthy of support which he shared with an Undercover Agent. Mr. Fong later also provided that agent with a website address for Hamas with an understanding that the agent wanted to donate. This is precisely this type of situation which the Ninth Circuit found that the final version of §2339B was still void for vagueness with regards to services. *See Humanitarian Law Project v. Mukasey*, 552 F.3d 916, 930, (9th Cir. 2009). In *Humanitarian Law*, the Ninth Circuit found the Government's affirmation that the respondents could be held liable for filing an Amicus Brief supporting a terrorist organization resulted in the proscription of services being void for vagueness. *Id.* The Supreme Court overturned that holding finding that hypothetical conduct was not appropriate for the void for vagueness analysis as applied because the conduct was hypothetical. *See Humanitarian Law Project*, 561 U.S. at 20. That day has appeared to arrive, but the question will have to wait until trial as this Court lacks the power at this juncture to inquire into the factual basis for Count Four.

the direction and control of HTS. The indictment alleges that a managerial decision must have been made no later than March 17, 2020, Count One of the Indictment.

The Supreme Court found in *Humanitarian Law* that services in conjunction with section 2339B had its plain language meaning, "the performance of work commanded or paid for by another: a servant's duty: attendance on a superior"; or "an act done for the benefit or at the command of another"). *Humanitarian Law Project*, 561 U.S at 23-24, (internal cites omitted). In this case, the work is training and providing training materials. The indictment alleges that the training was performed on three occasions March 17, April 1, and May 7, 2020. The nature of the managerial decision during this period does not change. The singular managerial decision was to provide training and materials to a terrorist organization. The managerial decision presumptively begins on or about March 17, 2020, because the decision was necessarily done under the direction and control, or in coordination with HTS, a managerial decision to provide training under these circumstances is to embark on a course of criminal conduct, similar to agreeing to provide personnel. Accordingly, like personnel which continues as a singular course of conduct after the managerial decision to provide oneself or another, training continues from its onset until completed. Finding otherwise would be contrary to the Supreme Courts' holding that services and personnel are closely related concepts subject to the same limitations.

## V. Dismissal of Counts One through Three is Appropriate

This Court may redress multiplicity in an indictment by dismissal of multiplicitous counts, or entry of an order directing the government to elect under which Counts it will proceed, so long as there is no improper amendment to the indictment. *King*, 713 F. Supp. 2d at 1218 (citing *United States v. Aguilar*, 756 F.2d 1418, 1423 (9th Cir. 1985)); *see also United States v. Johnson*, 130 F.3d 1420, 1426 (10th Cir. 1997) ("A decision of whether to require the prosecution to elect between multiplicitous counts before trial is within the discretion of the trial court."). In this case, dismissal

- 13 -

1 | is appropriate because the Government cannot elect which Counts between One through Three to proceed under without amending the indictment.

Respectfully submitted this 1st of July, 2022

By: /s/ *Charles Swift*
Charles D. Swift, CLCMA
*Pro Hac* Attorney for Fong
100 N. Central Expy, Suite 1010
Richardson, TX 75080
(972) 914-2507

By: /s/ *Karren Kenney*
Karren Kenney, Kenney Legal Defense
Attorney for Fong
2900 Bristol Street, Suite C204
Costa Mesa, CA 92626
(855) 505-5588