TRACY L. WILKISON
United States Attorney
CHRISTOPHER D. GRIGG
Assistant United States Attorney
Chief, National Security Division
MARK TAKLA (Cal. Bar No. 218111)
CHRISTINE M. RO (Cal. Bar No. 285401)
Assistant United States Attorneys
Terrorism and Export Crimes Section
    United States Attorney's Office
    411 West Fourth Street, Suite 8000
    Santa Ana, California 92701
    Telephone: (714) 338-3500
    Facsimile: (714) 338-3561
    E-mail:   Mark.Takla@usdoj.gov

MATTHEW G. OLSEN
Assistant Attorney General
National Security Division
JOHN CELLA (D.C. Bar No. 1035356)
Trial Attorney
Counterterrorism Section
    950 Pennsylvania Ave, NW
    Washington, DC 20530
    Telephone: (202) 305-1601
    Email:    John.Cella@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

## UNITED STATES DISTRICT COURT

### FOR THE CENTRAL DISTRICT OF CALIFORNIA

#### SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. SA CR 20-00146(A)-DOC |
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNTS ONE THROUGH THREE OF THE INDICTMENT |
| v. | |
| JASON FONG, | |
| aka "asian_ghazi," | Hearing Date: 8/22/2022 |
| aka "Jason Asian Ghazi," | Hearing Time: 01:30 PM |
| aka "Mustafa Ahmed Al-Hakim," | Location:     Courtroom of the Hon. David O. Carter |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of

California, hereby submits its opposition to defendant Jason Fong's motion to dismiss Counts One through Three of the indictment returned on April 27, 2022 as multiplicitous in violation of the Double Jeopardy Clause of the Fifth Amendment.  This opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: July 15, 2022              Respectfully submitted,

                                  TRACY L. WILKISON
                                  United States Attorney

                                  CHRISTOPHER D. GRIGG
                                  Assistant United States Attorney
                                  Chief, National Security Division


                                  _____/s/_____
                                  MARK TAKLA
                                  CHRISTINE M. RO
                                  Assistant United States Attorneys

                                  _____/s/_____
                                  JOHN CELLA
                                  Trial Attorney
                                  Counterterrorism Section
                                  National Security Division

                                  Attorneys for Plaintiff
                                  UNITED STATES OF AMERICA

# **TABLE OF CONTENTS**

DESCRIPTION                                                              PAGE

TABLE OF CONTENTS................................................i

TABLE OF AUTHORITIES............................................ii

MEMORANDUM OF POINTS AND AUTHORITIES..............................1

    I.    INTRODUCTION..............................................1

    II.  BACKGROUND................................................1

    III. ARGUMENT..................................................4

          A.    Counts One, Two, and Three Charge "Separate and
              Discrete Acts," Not "A Single Course of Conduct".....4

          B.    Even If the Court Finds that Defendant's Separate
              Acts as Alleged in Counts One, Two, and Three
              Occurred During a "Single Course of Conduct,"
              Section 2339 Authorizes Multiple Punishments........9

              1)    The Plain Language of Section 2339B and Its
                    Related Provisions Authorize Multiple
                    Punishments....................................9

              2)    The Broad Legislative Purpose Behind Section
                    2339B Is Consistent with the Statute's
                    Authorized Unit of Prosecution for Each Act....14

              3)The Rule of Lenity Does Not Apply.................15

          C.    Should the Court Find that Counts One, Two, and
              Three Are Multiplicitous, the Proper Remedy is to
              Vacate Any Convictions on Multiplicitous Counts
              Following Trial, Not Dismissal Prior to Trial.......16

IV.  CONCLUSION................................................17

**TABLE OF AUTHORITIES**

PAGE

**Cases**

Bell v. United States,
    349 U.S. 81 (1955) ...........................................6

Blockburger v. United States,
    284 U.S. 299 (1932) .........................................9

Holder v. Humanitarian L. Project,
    561 U.S. 1 (2010) ..................................12, 13, 14

Inhabitants of Montclair Twp. v. Ramsdell,
    107 U.S. 147 (1883) ........................................11

Ladner v. United States,
    358 U.S. 169 (1958) .........................................6

Muscarello v. United States,
    524 U.S. 125 (1998) ........................................15

Ratzlaf v. United States,
    510 U.S. 135 (1994) ........................................12

Smith v. United States,
    508 U.S. 223 (1993) ........................................15

United States v. Awad,
    551 F.3d 930 (9th Cir. 2009) .............................4, 7

United States v. Chilaca,
    909 F.3d 289 (9th Cir. 2018) .........................6, 9, 10

United States v. Cisneros,
    26 F. Supp. 2d 24 (D.D.C. 1998) .............................8

United States v. Elliott,
    937 F.3d 1310 (10th Cir. 2019) .........................12, 13

United States v. Garlick,
    240 F.3d 789 (9th Cir. 2001) ...............................10

United States v. Gracidas-Ulibarry,
    231 F.3d 1188 (9th Cir. 2000) (en banc) .....................7

United States v. Havelock,
    664 F.3d 1284 (9th Cir. 2012) ..............................12

ii

1

**TABLE OF AUTHORITIES (CONTINUED)**

2

<u>PAGE</u>

3     United States v. Jensen,
4          93 F.3d 667 (9th Cir. 1996) ...................................2

5     United States v. Kandic,
           No. 17-cr-00449 (E.D.N.Y., filed Aug. 17, 2017) .............16
6
7     United States v. Keen,
           104 F.3d 1111 (9th Cir. 1996) ...............................5
8
      United States v. Kennedy,
9          726 F.2d 546 (9th Cir. 1984) ................................4

10    United States v. Luskin,
           926 F.2d 372 (4th Cir. 1991) ...............................17
11
12    United States v. Moalin,
           973 F.3d 977 (9th Cir. 2020) ................................8
13
      United States v. Mohrbacher,
14         182 F.3d 1041 (9th Cir. 1999) ..............................12

15    United States v. Molinaro,
           11 F.3d 853 (9th Cir. 1993) .................................7
16
17    United States v. Morales,
           687 F.3d 697 (6th Cir. 2012) ...............................15
18
      United States v. Nash,
19         115 F.3d 1431 (9th Cir. 1997) ..............................16

20    United States v. Olsowy,
           836 F.2d 439 (9th Cir. 1987) .............................7, 8
21
      United States v. Pac. Gas & Elec. Co.,
22         153 F. Supp. 3d 1084 (N.D. Cal. 2015) ..................6, 17

23    United States v. Saleh,
           No. 15-cr-00517 (E.D.N.Y., judgment on Nov. 18, 2021) .......16
24
25    United States v. Segall,
           833 F.2d 144 (9th Cir. 1987) ................................5
26
      United States v. Szalkiewicz,
27         944 F.2d 653 (9th Cir. 1991) ................................5

28

iii

**TABLE OF AUTHORITIES (CONTINUED)**

PAGE

United States v. Technic Servs., Inc.,
314 F.3d 1031 (9th Cir. 2002), overruled on other
grounds by United States v. Contreras, 593 F.3d 1135
(9th Cir. 2010) ........................................4, 5

United States v. Universal C.I.T. Credit Corp.,
344 U.S. 218 (1952) ........................................6

United States v. Vaughn,
797 F.2d 1485 (9th Cir. 1986) ..............................11

United States v. Wells,
519 U.S. 482 (1997) ........................................15

United States v. Zalapa,
509 F.3d 1060 (9th Cir. 2007) ..............................16

Warren v. Crabtree,
185 F.3d 1018 (9th Cir. 1999) ..............................15

**Statutes**

18 U.S.C. § 922(g)(1).........................................5

18 U.S.C. § 1001..............................................7

18 U.S.C. § 1341.............................................11

18 U.S.C. § 1343.........................................10, 11

18 U.S.C. § 2252A(a)(5)......................................13

18 U.S.C. § 2339A(b)(1)..................................10, 13

18 U.S.C. § 2339B.......................................*passim*

18 U.S.C. § 2339B(a)(1)..................................1, 9, 12

Antiterrorism and Effective Death Penalty Act (AEDPA) of
1996, 110 Stat. 1214, § 301(b) .............................14

Intelligence Reform and Terrorism Prevention Act of 2004,
118 Stat. 3638, § 6603 .....................................15

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### MEMORANDUM OF POINTS AND AUTHORITIES

**INTRODUCTION**

Defendant Jason Fong ("defendant") moves the Court to dismiss Counts One, Two, and Three of the indictment returned on April 27, 2022, arguing that those counts charge "a single course of conduct" as multiple violations of 18 U.S.C. § 2339B in violation of the Double Jeopardy Clause of the Fifth Amendment.  Lacking any authority for the proposition that discrete acts of attempted provision of material support to a designated foreign terrorist organization (FTO)--carried out on multiple dates over the course of several weeks--may not be charged as separate counts under section 2339B, defendant argues that the "textual context and legislative history" is unclear and that the rule of lenity counsels in favor of dismissal.  Def's Mot. at 2, 6.  Defendant inaccurately characterizes the "separate and discrete acts" charged in Counts One, Two, and Three as a single "course of conduct," but even if they were, Defendant's argument is at odds with the statutory text of section 2339B, which prohibits the knowing provision of "any" material support to FTOs, and the broad legislative purpose behind that provision.  Finally, even if the Court agrees that Counts One, Two, and Three charge a single course of conduct and that separate counts are not authorized under section 2339B, the proper remedy is to vacate any multiplicitous convictions following trial rather dismiss prior to trial.  Defendant's motion should be denied.

**BACKGROUND**

Defendant is charged with four counts alleging violations of section 2339B(a)(1) for his attempted provision of material support and resources to two designated FTOs, occurring on four different

1    dates.  Defendant's motion concerns only Counts One, Two, and Three,

2    presumably since Count Four references a different FTO and a

3    different form of material support. Def's Mot. at 12.

4         Count One charges defendant with attempting to provide

5    "services, including compiling, archiving, and providing tactical,

6    combat, and weapons training materials information regarding the

7    making of chemical weapons and improvised explosive devices" to Hay-

8    at Tahrir al-Sham (HTS) on March 17, 2020.  On that date, defendant

9    sent information from the U.S. Army "TM 31-210 Improvised Munitions

10   Handbook" that included 1) instructions on combining chemicals that

11   could cause breathing issues and chest pain and 2) recipes for making

12   improvised explosive devices (IEDs) to an encrypted online chat group

13   defendant created and named "Mujahideen Amerikeoon."  At the time

14   defendant sent this information, another member of the Mujahideen

15   Amerikeoon chat group had already told defendant that he desired to

16   join HTS in Syria.[1]

17        Count Two charges defendant with attempting to provide

18   "services, including compiling, archiving, and providing tactical,

19   combat, and weapons training materials information regarding the

20   making of chemical weapons and improvised explosive devices" to HTS

21   on April 1, 2020.  On that date, in the Mujahideen Amerikeoon

22

23        [1] The Court must accept the factual allegations in the
     indictment as true for the purposes of a defendant's pretrial motion
24   to dismiss.  See United States v. Jensen, 93 F.3d 667, 669 (9th Cir.
     1996).  Since defendant argues that counts one through three charge a
25   single "course of conduct," the government proffers additional
     information from outside the four corners of the indictment regarding
26   the proof to be offered in relation to each count.  This is not a
     full proffer of all evidence the government intends to introduce at
27   trial, but as defendant acknowledges, the Court may make preliminary
     findings with respect to the government's anticipated offers of proof
28   included here.  See Def's Mot. at 3, citing United States v. Nukida,
     8 F.2d 665, 669 (9th Cir. 1993).

                                    2

encrypted chat group, defendant sent additional information from the U.S. Army "TM 31-210 Improvised Munitions Handbook" that included instructions regarding mortar scrap mines, nail grenades, sodium chlorate and sugar or aluminum explosives, fertilizer explosives, nitric acid, improvised black powder potassium nitrate, plastic explosive filler, chemical fire bottles, sodium chlorate, recoilless launchers, grenade launchers, and pipe hand grenades.  Defendant also stated that the information he sent "stays in this chat of ours like a library so that if you ever need to, you know where to look."

Count Three charges defendant with attempting to provide "services, including combat training and information regarding the making of boobytraps and improvised explosive devices" to HTS on May 7, 2020.  On that date, defendant sent a direct text message with a link to the U.S. Army "Field Manual on Boobytraps" to an individual whom defendant believed was fighting with HTS in Syria.

Count Four charges defendant with attempting to provide "services and currency, including fundraising and money," to Hamas on May 18, 2020.  On that date, in a different encrypted chat group titled "Brotherhood," defendant sent a link to a Hamas cryptocurrency fundraising website, stating that Hamas accepts "Bitcoin and they explain the whole process on how to help out the Palestinian Resistance."  Defendant added, "This is a cause I am sure we can all get behind."[2]

---

[2] Although defendant does not move to dismiss Count Four, defendant argues in a footnote that Count Four "raises a separate constitutional question under the Due Process Clause and the Void for Vagueness Doctrine."  Def's Mot. at 12, n.7.  Contrary to defendant's assertions, Count Four does not charge defendant for "advocat[ing] an independent opinion that Hamas was worthy of support."  Id.  Count Four charges defendant with attempting to provide Hamas currency and
*(footnote cont'd on next page)*

3

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ARGUMENT**

**A. Counts One, Two, and Three Charge "Separate and Discrete Acts," Not "A Single Course of Conduct"**

Defendant's motion is premised on the inaccurate contention that the allegations in Counts One, Two, and Three constitute a "single course of conduct" when, in fact, these counts properly charge separate instances of defendant's related, but distinct conduct.  The Court need not reach the statutory interpretation question of the authorized "unit of prosecution" under section 2339B, discussed in section II.B below, since Counts One, Two, and Three charge "separate and distinct acts."

Contrary to defendant's assertion, Counts One, Two, and Three do not charge a single course of conduct merely because they are all charged under section 2339B or because they involve defendant's attempted provision of material support to the same FTO, HTS.  "An indictment is not multiplicitous merely because it charges more than one violation of the same statute based on related conduct; instead, a defendant can be convicted of multiple violations of the same statute if the conduct underlying each violation involves a separate and distinct act."  United States v. Technic Servs., Inc., 314 F.3d 1031, 1046 (9th Cir. 2002), overruled on other grounds by United States v. Contreras, 593 F.3d 1135 (9th Cir. 2010); see also United States v. Kennedy, 726 F.2d 546, 548 (9th Cir. 1984) (separate false statements submitted in an attempt to obtain a single loan can be separately punished under false loan application statute); United States v. Awad, 551 F.3d 930, 938 (9th Cir. 2009) ("Each submission

---

the service of fundraising by soliciting Bitcoin donations with the weblink defendant posted in a chat group that included multiple individuals he believed to support Hamas.

1    of a fraudulent claim to a health care benefit program, rather than
2    being simply an act in furtherance of a larger scheme to defraud, is
3    a separate execution of the scheme and is itself chargeable as a
4    separate count.").

5    "An offense is separate and distinct when conviction under one
6    count requires proof of a fact which the other does not." United
7    States v. Segall, 833 F.2d 144, 146-47 (9th Cir. 1987), citing
8    Blockburger v. United States, 284 U.S. 299, 304 (1932). Here, Counts
9    One, Two, and Three charge "separate and discrete" attempts by
10   defendant to provide material support to HTS, acts which occurred on
11   three different dates over the course of two months. Counts One and
12   Two involve discrete sets of chemical weapons and IED information
13   that defendant sent to his Mujahideen Amerikeoon chat group on March
14   17 and April 1, 2020, while Count Three involves a different set of
15   boobytrap and IED information that defendant sent in a direct text
16   message to another individual (not in the Mujahideen Amerikeoon chat
17   group) on May 7, 2020. Each of these three acts was "related" in the
18   sense that each involved defendant's provision of bomb-making
19   information to individuals the defendant believed intended to fight
20   with or were, in fact, fighting with HTS, but Counts One, Two, and
21   Three seek to punish "separate and discrete acts," Technic Servs.,
22   Inc., 314 F.3d at 1046, not a "single act or transaction." See
23   United States v. Keen, 104 F.3d 1111, 1118 (9th Cir. 1996) (holding
24   that two counts in violation of 18 U.S.C. § 922(g)(1) were
25   multiplicitous only after finding that felon defendant was
26   "simultaneously in possession of a firearm and ammunition."); United
27   States v. Szalkiewicz, 944 F.2d 653, 653 (9th Cir. 1991) (multiple
28   charges for possession of firearms by a felon permissible with

5

1    "showing that the firearms were stored or acquired at different times
2    and places").

3          Indeed, the cases on which defendant relies concerned conduct
4    that substantially overlapped temporally or involved a single
5    "managerial decision" to disobey a government regulation, unlike
6    defendant's distinct acts on three different dates charged in Counts
7    One, Two, and Three.  See United States v. Chilaca, 909 F.3d 289, 292
8    (9th Cir. 2018) (holding that "simultaneous possession of different
9    matters containing offending [child pornography] images at a single
10   time and place constitutes a single violation of the statute");
11   United States v. Universal C.I.T. Credit Corp., 344 U.S. 218, 224–25,
12   (1952) (holding that a "managerial decision that certain activity was
13   not work and therefore did not require compensation" was a single
14   "course of conduct" under the criminal provisions of the Fair Labor
15   Standards Act, but that a "wholly distinct managerial decision that
16   piece workers should be paid less than the statutory requirement" was
17   a "different course of conduct, and so would constitute a different
18   offense"); Bell v. United States, 349 U.S. 81, 82–84 (1955) (holding
19   that the transportation of "two women on the same trip and in the
20   same vehicle" was a "single transaction" and thus a single offense
21   under the Mann Act); United States v. Pac. Gas & Elec. Co., 153 F.
22   Supp. 3d 1084, 1092 (N.D. Cal. 2015) (holding that defendant's
23   failure to abide by pipeline safety regulations as charged in
24   multiple counts was tied to "one allegedly incomplete report"
25   submitted to the government on "a single date" and so constituted a
26   "single course of conduct"); Ladner v. United States, 358 U.S. 169,
27   171 (1958) (holding that defendant who "fired a single discharge from
28   a shotgun into the front seat of an automobile," where the "pellets

wounded . . . two federal officers," committed a "single act" that could not be charged as two offenses); see also United States v. Olsowy, 836 F.2d 439, 442 (9th Cir. 1987)(two counts under 18 U.S.C. § 1001 were multiplicitous where defendant "made precisely the same denials in response to the same questions posed to him" by the same Secret Service agent).

Defendant ignores the distinctions between the allegations in Counts One, Two, and Three, arguing that since the referenced FTO in each of these counts is the same and the "service" defendant attempted to provide in each count is similar, the counts seek to punish a "single course of conduct" and "singular managerial decision." Def's Mot. at 4, 12. But similarities aside, for each and every count, the government must prove that defendant's attempted provision of bomb-making and other information, in full context with defendant's other actions, constituted a separate "substantial step" in furtherance of the crime. See United States v. Gracidas-Ulibarry, 231 F.3d 1188, 1192 (9th Cir. 2000) (en banc). That defendant's conduct underlying each of these three counts also provides context for the others does not change this.

In an analogous setting, the Ninth Circuit has held that each "execution" of a common scheme is a separate unit of prosecution under the bank fraud and health care fraud statutes because each execution requires independent proof. United States v. Awad, 551 F.3d 930, 938 (9th Cir. 2009) (holding that each submission of a fraudulent claim is a separately chargeable count of health care fraud); United States v. Molinaro, 11 F.3d 853, 860 (9th Cir. 1993) (holding that each "execution" of an "overall scheme" to defraud is separately chargeable as bank fraud where "[n]one depended on the

1    others for its existence" and they "were interrelated only because

2    they involved the same overall scheme").  While the government will

3    offer proof common to Counts One, Two, and Three concerning

4    defendant's knowledge and support for HTS, proof that may be mutually

5    reinforcing, each count will also require independent proof of

6    defendant's attempted provision of bomb-making and other information

7    on the particular date included in the charge.

8        If the Court were to accept defendant's argument, a defendant

9    could never be charged with more than one count in violation of

10   section 2339B so long as that defendant supported the same FTO and in

11   a similar way each time he acted--no matter how many "acts" the

12   defendant took to provide material support.  This is not the law.

13   See, e.g., United States v. Moalin, 973 F.3d 977 (9th Cir. 2020)

14   (defendants convicted of multiple counts under sections 2339A and

15   2339B for providing and conspiring to provide material support to FTO

16   al-Shabaab based on acts that occurred on different dates).

17       To the extent that the Court has questions about whether

18   defendant's charged conduct in Counts One, Two, and Three constitutes

19   a single course of conduct, the Court should decline to dismiss and

20   instead allow the government to proceed to trial under all counts in

21   the indictment, since dismissal is premature unless there are no

22   factual issues remaining.  See United States v. Cisneros, 26 F. Supp.

23   2d 24, 44 (D.D.C. 1998) (declining to dismiss counts or require the

24   government to elect counts on which it would proceed prior to trial,

25   noting that the test for multiplicity as articulated by the Ninth

26   Circuit in Olsowy, 836 F.2d 439, "involves factual issues that need

27   development in the record").

28

**B. Even If the Court Finds that Defendant's Separate Acts as Alleged in Counts One, Two, and Three Occurred During a "Single Course of Conduct," Section 2339 Authorizes Multiple Punishments**

Should the Court determine that Counts One, Two, and Three are part of a "single course of conduct," the defendant may still face multiple counts under section 2339B.  Multiple counts under the same statute are proper even if "successive impulses . . . all united in a swelling a common stream of action," so long as the relevant statute prohibits the "individual acts" rather than the "course of action which they constitute."  Blockburger, 284 U.S. at 302 (internal quotation omitted).

Where the government levies multiple charges under the same statutory provision based on "a single act or transaction," the court must determine "[w]hat Congress has made the allowable unit of prosecution."  Chilaca, 909 F.3d at 291–92, quoting Universal C.I.T. Credit Corp., 344 U.S. at 221.  This determination requires an analysis of the statutory text and if there is remaining ambiguity, a review of the statute's legislative history.  In the case of section 2339B, the statutory text punishes individual acts to provide "any" material support to an FTO and the legislative history is consistent with that purpose.

**1) The Plain Language of Section 2339B and Its Related Provisions Authorize Multiple Punishments**

Section 2339B(a)(1), charged in Counts One, Two, and Three, states:

> Whoever knowingly provides material support or resources to a foreign terrorist organization, or attempts or conspires to do so, shall be fined under this title or imprisoned not more than 20 years, or both…

18 U.S.C. § 2339B(a)(1).

Section 2339B(g)(4) states that "material support or resources" in section 2339B has the "same meaning" that is given to that term in section 2339A, which states:

> …the term "material support or resources" means **any** property, tangible or intangible, or service, including currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel (1 or more individuals who may be or include oneself), and transportation, except medicine or religious materials…

18 U.S.C. § 2339A(b)(1)(emphasis added).  Taken together with section 2339B(b)(1)'s statutory definition of "material support and resources," section 2339B criminalizes "knowingly provid[ing]" "any property . . . or service" to an FTO, "or attempt[ing] . . . to do so."  Thus, by its own terms, the statutory language and structure of section 2339B punishes each act by which defendant attempted to provide "any" property or service to HTS.

Although the Ninth Circuit has found that in certain contexts, the use of "any" does not unambiguously reflect congressional intent to impose cumulative punishments for separate acts that are part of the same course of conduct, see Chilaca, 909 F.3d at 293-95, the Ninth Circuit has held that each use of the wires or mail constitutes a separate offense under the wire and mail fraud statutes, which use the term "any" in a way that is similar to section 2339B and 2339A(b)(1).[3]  United States v. Garlick, 240 F.3d 789, 792 (9th Cir.

---

[3] 18 U.S.C. § 1343 (wire fraud) reads:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, **any** writings, signs, signals,

*(footnote cont'd on next page)*

2001) (each wire transmission of "any writing[]" is a violation of 18

U.S.C. § 1343); <u>United States v. Vaughn</u>, 797 F.2d 1485, 1493 (9th

Cir. 1986) (each use of the mail to send "any matter" is a violation

of 18 U.S.C. § 1341).  Like the wire and mail fraud statutes, section

2339B criminalizes each act by which defendant knowingly attempted to

provide "any" property or service to HTS as a separate unit of

prosecution, even if those acts are part of a larger course of

conduct with a common motivation to support an FTO.

Defendant suggests that the use of "any" in section

2339A(b)(1)'s statutory definition only indicates the breadth of what

may constitute material support, Def's Mot. at 7, but interpreting

"any" in this fashion ignores that Congress separately provided for

the wide breadth of what might constitute material support by

inserting the word "including" before that section's illustrative

list of examples.  Defendant's suggested interpretation of "any"

would render Congress' use of "including" mere surplusage and should

therefore be avoided.  <u>Inhabitants of Montclair Twp. v. Ramsdell</u>, 107

---

> pictures, or sounds for the purpose of executing such
> scheme or artifice, shall be fined under this title or
> imprisoned not more than 20 years, or both…

(emphasis added).

  18 U.S.C. § 1341 (mail fraud) reads:

> Whoever, having devised or intending to devise any scheme
> or artifice to defraud . . . places in any post office or
> authorized depository for mail matter, **any** matter or thing
> whatever to be sent or delivered by the Postal Service, or
> deposits or causes to be deposited **any** matter or thing
> whatever to be sent or delivered by any private or
> commercial interstate carrier, or takes or receives
> therefrom, **any** such matter or thing, or knowingly causes to
> be delivered by mail or such carrier according to the
> direction thereon, or at the place at which it is directed
> to be delivered by the person to whom it is addressed, **any**
> such matter or thing, shall be fined under this title or
> imprisoned not more than 20 years, or both…

(emphasis added).

U.S. 147, 152 (1883) ("It is the duty of the court to give effect, if possible, to every clause and word of a statute…"); see also Ratzlaf v. United States, 510 U.S. 135, 140-41 (1994) (courts "should hesitate" to "treat statutory terms" as "surplusage," particularly in criminal provisions).

And while defendant points to the dictionary definitions of "support" and "resources" to argue that section 2339B(a)(1) criminalizes only the "process of supporting," which could occur "over a long period of time," Def's Mot. at 6, it is unnecessary for the Court to resort to dictionary definitions for "material support and resources," a term defined in the statute, itself.[4]  Where Congress provides a statutory definition, the Court should look to the "language employed by Congress" rather than searching for a word's "ordinary meaning."  United States v. Havelock, 664 F.3d 1284, 1289 (9th Cir. 2012); see also United States v. Mohrbacher, 182 F.3d 1041, 1048 (9th Cir. 1999) (courts "may look to sources such as dictionaries for a definition" only "[w]hen there is no indication that Congress intended a specific legal meaning for the term.").  The statute's definition of "material support or resources" indicates that the attempted provision of "any" property or services that occurs on a singular occasion is the authorized unit of prosecution.

Finally, defendant's reliance on the Tenth Circuit decision in United States v. Elliott, 937 F.3d 1310 (10th Cir. 2019), in which

---

[4] While the Supreme Court referenced the dictionary definition of "service" in Holder v. Humanitarian L. Project, 561 U.S. 1, 23-24 (2010), "service" is not specifically defined in the statute.  The Supreme Court did not resort to the dictionary when interpreting "training," "expert advice and assistance," or "personnel," which are statutorily defined, like "material support or resources."  Id. at 21-23.

the court considered whether simultaneous possession of child
pornography on multiple electronic storage devices could result in
separate charges, is misplaced.  As an initial matter, Elliott held
that the actus reus of 18 U.S.C. § 2252A(a)(5) was the "possession of
the storage device" containing child pornography, so the Tenth
Circuit's decision was based on its determination that the
simultaneous possession of multiple storage devices was only one
criminal act.  Id. at 1316. But with respect to Elliott's discussion
of the modifier "any," which precedes a list of storage media a
defendant might possess in section 2252A, the relevant statutory
provision in that case, the Tenth Circuit found it compelling that
Congress' focus in section 2252A was the criminalization of "images
of child pornography," rather than the storage vessels or media in
which those images were contained.  Since the Elliott court found that
the "plural" contemplated by "any" in section 2252A only referenced
the latter, i.e., storage devices, it did not provide support for
multiple charges where there was no proof that the images on
defendant's multiple devices were different in that case.  Id. at
1313, 1315.  Section 2339B, on the other hand, is focused on the
provision of "any" property or service to FTOs.  Since Congress
recognized the fungibility of resources defendants might provide FTOs
and the strong government interest in preventing "any" such resources
from reaching FTOs, Holder, 561 U.S. at 29, the form of the property
or services provided is less significant.  As stated above, the
illustrative list after "including" in section 2339A(b)(1) suggests
the wide variety of forms that "material support or resources" can
take, but the separate use of "any" conveys the statute's focus on

criminalizing each instance of knowing support to an FTO, regardless of the form.

### 2) The Broad Legislative Purpose Behind Section 2339B Is Consistent with the Statute's Authorized Unit of Prosecution for Each Act

While the legislative history of 2339B and its related provisions in 2339A does not speak directly to the authorized unit of prosecution, the statute's broad purpose to prevent and punish "any" provision of material support to terrorist groups is consistent with allowing separate punishment for individual acts, even if part of a single course of conduct.

As the Supreme Court has recognized, section 2339B's aim is "combating terrorism," "an urgent objective of the highest order." Id. at 28.  At the time of section 2339B's passage in 1996, Congress indicated that its purpose was "to provide the Federal Government the fullest possible basis, consistent with the Constitution, to prevent persons within the United States . . . from providing material support or resources to foreign organizations that engage in terrorist activities."  Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996, 110 Stat. 1214, § 301(b).  Moreover, Congress specifically found at the time of 2339B's passage that "foreign organizations that engage in terrorist activity are so tainted by their criminal conduct that **any contribution** to such an organization facilitates that conduct." Id. at § 301(a)(7) (emphasis added), cited by Holder, 561 U.S. at 29.  A House Report published in the months leading up to section 2339B's enactment provides additional evidence of Congress' intent to implement a strict ban on "any" provision of material support to foreign terrorist groups.  See H.R. Rep. No. 104-383, at 45 (1995) ("The ban applies to **any financial or material**

1    **donation** . . . ")(emphasis added).  Although the statutory definition

2    of "material support and resources" did not include "any" before that

3    definition was amended in the Intelligence Reform and Terrorism

4    Prevention Act of 2004, 118 Stat. 3638, § 6603, the addition of "any"

5    at that time is consistent with Congress' aim to maintain a strict

6    ban on any provision of material support to designated terrorist

7    groups.

8        **3) The Rule of Lenity Does Not Apply**

9        Even if the Court finds defendant has offered a plausible

10   alternative interpretation of section 2339B whereby that provision

11   punishes only a larger course of conduct and not each individual act,

12   that would be insufficient to apply the rule of lenity.  As the

13   Supreme Court has repeatedly explained, "[t]he simple existence of

14   some statutory ambiguity . . . is not sufficient to warrant

15   application of that rule, for most statutes are ambiguous to some

16   degree." Muscarello v. United States, 524 U.S. 125, 138, (1998); see

17   also Smith v. United States, 508 U.S. 223, 239 (1993) ("The mere

18   possibility of articulating a narrower construction [of a statute] .

19   . . does not by itself make the rule of lenity applicable").

20   Instead, "[t]he rule of lenity applies only if, after seizing

21   everything from which aid can be derived . . . , we can make no more

22   than a guess as to what Congress intended." United States v. Wells,

23   519 U.S. 482, 499 (1997) (internal quotation marks and citations

24   omitted); Warren v. Crabtree, 185 F.3d 1018, 1023 (9th Cir. 1999);

25   see also United States v. Morales, 687 F.3d 697, 701 (6th Cir.

26   2012)(holding that "rule of lenity [is] a tiebreaker of last resort

27   that is appropriate only when, after consulting traditional canons of

28   statutory construction, we are left with an ambiguous statute.").

That is not the case here, in light of section 2339B's text and Congress' purpose, not to mention the historical practice of allowing multiple convictions for separate acts providing material support to FTOs. See, e.g., United States v. Kandic, No. 17-cr-00449 (E.D.N.Y., filed Aug. 17, 2017) (defendant convicted of five counts alleging provision and attempted provision of material support to ISIS during overlapping date ranges); United States v. Saleh, No. 15-cr-00517 (E.D.N.Y., judgment on Nov. 18, 2021) (defendant pled guilty to two counts alleging attempted provision of "personnel" to ISIS on separate dates).

**C. Should the Court Find that Counts One, Two, and Three Are Multiplicitous, the Proper Remedy is to Vacate Any Convictions on Multiplicitous Counts Following Trial, Not Dismissal Prior to Trial**

If the Court finds that Counts One, Two, and Three seek to punish a "single course of conduct" or "single transaction," and that section 2339B does not authorize multiple punishments for the separate acts alleged, pre-trial dismissal is not the proper remedy. Multiplicity is not fatal and does not require the dismissal of any counts of an indictment. 1A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 146 (5th ed. 2022), citing Chilaca, 909 F.3d 296-97.  Instead, the Ninth Circuit has held that where the government's evidence at trial is the same regardless of whether the indictment contains one count or more than one multiplicitous counts, the proper remedy is to vacate any multiplicitous convictions that result.  United States v. Zalapa, 509 F.3d 1060, 1065 (9th Cir. 2007); United States v. Nash, 115 F.3d 1431, 1438 (9th Cir. 1997). Allowing the indictment on multiple counts to proceed and vacating

multiplicitous convictions only after the evidence comes in "helps to prevent minor problems of proof on one count from allowing a genuinely guilty person to escape liability for his criminal conduct."  United States v. Luskin, 926 F.2d 372, 378 (4th Cir. 1991).

While in the case cited by defendant, Pac. Gas & Elec. Co., 153 F. Supp. 3d 1084, the court ordered the dismissal of multiplicitous counts prior to trial, the court's order there was based on its finding that charging 20 counts in relation to the alleged violation of only five regulations would unfairly prejudice the defendant in the eyes of the jury.  Id. at 1094.  Defendant argues here that his single course of conduct has been improperly charged in three counts, each of which merely describes the defendant's actions on a particular date.  The jury will hear evidence relating to the defendant's conduct on each date referenced in these counts regardless of whether the indictment includes three counts or one, so there is no risk of prejudice here.  Thus, even if the Court accepts defendant's arguments as to multiplicity, the Court should not dismiss any counts prior to trial.

**IV.   CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny defendant's motion to dismiss.

DATED: July 15, 2022                    TRACY L. WILKISON
                                        Acting United States Attorney

                                        CHRISTOPHER D. GRIGG
                                        Assistant United States Attorney
                                        Chief, National Security Division


                                            /s/
                                        _____
                                        MARK TAKLA
                                        CHRISTINE M. RO
                                        Assistant United States Attorneys

                                            /s/
                                        _____
                                        JOHN CELLA
                                        Trial Attorney
                                        Counterterrorism Section
                                        National Security Division

                                        Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA