KARREN KENNEY, CA. SBN 174872
KENNEY LEGAL DEFENSE
2900 Bristol Street, Suite C204
Costa Mesa, CA 92626
TELEPHONE:(855) 505-5588
E-MAIL: KARREN.KENNEY@GMAIL.COM

CHARLES D. SWIFT, WA Bar No. 41671
CONSTITUTIONAL LAW CENTER FOR MUSLIMS IN AMERICA
100 N. Central Expy. SUITE 1010
Richardson, TX  75080
TELEPHONE: (972) 914-2507
FAX: (972) 692-7454
EMAIL: CSWIFT@CLCMA.ORG

ATTORNEYS FOR THE DEFENDANT

JASON FONG

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>　　　　　　Plaintiff(s),<br><br>　vs.<br><br>JASON FONG<br><br>　　　　　　Defendant(s). | Case No.: SACR 20-00146-DOC<br><br>DEFENDANT'S REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO DISMISS COUNTS ONE THROUGH THREE |

**DEFENDANT'S REPLY TO GOVERNMENT RESPONSE TO MOTION TO DISMISS COUNTS ONE THROUGH THREE**

**A. The Rule of Lenity Applies**

The government is wrong in its assertion that the rule of lenity does not apply in this case. As Judge Henderson correctly found in *United States v. PG&E*, 153 F. Supp. 3d 1084, (N.D. Cal. 2015), the rule of lenity always applies to an inquiry regarding what "unit of prosecution" is authorized under a statute. This approach has been mandated since *Bell v. United States,* 349 U.S. 81 (1955), which stated,

> When Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity. And this not out of any sentimental consideration, or for want of sympathy with the purpose of Congress in proscribing evil or anti-social conduct. It may fairly be said to be a presupposition of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment.

Judge Henderson's approach is not unique to him but is rather mandatory law in the Ninth Circuit. *See Brown v. United States*, 623 F.2d 54, 57 (9th Cir. 1980) (stating, "A court may not impose consecutive sentences for a single transaction that violates more than one statutory provision or purpose unless Congress has clearly expressed its intent to make each violation within that single transaction a separate offense subject to separate punishment."); *see also United States v. PG&E*, 153 F. Supp. 3d 1084, (N.D. Cal. 2015) quoting *United States v. Clements*, 471 F.2d 1253, 1254 (9th Cir. 1972) ("[u]nless we can find from the face of the Act or from its legislative history a clear indication that Congress intended to authorize multiple punishments for a single transaction, we are obliged to construe the Act against the harsher penalties that result from cumulative punishments.); *see also United States v. Keen*, 104 F.3d 1111, 1119 (9th Cir. 1996) (holding that the rule of lenity as explained in *Brown,* required finding that imposition of consecutive sentences . . . was error where the statute and legislative history were silent on the unit of prosecution.)

In summary, the rule for this Court to apply is not whether 18 U.S.C. § 2339B is ambiguous in any form, but rather whether the text of 18 U.S.C. § 2339B, or its legislative history, clearly permits

prosecution for each instance of service. The statute and legislative history must unambiguously permit prosecution for each alleged instance of service attempted to be provided to a Foreign Terrorist Organization ("FTO").

**B.  18 U.S.C. § 2339B does not clearly indicate a unit of prosecution**

The government admits that "the legislative history of 2339B, and its related provisions in 2339A, do not speak directly to the authorized unit of prosecution." Doc. 121 at 20. Nevertheless, the government argues that this Court should find that the statute unambiguously authorizes "single, discreet acts" as the unit of prosecution. To do so would be plain error in the absence of a clear indication from the statute, or legislative history, of what the intended unit of prosecution is for section 2339B– as evidenced by the competing analyses by the defense and the government. *See* Doc. 119 at 8, 9, 11, 14 and Doc. 121 at 11, 14, 16.

This is particularly true because of the structure of the statute and its use of "any" as a predicate. The government admits that the Ninth Circuit has found that the use of "any", in this context, results in ambiguity regarding congressional intent to impose multiple punishments for the same course of conduct. Doc. 121 at 16 citing *Chilaca*, 909 F.3d at 293-95; s*ee also United States v. Vargas-Castillo,* 329 F.3d 715, 721 (9th Cir. 2003) (discussing how to determine the appropriate unit of prosecution and explaining that when the word "any" is used to refer to the prohibited act, a statute is ambiguous as to the unit of prosecution.)[1]

The government nevertheless argues that the subsequent use of the term "including" in the definition of "material support and resources" clarifies that the unit of prosecution is each discreet

---

[1] Explaining that possession of "any firearm" or "any narcotic drug," both of which, under the rule of lenity, may be charged as only one offense even if multiple firearms or multiple types of drugs are possessed). I*d*. citing *United States v. Turne*r, No. CR05-355C, 2007 U.S. Dist. LEXIS 21385, at *12 (W.D. Wash. Mar. 26, 2007)

act. The government provides no explanation or cite for their argument that the term "including" in a list of types of conduct, would make the term "any" less ambiguous.

In fact, "including" is a standard term included in lists. In *United States v. Elliott*, 937 F.3d 1310 (10th Cir. 2019), cited by the defense, the Tenth Circuit considered this issue in a statute structured in the same format as 18 U.S.C. 2339B. The Tenth Circuit found that the statute's ambiguous modifier "any", preceding a list that also contained the term "including" was sufficiently ambiguous to apply the rule of lenity. In contrast, the statute the government cites (18 U.S.C. § 1341) is dissimilar to 18 U.S.C. § 2339B. That statute contains the phrase "any matter or thing" throughout and does not contain the term "including". In short, the language of the statute is not definitive as to what the unit of prosecution is. Thus, this Court, applying the statutory construction mandated by the Supreme Court and the Ninth Circuit, should conclude the statute does not authorize the unit of prosecution as being single discreet acts, over a "course of conduct"

**C. The government misconstrues what a "course of conduct" as the unit of prosecution would indicate for the scope of section 2339B charges**

The government argues that the attempted provision of training materials on different dates is sufficient to sustain a separate count in violation of section 2339B for each date. In support, the government argues that finding otherwise would mean a "defendant could never be charged with more than one count in violation of section 2339B so long as that defendant supported the same FTO and in a similar way each time he acted--no matter how many 'acts' the defendant took to provide material support." Doc. 121, at 14 citing *United States v. Moalin*, 973 F.3d 977 (9th Cir. 2020).

The government's argument is erroneous because it ignores the "managerial decision" present in the context of attempted provision of services to an FTO. The "managerial decision" for the attempted provision of services is the decision to provide services "in coordination with, or at the direction of" a designated FTO. *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 24 (2010) (explaining that "service" in section 2339B would ordinarily be understood to cover advocacy performed "in

coordination with, or at the direction of, a foreign terrorist organization.) The government is wrong in arguing that the Supreme Court's holdings regarding "services" is irrelevant to this Court's analysis

In *Holder v Humanitarian Law*, the plaintiffs (humanitarian law professors) had sought to provide legal training and expertise to a terrorist organization. The Court held that these activities were "services" and therefore applied the general definition to "services" to decide whether a person of ordinary intelligence would be put on notice that the conduct they sought to engage in would violate the statute. The definition of "services" was integral to the Supreme Court's finding that the plaintiff's proposed course of action unambiguously violated the statute. It does not follow that the definition of "services" was essential to finding the statute constitutional but now has no relevance to interpreting whether the conduct here describes a course of conduct rather than a "single, discrete act".  The term "service", in and of itself, describes a course of conduct, but more importantly here, it also describes what the "managerial decision" is.

Here, Mr. Fong is alleged to have made the managerial decision to provide services to Hay'at Tahrir al-Sham ("HTS") in all three counts. The managerial decision in each count is the same. Mr. Fong did not need to make a new managerial decision with respect to each count for him to be liable for attempting to provide support to HTS. Mr. Fong is alleged to have made that managerial decision on or about March 17, 2020.  Counts One through Three do not suggest the possibility that there were separate managerial decisions in their factual allegations. The "training" alleged is similar in content and is the type of activity that would be conducted over time. Further, the government does not argue that Mr. Fong made separate, additional managerial decisions to work in coordination with, or under the direction of, HTS.

The government nevertheless argues that the allegation that Mr. Fong posted different weblinks and documents to his chat group on different dates is sufficient to support a separate count for each date. The government does not explain how those are separate managerial decisions. Indeed, if

different dates and slightly different lengths of time were sufficient to constitute a separate managerial decision then the cases cited by the government, where the counts were found to be multiplicitous, would have had different outcomes as in each case there were multiple violations of the statue on separate occasions. The key in finding the multiplicity in every case was that criminal conduct arose from the same managerial decision.

Finally, the government's reliance on *United States v. Moalin*, 973 F.3d 977 (9th Cir. 2020) in support of their argument that multiple single acts on different dates is sufficient to support separate counts in violation of section 2339B is erroneous. *Moalin* is irrelevant to the assessment of the unit of prosecution for section 2339B. *Moalin* had one conviction for a conspiracy to violate section 2339B via multiple financial transactions over the course of five months, and a separate conviction for a substantive violation of 2339B for the two transactions the government could prove were actually provided. *See* Second Superceding Indictment, *United States v. Moalin*, No. 3:10-cr-04246, ECF. 147 (S.D. Cal, June 9, 2012). Multiplicity was never raised in *Moalin* because those charges were not multiplicitous. A conspiracy charge, and a separate charge for the actual act are not multiplicitous and can be charged separately.[2] *Moalin* provides no insight to the unit of prosecution authorized under section 2339B.

**D. The appropriate remedy for multiplicitous counts is dismissal**

The government argues that if the Court determines Counts One through Three are mutliplicitous, the Court should refrain from dismissal until after trial. Waiting until after trial is not an appropriate remedy in this case because it would prejudice the defendant. Trial on multiplicitous counts would prejudice the defendant because (1) it would suggest to the jury that the defendant has committed more

---

[2] Conspiracy to commit an offense and the substantive offense is not multiplicitous because a conspiracy and the completed offense are separate crimes. Conspiracy is an inchoate offense, which is in essence an agreement to commit an unlawful act. Thus, separate sentences can be imposed for a conspiracy to commit a criminal act and the subsequent accomplishment of that criminal act. *See Iannelli v. United States*, 420 U.S. 770, 777–79 (1975); Callanan v. United States, 364 U.S. 587, 592- 94 (1961).

crimes than the evidence supports; (2) not identifying which mutliplicitous counts would be dismissed would create ambiguity in sentencing.

In a case involving terrorism, the more counts there are suggests the defendant has at least committed some act of terrorism. Using multiplicitous counts suggests to the jury that they should convict the defendant of something, if not everything, at the very least. Thus, the defendant's right to a fair trial on the merits is implicated by the decision to delay dismissal until after the jury has returned its findings.

The count of conviction has significant implications for sentencing because of potential application of the "terrorism enhancement". U.S.S.G. § 3A1.4. This enhancement increases the defendant's criminal history score to level VI (career offender), regardless of their actual criminal history. It also increases their offense level by 12 points. The "terrorism enhancement" is only applied to convictions that had the additional specific intent of being calculated to influence or affect the conduct of a government through intimidation, coercion, or retaliation. This enhancement is only applicable to the offense of conviction, and its application cannot include conduct from counts that are dismissed. *United States v. Amer Sinan Alhaggagi*, 978 F.3d 693, 700 n.6 (9th Cir. 2020) (holding that "the text of the terrorism enhancement, explicitly requires the underlying offense — the offense that violates one of the enumerated crimes in the second prong — be calculated to influence or affect government conduct.") Given the potential consequences dependent on which count is elected, it would be highly prejudicial to permit the government to select the count that they would like to proceed to sentencing on after the fact.

Finally, unlike the defendant, dismissal of the multiplicitous counts does not prejudice the government at trial. The government is free to seek a new indictment charging the attempted provision of material support, in the form of services, to HTS from March 17, 2020 to May 7, 2020 (the date range for Counts One through Three). Because this is a single course of conduct, the government is

therefore free to admit all evidence showing the attempted provision of services provided during that period of time. In short, the government's ability to put on their case would not be impacted at all by dismissing the multiplicitous counts.

**Conclusion**

    For the reasons above, the defendant respectfully requests that this Court find Counts One to Three to be multiplicitous and redress the multiplicity by dismissing all three counts as none of them can be elected without improperly amending the indictment.

Respectfully submitted this 15th day of August, 2022,

By: /s/ *Charles Swift*
Charles D. Swift, CLCMA
*Pro Hac* Attorney for Fong
100 N. Central Expy, Suite 1010
Richardson, TX 75080
(972) 914-2507

By: /s/ *Karren Kenney*
Karren Kenney, Kenney Legal Defense
Attorney for Fong
2900 Bristol Street, Suite C204
Costa Mesa, CA 92626
(855) 505-5588