E. MARTIN ESTRADA
United States Attorney
CHRISTOPHER D. GRIGG
Assistant United States Attorney
Chief, National Security Division
CHRISTINE M. RO (Cal. Bar No. 285401)
Assistant United States Attorney
Terrorism and Export Crimes Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-4496
    Facsimile: (213) 894-2927
    E-mail:   Christine.Ro@usdoj.gov

MATTHEW G. OLSEN
Assistant Attorney General
National Security Division
JOHN CELLA (D.C. Bar No. 1035356)
Trial Attorney
Counterterrorism Section
    950 Pennsylvania Ave, NW
    Washington, DC 20530
    Telephone: (202) 305-1601
    Email:   John.Cella@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>       v.<br><br>JASON FONG,<br>  aka "asian_ghazi,"<br>  aka "Jason Asian Ghazi,"<br>  aka "Mustafa Ahmed Al-Hakim,"<br><br>       Defendant. | No. SA CR 20-00146(A)-DOC<br><br>GOVERNMENT'S MOTION *IN LIMINE* #1: MOTION FOR ORDER PERMITTING INTRODUCTION OF EVIDENCE PURSUANT TO FEDERAL RULE 404(b)<br><br>Hearing Date: TBA<br>Hearing Time: TBA<br>Location:   Courtroom of the<br>          Hon. David O.<br>          Carter |

     Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Christine M. Ro and

National Security Division Counterterrorism Section Trial Attorney John Cella, hereby moves <u>in limine</u> for an order permitting the government to introduce evidence of (1) defendant's expressed support for and sympathy toward foreign extremist organizations, extremist teachings, and designated foreign terrorist organizations and other extremist groups; (2) defendant's attempts to possess and his actual possession of firearms, ammunition, and body armor, as well as his modification of firearms; (3) defendant's threats of violence against individuals in the United States including the military, police officers, members of his family, and others; and (4) defendant's lies to law enforcement during his May 20, 2020 interview.  This evidence is not precluded by Federal Rule of Evidence 404(b) and is admissible because it is (1) inextricably intertwined with the charges in the indictment, and (2) probative of defendant's motive, preparation, plan, knowledge, intent, absence of mistake, and the context of other evidence of the charged conduct.  This motion is based upon the attached memorandum of points and authorities, the files and records

///

in this case, and such further evidence and argument as the Court may permit.

Dated: September 20, 2022          Respectfully submitted,

                                  E. MARTIN ESTRADA
                                  United States Attorney

                                  CHRISTOPHER D. GRIGG
                                  Assistant United States Attorney
                                  Chief, National Security Division


                                  _____/s/_____
                                  CHRISTINE M. RO
                                  Assistant United States Attorney

                                  JOHN CELLA
                                  Trial Attorney
                                  Counterterrorism Section
                                  National Security Division

                                  Attorneys for Plaintiff
                                  UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                          PAGE

**TABLE OF AUTHORITIES**................................................ii

**MEMORANDUM OF POINTS AND AUTHORITIES**...............................1

    I.     INTRODUCTION.............................................1

    II.    FACTUAL BACKGROUND......................................1

          A.    Defendant's Dissemination of Combat and Weapons-
                Making Information, and His Contemporaneous
                Statements of Support for Foreign Extremist
                Groups and Extremist Ideologies......................2

          B.    Defendant's Communications with OCE#2 Regarding
                HTS and Modification of Firearms ...................4

          C.    Defendant's Solicitation of Cryptocurrency for
                HAMAS and Related Communications ...................5

    III. APPLICABLE LEGAL STANDARDS...............................7

          A.    Evidence That Is "Inextricably Intertwined" with
                Charged Conduct Is Admissible Under Rule 402........7

          B.    Relevant Evidence of Defendant's "Other Acts" Not
                Used to Prove Criminal Propensity is Not Barred
                Under Rule 404(b) ..................................8

          C.    Probative Evidence is Admissible Unless it is
                Unduly Prejudicial.................................9

    IV.  ARGUMENT................................................10

          A.    Defendant's Expressed Support For and Sympathy
                Toward Foreign Extremist Organizations and
                Extremist Teachings................................10

          B.    Defendant's Attempts to Possess and Actual
                Possession of Firearms, Ammunition, and Body
                Armor, and His Modification of Firearms............15

          C.    Defendant's Threats of Violence....................17

          D.    Defendant's Lies to Law Enforcement During His
                May 20, 2020 Interview............................18

    V.     CONCLUSION.............................................19

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                 PAGE

**CASES**

Brooks v. Caterpillar Global Mining America, LLC,
    2017 WL 3401476 (W.D. Ky. Aug. 8, 2017) .....................15

Old Chief v. United States,
    519 U.S. 172 (1997) .........................................7

United States v. Abu-Jihaad,
    630 F.3d 102 (2d Cir. 2010) ................................13

United States v. Beckman,
    298 F.3d 788 (9th Cir. 2002) ..........................8, 9, 18

United States v. Blitz,
    151 F.3d 1002 (9th Cir. 1998) ..............................9

United States v. DeGeorge,
    380 F.3d 1203 (9th Cir. 2004) .............................12

United States v. El-Mezain,
    664 F.3d 467 (5th Cir. 2011) ..............................15

United States v. Hammond,
    381 F.3d 316 (4th Cir. 2004) (en banc), overruled on
    other grounds, 543 U.S. 1097 (2005) ......................14

United States v. Hankey,
    2013 F.3d 1160 (9th Cir. 2000) ............................10

United States v. Iverson,
    162 F.3d 1015 (9th Cir. 1998) .............................18

United States v. Kadir,
    718 F.3d 115 (2d Cir. 2013) ...............................16

United States v. Kaziu,
    559 F. App'x 32 (2d Cir. 2014) ............................13

United States v. Lillard,
    354 F.3d 850 (9th Cir. 2003) ...............................8

United States v. Mehanna,
    735 F.3d 32 (1st Cir. 2013) ...............................13

United States v. Mende,
    43 F.3d 1298 (9th Cir. 1995) ..........................9, 10

United States v. Mohamud,
  843 F.3d 420 (9th Cir. 2016) ...............................14

United States v. Patterson,
  819 F.2d 1495 (9th Cir. 1987) ...............................9

United States v. Perkins,
  937 F.2d 1397 (9th Cir. 1991) ..............................18

United States v. Plancarte-Alvarez,
  366 F.3d 1058 (9th Cir. 2004) ..............................10

United States v. Ramirez-Robles,
  386 F.3d 1234 (9th Cir. 2004) ...............................9

United States v. Rrapi,
  175 F.3d 742 (9th Cir. 1999) ................................9

United States v. Rude,
  88 F.3d 1538 (9th Cir. 1996) ................................9

United States v. Salameh,
  152 F.3d 88 (2d Cir. 1988) .................................12

United States v. Siraj,
  2008 WL 2675826 (2d Cir. July 9, 2008) .....................15

United States v. Sneezer,
  983 F.2d 920 (9th Cir. 1992) ................................9

United States v. Soliman,
  813 F.2d 277 (9th Cir. 1987) ................................8

United States v. Springer,
  753 F. App'x 821 (11th Cir. 2018) ..........................11

United States v. Vizcarra-Martinez,
  66 F.3d 1006 (9th Cir. 1995) ................................8

United States v. Williams,
  291 F.3d 1061 (9th Cir. 1995) ...............................8

United States v. Young,
  916 F.3d 368 (4th Cir. 2019) ...............................14

**STATUTES**

18 U.S.C. § 2339B(a)(1).........................................1

**OTHER AUTHORITIES**

Federal Rule of Evidence 401....................................7

Federal Rule of Evidence 404(b)...........................*passim*

Federal Rule of Evidence 402....................................7

Federal Rule of Evidence 403..........................9, 10, 15

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.   INTRODUCTION**

3
Defendant is charged with four counts alleging violations of 18

4
U.S.C. § 2339B(a)(1) for his attempted provision of material support

5
and resources to two designated Foreign Terrorist Organizations

6
("FTOs").  The government intends to introduce evidence at trial of

7
defendant's many statements and related conduct that bear on his

8
motive to provide material support and resources to the FTOs at

9
issue, almost all of which overlaps with the timespan covered by the

10
charged offenses.  Specifically, the government moves for an order

11
permitting the introduction of evidence of (1) defendant's expressed

12
support for and sympathy toward foreign extremist organizations,

13
extremist teachings, and designated FTOs and other extremist groups,

14
during the period of February through May 2020; (2) defendant's

15
attempts to possess and his actual possession of firearms,

16
ammunition, and body armor, as well as his modification of firearms

17
during the same period; (3) defendant's threats of violence against

18
individuals in the United States including the military, police

19
officers, members of his family, and others; and (4) defendant's lies

20
to law enforcement during his May 20, 2020 interview.  While almost

21
all of this evidence is inextricably intertwined in the charged

22
offenses, it is also admissible under Federal Rule of Evidence 404(b)

23
as proof of defendant's motive, intent, preparation, plan, knowledge,

24
and absence of mistake.  Accordingly, the government seeks an order

25
permitting the introduction of such evidence.

26

**II.   FACTUAL BACKGROUND**

27
Counts 1, 2, and 3 charge defendant with attempting to provide

28
services by providing combat training information and information

regarding the making of weapons, including improvised explosive devices ("IEDs"), to Hay'at Tahrir al-Sham ("HTS").  Counts 1 and 2 also charge defendant for attempting to provide the services of "compiling" and "archiving" such material.  Count 4 charges defendant with attempting to provide "services and currency, including fundraising and money," to Harakat al-Muqawama al-Islamiya ("HAMAS").

During the period of February 6, 2020, through May 18, 2020, defendant communicated with others online regarding his support for certain terrorist groups as well as armed attacks to be carried out in Syria and the United States.  In some of defendant's communications, he provided instructional information regarding chemical weapons, IEDs, and tactical combat techniques to individuals he understood to be fighting on behalf of or planning to fight on behalf of HTS.  In addition, on May 18, 2020, defendant used a group chat he created to send messages and a weblink soliciting the donation of cryptocurrency for HAMAS.  Defendant's other online statements and communications regarding his support for HTS, HAMAS, and associated extremist groups and ideologies occurred nearly contemporaneously and provide crucial background for his charged conduct.

**A.  Defendant's Dissemination of Combat and Weapons-Making Information, and His Contemporaneous Statements of Support for Foreign Extremist Groups and Extremist Ideologies**

In February 2020, on an encrypted communications platform, defendant created an online group chat titled "Mujahideen Amerikeeon" (later renaming it "Mujahideen in America"), to which he invited other individuals he understood to share an affinity for extremist ideology.  In this group chat, as well as in other group chats and direct messages, defendant discussed

2

and expressed his support for HTS and associated groups, including Malhama Tactical and Ajnad Al Kavkaz, both of which defendant understood to have worked with HTS on the battlefield in Syria.[1]

Defendant communicated in his "Mujahideen in America" group chat and elsewhere with other individuals he believed not only shared his ideology, but also intended to fight on behalf of HTS, until early May 2020.[2]  In the course of those online communications, on March 17 and April 1, 2020, defendant provided combat and weapons-making information from the "Improvised Munitions Black Book," including information regarding the making of IEDs and chemical weapons.  During the same period, defendant stated that he was "not training terrorists - suicide bombers.  I am training soldiers who love life and want to win and nothing more."

Defendant also made contemporaneous statements regarding his animosity toward the United States and Israel and his desire to die as a martyr, fighting abroad.  For example, on March 30, 2020, in a voice message sent in Russian, defendant said that he planned to leave the military because the "US Army are terrorists and so are the Marines."  On April 24, 2020, defendant stated that if al Qaeda "killed the innocent, they are not good," but that the 9/11 terrorist attacks were committed by "Israel Mossad agents

---

[1] Malhama Tactical, also known as "Khorasan," is a private military group that operated in Syria and was allied with HTS.  Ajnad Al Kavkaz, also known as "Soldiers of the Caucasus," is a Chechen-led jihadist group that historically has been active in northern Syria.

[2] Three of the individuals who were members of the "Mujahideen in America" group chat were undercover government agents, including an undercover employee identified as "OCE#1."  OCE#1 later met with defendant in person on April 24 and 25, 2020.

3

or American agents," and that he is "not opposed to killing them, they are the dogs of the west."  On April 15, 2020, defendant posted in a group chat that he had previously told a female with whom he interacted online that "dying as a martyr sounds way better than marrying in the West in general and that my afterlife is worth way more than any earthly marriage."  Defendant also stated that if "given the opportunity or possibility to leave this awful country," he would, and that "I pray to Allah every night that I can become a shaheed[3] instead of die [sic] peacefully."

### B.  Defendant's Communications with OCE#2 Regarding HTS and Modification of Firearms

On May 3, 2020, defendant was introduced to an undercover employee, identified as "OCE#2," who stated that he was an HTS fighter overseas.  Defendant told OCE#2 that defendant was in the U.S. military, that the U.S. government was "very corrupt," and that people in the United States are "morally bankrupt."  Defendant then sent OCE#2 photos of an assault rifle that defendant had modified.  OCE#2 asked whether defendant could perform similar modifications with "grenades" and defendant responded that he wanted to "experiment with chemical recipes," and that he was "thinking of teaching our ikhwan[4] to make gun cotton and thermite...And the more advanced stuff like potassium nitrate."  Defendant also said that "pressure plate bombs and remote detonated [bombs] are the most useful."

During a search of defendant's bedroom at the time of his arrest on May 20, 2020, approximately two weeks later, law

---

[3] "Shaheed" or "shahid" is the Arabic word for "witness" and commonly refers to a Muslim who dies as a martyr to his faith.

[4] The Arabic word "ikhwan" translates to "brothers."

4

enforcement found an illegal and unserialized AR-15 type assault rifle, a bolt-action rifle with a scope, two handguns, nine high-capacity handgun and rifle magazines, and several thousand rounds of ammunition.  The assault rifle was loaded with a round in the chamber and a high-capacity magazine with a second, high-capacity magazine taped to it.  One handgun was found under defendant's pillow on his bed, loaded with a magazine and a round in the chamber.  The assault rifle was found on an improvised rifle rack on the side of his bed.  Law enforcement also found a gas mask and an armor plate carrier containing body armor next to his bed.  Although at the time, defendant was a Marine reservist, the gas mask and armor plate carrier found in his bedroom were not issued by the military.

### C. Defendant's Solicitation of Cryptocurrency for HAMAS and Related Communications

Defendant also used another online group chat that he had created to solicit cryptocurrency donations for HAMAS. Specifically, on May 18, 2020, defendant posted a link to a fundraising website for the Al-Qassam Brigades, HAMAS's military wing.  Defendant posted "Give them Sadaqah"[5] under the link. Referring to HAMAS, defendant also stated, "They take Bitcoin and they explain the whole process on how to help out the Palestinian Resistance...This is a cause I am sure we can all get behind" and "I know the majority of us are either individual workers, college students or the like.  But I want us to get involved with Blockchain or some other digital currency trading platform (make

---

[5] The Arabic word "sadaqah" translates to "voluntary charity."

an account with a common password amongst us), so we can potentially give Sadaqah to groups we support anonymously."

That same day, after sending the HAMAS fundraising link in the group chat, defendant communicated with OCE#1 via a direct message exchange. Defendant began this exchange by stating that HAMAS, ISIS, and Hezbollah were not the same. OCE#1 asked if sending money to HAMAS was possible, to which defendant responded, "of course we can" and that he was "trying to find out more about cryptocurrency" because it was the safest way to send money to help "our brothers overseas." Defendant also stated that "it is very difficult to fight there because Israeli scum are in power" and that Israel's "weaponry and structure are very difficult."

At the time of his arrest on May 20, 2020, defendant provided a voluntary interview to law enforcement in which he initially denied (1) that he knew individuals with whom he had communicated online had referenced a terrorist group during their communications; (2) that he had provided training materials to these individuals, other than materials regarding religious guidance and firearms safety; (3) that he discussed weapons or bombs with other individuals online; (4) that he supported an FTO, including HTS and HAMAS; (5) that he knew HTS and HAMAS were designated FTOs; (6) that he solicited any others to donate funds to a terrorist organization; and (7) that he ever met any individuals who were part of his group chats in person. Defendant later admitted during this interview that he knew HAMAS operated the website for which he sent a link in the group chat, that HAMAS was the beneficiary of funds donated via that website, and that HAMAS was a designated FTO. Defendant

also subsequently admitted that he had performed an internet search for the Al Qassam Brigades and that he understood funds donated via the website he linked to would be used to purchase weapons in addition to humanitarian aid.   A forensic examination of defendant's phone seized incident to his arrest revealed that defendant made over 80 HAMAS-related online searches between May 16 and May 18, 2020, and that some of the webpages defendant visited indicated that HAMAS was an FTO.

## III. APPLICABLE LEGAL STANDARDS

### A. Evidence That Is "Inextricably Intertwined" with Charged Conduct Is Admissible Under Rule 402

All "[r]elevant evidence is admissible" except as prohibited by the Constitution, statute, or Federal Rules of Evidence.  Fed. R. Evid. 402.  Relevant evidence is evidence that has "any tendency" to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.  Fed. R. Evid. 401.  To be "relevant," evidence need not be conclusive proof of a fact sought to be proved, or even strong evidence of the same.  All that is required is a "tendency" to establish the fact at issue.  Fed. R. Evid. 401 advisory committee notes on opposed rules.

Evidence that tells the "story of guiltiness" or that provides context to the crime is direct evidence and should be admitted.  Old Chief v. United States, 519 U.S. 172, 188 (1997) ("the prosecution may fairly seek to place its evidence before the jurors, as much to tell a story of guiltiness as to support an inference of guilt, to convince the jurors that a guilty verdict would be morally reasonable as much to point to the discrete elements of a defendant's legal

fault."). A jury "cannot be expected to make its decision in a void without knowledge of the time, place, and circumstances of the acts which form the basis of the charge." United States v. Vizcarra-Martinez, 66 F.3d 1006, 1013 (9th Cir. 1995).

Relevant evidence of a defendant's conduct and behavior that provides a "coherent and compressive story" and refutes a claim of innocence of lack of intent is also admissible as "inextricably intertwined" with the charged conduct. United States v. Beckman, 298 F.3d 788, 793-94 (9th Cir. 2002). Evidence is inextricably intertwined if it "constitutes a part of the transaction that serves as the basis for the criminal charge or was necessary to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime." United States v. Williams, 291 F.3d 1061, 1189 (9th Cir. 1995); see also United States v. Soliman, 813 F.2d 277, 278 (9th Cir. 1987) ("Evidence should not be treated as other crimes evidence when the evidence concerning the other act and evidence concerning the crime charged are inextricably intertwined.") (internal citations omitted).

**B.    Relevant Evidence of Defendant's "Other Acts" Not Used to Prove Criminal Propensity is Not Barred Under Rule 404(b)**

Where the evidence the government seeks to introduce is "directly related to, or inextricably intertwined with, the crime charged in the indictment," Federal Rule of Evidence 404(b) does not apply. United States v. Lillard, 354 F.3d 850, 954 (9th Cir. 2003). Even if not "inextricably intertwined," evidence of a defendant's "other acts" is not excludable under Rule 404(b) so long as it is used for a purpose other than to prove criminal propensity. Fed. Rule Evid. 404(b). Rule 404(b) is a rule of "inclusion," not

exclusion, and relevant evidence of a defendant's other acts is "admissible to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." United States v. Sneezer, 983 F.2d 920, 924 (9th Cir. 1992); see also United States v. Rrapi, 175 F.3d 742, 748 (9th Cir. 1999) ("Rule 404(b) is a rule of "inclusion," and "unless the evidence of other crimes tends only to prove propensity, it is admissible.").

Evidence will be admitted under Rule 404(b) if it, (1) tends to prove a material point in issue; (2) is not too remote in time; (3) is proven with evidence sufficient to show that the act was committed; and (4) if admitted to prove intent, is similar to the offense charged. Beckman, 298 F.3d at 794; see also United States v. Ramirez-Robles, 386 F.3d 1234, 1242 (9th Cir. 2004). Evidence that meets the four-part test should be admitted unless "its prejudicial impact substantially outweighs its probative value." United States v. Blitz, 151 F.3d 1002, 1008 (9th Cir. 1998); United States v. Rude, 88 F.3d 1538, 1549–50 (9th Cir. 1996).

### C. Probative Evidence is Admissible Unless it is Unduly Prejudicial

Exclusion of relevant evidence under Rule 403 is an "an extraordinary remedy to be used sparingly because it permits the trial court to exclude otherwise relevant evidence." United States v. Patterson, 819 F.2d 1495, 1505 (9th Cir. 1987), quoted by United States v. Mende, 43 F.3d 1298, 1302 (9th Cir. 1995). Under the Rule, a court may "exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue

9

delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Exclusion of relevant evidence is only appropriate when the danger of prejudice "substantially" outweighs the evidence's probative value.  Fed. R. Evid. 403; <u>Mende</u>, 43 F.3d at 1302.  Rule 403's "major function is limited to excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect."  <u>United States v. Hankey</u>, 2013 F.3d 1160, 1172 (9th Cir. 2000).  Moreover, any marginal danger of unfair prejudice may be "minimized by the district court's limiting instruction."  <u>United States v. Plancarte-Alvarez</u>, 366 F.3d 1058, 1063 (9th Cir. 2004).

## IV. ARGUMENT

### A. Defendant's Expressed Support For and Sympathy Toward Foreign Extremist Organizations and Extremist Teachings

The government intends to offer the following evidence of defendant's expressions of support for extremist organizations and teachings:

- Extremist social media posts made, "liked," or commented on by defendant
- Online communications regarding extremist groups and teachings between defendant and government undercover employees
- Extremist videos, images, and songs stored on defendant's digital devices seized by law enforcement
- Defendant's statements about leaving the United States because of dissatisfaction with the country and going to Syria to join, train, and fight with groups to include FTOs and their affiliates
- Defendant's statements concerning his support for and intention to join HTS, Ajnad Al Kavkaz (also known as "Soldiers of Caucasus"), and Malhama Tactical
- Defendant's statement that Marines and U.S. Army soldiers are terrorists

10

- • Defendant's expression of support for the prominent extremist, Anwar Al-Awlaki
- • Nazi paraphernalia found in defendant's bedroom at the time of his arrest (which, combined with defendant's other statements regarding the Nazi accommodation of Muslim fighters, is probative of his motivation and affinity for extremist ideology, as well as sympathy for HAMAS and its opposition to Israel)
- • Defendant's statements about being a martyr and becoming a "shaheed"

This evidence -- which helps establish a pattern of defendant's support for and sympathy towards foreign extremist organizations and extremist teachings, his efforts over time to research extremist organizations and where and how they operated, and his intention to move to Syria, train others fighting on behalf of groups associated with HTS, and even die as a martyr -- is all plainly intrinsic to and "inextricably intertwined" with the allegations in the indictment.  Where such evidence reflects defendant's conduct before the March 17, 2020, message in which he provided combat and weapons-making information, it serves as a prelude to Count 1 and the other charged offenses, is directly probative of those charged offenses, arises from the same events as the charged offenses, forms an integral part of witness testimony (including the anticipated testimony of the government undercover witnesses who communicated with defendant directly on encrypted communications and social media platforms), and completes the story of the charged offenses.  See, e.g., United States v. Springer, 753 F. App'x 821, 825-26, 828-30 (11th Cir. 2018) (images demonstrating support for ISIS and for radical cleric Anwar al-Awlaki on defendant's cell phone and social

11

media account admissible as intrinsic evidence of charged threat to

assault and murder a United States judge and related obstruction

charges because the evidence was "necessary to provide context for

and complete the story of" these offenses and also because it showed

defendant's motive, intent, plan, preparation, and knowledge);

United States v. Salameh, 152 F.3d 88, 110-12 (2d Cir. 1988)

(extremist materials seized from defendant and defendant's

residence, including videotape of the bombing of an American

embassy, handwritten notebooks on how to make explosives and

improvised weapons, and a document urging acts of terrorism against

the enemies of Islam admissible as background evidence of bombing

conspiracy and to show defendant's motive and intent).  It is also

necessary for the government to offer a coherent and comprehensible

story concerning defendant's conduct.  See United States v.

DeGeorge, 380 F.3d 1203, 1220 (9th Cir. 2004) ("The jury cannot be

expected to make its decision in a void without knowledge of the

time, place, and circumstances of the acts which form the basis of

the charge.") (quoting Vizcarra-Martinez, 66 F.3d at 1013).

Furthermore, even were this evidence not intrinsic to the

charged conduct, it is not barred by Rule 404(b)(2).  Defendant's

support for and sympathy towards foreign extremist organizations and

extremist teachings is evidence of defendant's motive, intent,

preparation for, plan regarding, knowledge underlying, and absence of

mistake with respect to his (1) compiling, providing, and archiving

tactical combat and weapons-making information for others he

believed intended to fight on behalf of HTS (Counts 1 and 2); (2) his provision of weapons-making information to OCE#2, who represented that he was working on behalf of HTS in Syria (Count 3); and (4) his solicitation of Bitcoin donations for HAMAS (Count 4). See, e.g., United States v. Kaziu, 559 F. App'x 32, 35-36 (2d Cir. 2014) (evidence that defendant published extremist writings, held extreme political views, and watched video lectures of radical cleric Anwar al-Awlaki which "eased [his] apprehension[] about fighting jihad and encouraged [his] travel to the Middle East" admissible to establish defendant's criminal intent); United States v. Mehanna, 735 F.3d 32, 59-61 (1st Cir. 2013) (propaganda video clips of beheadings, statements of Osama bin Laden and Ayman al-Zawahiri, and images of the World Trade Center in flames relevant and admissible to show that defendant was inspired by these materials and as evidence of his motive and intent in deciding to travel to Yemen to join al-Qaeda); United States v. Abu-Jihaad, 630 F.3d 102, 131-34 (2d Cir. 2010) (defendant's recorded conversations in a leak case, which were captured more than four years after the charged offense, as well as pro-jihadi videos defendant purchased, were relevant and admissible because they demonstrated his familiarity with an organization sympathetic to jihad, his obsession with secrecy in discussing matters related to jihad, and his consciousness of guilt).

Lastly, introduction of this evidence may also be necessary to preempt defenses that defendant may seek to advance in this case,

which the government is entitled to do in its case-in-chief.  The government has a good-faith basis to believe that defendant's defense will include arguments that his online activity involving terrorist organizations and extremist ideologies represented his advocacy on behalf of Muslims fighting oppression abroad, that he opposed certain terrorist groups as misguided, that he abandoned any plan to train or fight on behalf of HTS, and that government agents persuaded him to provide weapons-making information to OCE#2 and to solicit cryptocurrency donations on behalf of FTOs.  It will therefore be incumbent on the government to introduce the evidence outlined above, to demonstrate that defendant's support for extremist organizations and ideologies motivated his desire to aid others fighting on behalf of HTS and HAMAS, and that he was deeply familiar with the various antagonists in the Syrian conflict like HTS, Ajnad al Kavkaz, and Malhama Tactical.  The Rules of Evidence permit the government to introduce evidence for these purposes.  See, e.g., United States v. Young, 916 F.3d 368, 374-75, 378-79 (4th Cir. 2019) (evidence that defendant maintained extremist paraphernalia, including white supremacist and Nazi paraphernalia, in his home relevant and admissible to show defendant's predisposition to support the Islamic State of Iraq and the Levant); United States v. Mohamud, 843 F.3d 420, 423-24, 432-35 (9th Cir. 2016) (evidence that defendant had written articles for Jihad Recollections praising terrorists a year before planning to carry out a bombing admissible to show defendant's predisposition to commit that bombing); United

14

States v. Hammond, 381 F.3d 316, 342-44 (4th Cir. 2004) (en banc), (videotapes found in defendant's apartment depicting violence and anti-American sentiment admissible as evidence of defendant's knowledge of FTO's unlawful activities and his motive in raising funds for the FTO, and also tended to rebut defendant's claim that he sympathized only with the humanitarian goals of the organization), overruled on other grounds, 543 U.S. 1097 (2005); United States v. Siraj, 2008 WL 2675826, at *2 (2d Cir. July 9, 2008) (evidence that defendant charged in a bombing conspiracy recommended that a government source buy certain books from an Islamic bookstore where the defendant worked relevant and admissible to establish defendant's predisposition and rebut entrapment defense); see also Brooks v. Caterpillar Global Mining America, LLC, 2017 WL 3401476, at *7 (W.D. Ky. Aug. 8, 2017) (citing cases) ("Federal courts have repeatedly held that in a criminal case, the government may offer evidence in its case-in-chief in anticipation of an expected defense.").

Furthermore, none of this evidence is excludable under Rule 403. See United States v. El-Mezain, 664 F.3d 467, 509 (5th Cir. 2011) ("Evidence which tends to rebut a defendant's claim of innocent action is unlikely to be unduly prejudicial.").

### B.  Defendant's Attempts to Possess and Actual Possession of Firearms, Ammunition, and Body Armor, and His Modification of Firearms

The government intends to offer the following evidence with respect to firearms and related weapons and items:

15

- Attempts by defendant to obtain and maintain firearms, ammunition, other weapons, and body armor, and acts of displaying firearms, ammunition, or weapons to undercover government agents, including, but not limited to, OCE#2
- Defendant's modifications of firearms and attempts to modify firearms
- Defendant's possession of firearms, ammunition, taped together or "banana clipped" magazines, and body armor staged in his bedroom for quick access

Defendant communicated with OCE#2 regarding the firearms he possessed and modified, as well as his access to ammunition and other weapons, in order to demonstrate his capability as a fighter and potential instructor for HTS fighters in Syria during the same exchange that is the subject of Count Three, so this evidence is inextricably intertwined with the defendant's conduct in providing tactical combat and weapons-making information for the benefit of training fighters. Defendant also communicated with other individuals about his proficiency with firearms in connection with the bomb-making, chemical weapons, and tactical instruction he provided as charged in Counts 1 and 2 of the indictment.

To the extent this evidence is considered other acts, it is not barred by Rule 404(b) since it tends to show defendant's motive, intent, preparation, plan, knowledge, and absence of mistake. It is also admissible as probative of the context of his other communications that are evidence of the charged conduct and to preempt the defense that defendant's online communications regarding HTS and HAMAS were mere ideological advocacy, or motivated solely by peaceful aims. See United States v. Kadir, 718 F.3d 115, 123-24 (2d Cir. 2013) (photos of defendant charged with conspiracy to commit

16

acts of terrorism posing with machine guns admissible to rebut defendant's claim that he was merely engaged in "peaceful fundraising for a future mosque").

### C. Defendant's Threats of Violence

The government intends to offer the following evidence related to defendant's threats of violence:

- Defendant's statements about committing targeted acts of violence in the United States, to include against the U.S. government, the U.S. military, police officers, the LGTBQ community, and a teacher
- Defendant's statements to friends, associates, and former colleagues regarding his desire to engage in violence and killings
- Evidence of defendant's altercation with his mother and sister on May 14, 2017, during which he punched a hole in the door of his mother's and sister's bedrooms (to include photos of the resulting damage)

Many of these threats of violence by the defendant were made in the context of his other statements regarding extremist teachings and thus, are inextricably intertwined with the charged offenses. To the extent that these threats of violence were not directly associated with defendant's expression of support for extremist ideologies, they are evidence of other acts not barred by Rule 404(b) since they show defendant's motive, preparation, plan, and the context of his other communications that are evidence of the charged conduct. In particular, this evidence demonstrates defendant's support for and willingness to engage in violent conduct, including against "unbelievers" and other targets of the FTOs that are the subject of the charged conduct.[6]

---

[6] Should defendant offer character evidence of peacefulness, the government also intends to offer evidence of defendant's threats of violence in rebuttal.

Evidence of defendant's threats also satisfies the Ninth
Circuit's other requirements for "other acts" evidence.  See Beckman,
298 F.3d at 794 (requiring that evidence be "not too remote in time"
and "proven with evidence sufficient to show that the act was
committed").  His statements about committing targeted acts of
violence and his expressed desire to engage in killings (described in
the first two bullet points above) occurred during the timeframe of
February through May 2020, during online exchanges with OCE#1 and
others.  Nor is defendant's March 2017 altercation with his mother
and sister too remote in time from his charged offenses in March,
April, and May 2020.  See United States v. Iverson, 162 F.3d 1015,
1027 (9th Cir. 1998) (noting "this court repeatedly has upheld the
admission of evidence of prior acts that are more than seven years
old.").  Moreover, defendant's other threats are proven with evidence
sufficient to show that these acts were committed, including records
of online communications captured by undercover government agents,
and photos showing damage defendant caused to the doors in his
family's home.

### D.   Defendant's Lies to Law Enforcement During His May 20, 2020 Interview

Defendant's false exculpatory statements to law enforcement
during his voluntary interview on May 20, 2020 -- just two days after
he solicited Bitcoin donations for HAMAS -- are inextricably
intertwined with the charged conduct that he was questioned about
during that interview.  In fact, defendant's lies during this
interview are evidence of his consciousness of guilt.  See United
States v. Perkins, 937 F.2d 1397, 1402 (9th Cir. 1991) (evidence of
defendant's false exculpatory statements to FBI during Mirandized

interview were probative of defendant's consciousness of guilt). Thus, Rule 404(b) does not preclude the admission of those false exculpatory statements.

**V.    CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court grant this motion and issue a ruling permitting the introduction of the evidence described above.