E. MARTIN ESTRADA
United States Attorney
CHRISTOPHER D. GRIGG
Assistant United States Attorney
Chief, National Security Division
CHRISTINE M. RO (Cal. Bar No. 285401)
SOLOMON KIM (Cal. Bar No. 311466)
Assistant United States Attorneys
Terrorism and Export Crimes Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-4496/2450
    Facsimile: (213) 894-2927
    E-mail:   christine.ro@usdoj.gov
               solomon.kim@usdoj.gov

MATTHEW G. OLSEN
Assistant Attorney General
National Security Division
JOHN CELLA (D.C. Bar No. 1035356)
Trial Attorney
Counterterrorism Section
    950 Pennsylvania Ave, NW
    Washington, DC 20530
    Telephone: (202) 305-1601
    Email:   John.Cella@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>JASON FONG,<br>  aka "asian_ghazi,"<br>  aka "Jason Asian Ghazi,"<br>  aka "Mustafa Ahmed Al-Hakim,"<br><br>        Defendant. | No. SA CR 20-146(A)-DOC<br><br>REPLY IN SUPPORT OF GOVERNMENT'S MOTION *IN LIMINE* #3: MOTION TO PRECLUDE DEFENDANT FROM INTRODUCING HIS OWN HEARSAY STATEMENTS; DECLARATION OF CHRISTINE M. RO; AND EXHIBITS FILED UNDER SEAL |

1    Plaintiff United States of America, by and through its counsel
2 of record, the United States Attorney for the Central District of
3 California and Assistant United States Attorneys Christine M. Ro and
4 Solomon Kim, and National Security Division Counterterrorism Section
5 Trial Attorney John Cella, hereby files its Reply in Support of the
6 Government's Motion in Limine #3 to preclude defendant Jason Fong
7 from introducing any portion of his out-of-court hearsay statements
8 at trial.
9    This Reply is based upon the attached memorandum of points and
10 authorities, the files and records in this case, and such further
11 evidence and argument as the Court may permit.

12  Dated: November 9, 2022             Respectfully submitted,

13                                      E. MARTIN ESTRADA
                                        United States Attorney
14
                                        CHRISTOPHER D. GRIGG
15                                      Assistant United States Attorney
                                        Chief, Criminal Division
16

17                                           /s/
                                        CHRISTINE M. RO
18                                      SOLOMON KIM
                                        Assistant United States Attorneys
19
                                        JOHN CELLA
20                                      Trial Attorney
                                        Counterterrorism Section
21                                      National Security Division

22                                      Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   DEFENDANT HAS NO RIGHT TO INTRODUCE SELF-SERVING HEARSAY**

The government anticipates introducing 30 clips of defendant's post-arrent statements in its case-in-chief at trial.  (See Ro Decl. ¶ 2, Ex. A.)  For convenience, these clips are attached as Exhibit C to the Ro declaration.[1]  (Id. ¶ 5, Ex. C.)  The government also intends to use a transcript of these clips at trial, which has been produced to the defense and it attached as Exhibit D to the Ro Declaration.  (Id., Ex. D.)

Each of these clips is highly probative of material facts at issue in trial, including, but not limited to, the identification of defendant as the individual who sent specific materials in group chats, defendant's knowledge of HTS and HAMAS as a foreign terrorist organization, defendant's admission that he provided bomb and weapons-making information to individuals even after learning that they wanted to join HTS and/or fight in Syria, and defendant's admission that he knew providing weapons and bomb-making information was wrong.  For example, defendant provides the following information in the 30 clips that the government intends to use at trial:

- Clip 1: Defendant waives his Miranda rights.
- Clip 2: Defendant acknowledges that he understands that it is a crime to lie to federal law enforcement officers.
- Clip 3: Defendant admits that he is in the Marine Corps.
- Clip 4: Defendant admits that he purchased and owns firearms.
- Clip 5: Defendant claims he does not condone extremism.

---

[1] The government has also attached the full audio-recorded interview as Exhibit B.  (Ro Decl. ¶ 3, Ex. B.)

- Clip 6: Defendant states that he speaks Russian, Chinese, and is learning the Arabic language.
- Clip 7: Defendant admits to talking to an individual on social media who wanted to volunteer in Syria.
- Clip 8: Defendant admits to talking to individuals on Instagram and Signal, and explains his preference to use different types of social medial encrypted applications such as WhatsApp, Instagram, Signal, and Telegram.
- Clip 9: Defendant admits to talking to individuals who wanted to go to Syria in a Signal group chat.
- Clip 10: Defendant admits to sharing a book and weapons information to one of his social media group chats.
- Clip 11: Defendant explains the definition of "Mujahedeen."
- Clip 12: Defendant states that he never asked anyone to donate money to a terrorist organization, provides an explanation of whether he knows what a foreign terrorist organization is, and states the last time he looked at the State Department's website that shows a list of designated foreign terrorist organizations.
- Clip 13: Defendant provides an explanation when asked whether he knew HAMAS was a terrorist organization designated by the State Department.
- Clip 14: Defendant admits that HAMAS would use financial donations to purchase weapons.
- Clip 15: Defendant states he did not know too much about HAMAS.
- Clip 16: Defendant admits to providing firearms training and sending a U.S. Army manual that explains how to build explosives to another group chat.

- Clip 17: Defendant admits that sharing information with others concerning how to make IED's and bombs was wrong.
- Clip 18: Defendant discusses "hijrah" and HTS.
- Clip 19: Defendant admits to sharing information and photographs from the Army manual even after he knew people in the group chat wanted to join HTS.  Defendant also admits that it was wrong for him to distribute the Army manual.
- Clips 20 and 21:  Defendant shares his knowledge of building, purchasing, and using firearms.
- Clip 22: Defendant admits to talking in a Signal group chat where individuals indicated that they wanted to join HTS. Defendant admits that he knows that HTS is a terrorist organization.
- Clip 23: Defendant admits he knew that both HTS and HAMAS are designated terrorist organizations, understood "hijrah" to include "jihad," knew that individuals in the group chat wanted to fight in Syria, and still provided information on how to build weapons.
- Clip 24: Defendant claims that individuals in the group chat looked up to the defendant as their leader.
- Clip 25: Defendant admits that he knew individuals in a group chat wanted to make hijrah and join HTS.
- Clip 26: Defendant admits that his conduct was wrong.
- Clip 27: Defendant admits to knowing HAMAS was a designated terrorist organization.
- Clip 28: Defendant admits that he knew there was a possibility that those who wanted to join HTS would use the weapons-making information defendant provided to help fight in Syria.

3

- Clip 29: Defendant admits to talking to individuals who wanted to join HTS.
- Clip 30: Defendant admits to crossing the line.

None of these clips requires playing other portions of the recording to avoid "misunderstanding or distortion." Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 172 (1988). Moreover, should the government decide to play additional portions of the recorded interview, defendant would still not be permitted to introduce additional statements from his interview.

Therefore, any request to admit self-serving hearsay statements should be rejected. As the Ninth Circuit has routinely recognized, "it is often perfectly proper to admit segments . . . without including everything, and adverse parties are not entitled to offer additional segments just because they are there and the proponent has not offered them." United States v. Collicott, 92 F.3d 973, 983 (9th Cir. 1996) (holding that Federal Rule of Evidence 106 does not compel admission of otherwise inadmissible hearsay evidence); accord United States v. Ortega, 203 F.3d 675, 682 (9th Cir. 2000) (affirming order limiting defendant's ability to elicit his exculpatory hearsay statements on cross-examination); United States v. Vallejos, 742 F.3d 902, 905 (9th Cir. 2014) (the defendant was not entitled to admit redacted statements to "show the jury the 'flavor of the interview' [or] to 'humanize' [the defendant]").

Defendant may not introduce exculpatory sections of his statement merely because the government is introducing inculpatory portions of his statement. Defendant of course is not prevented from introducing evidence necessary to put on his defense, but he must do

4

so by testifying. United States v. Fernandez, 839 F.2d 639, 640 (9th Cir. 1988).

Therefore, defendant should not be permitted to place any of his prior statements before the Court or jury without subjecting himself to cross-examination. He should also not be permitted to introduce his statements through defense witnesses (other than defendant himself) or by cross-examining government witnesses with defendant's hearsay statements.

## II. Experts Cannot Serve as Conduits for Hearsay Evidence

Defendant cannot hide behind his expert to serve as a conduit to introduce his self-serving hearsay statements. Turner v. Burlington N. Santa Fe R. Co., 338 F.3d 1058, 1061-62 (9th Cir. 2003) (district court properly excluded proffered arson expert where expert testimony consisted of reciting hearsay contained in inadmissible document); Caldwell v. City of San Francisco, No. 12-CV-01892-DMR, 2021 WL 1391464, at *5 (N.D. Cal. Apr. 13, 2021) ("[C]ourts have rejected attempts to use experts as mere 'conduits' for otherwise inadmissible evidence") (collecting cases); see also Marvel Characters, Inc. v. Kirby, 726 F.3d 119, 136 (2nd Cir. 2013) ("A party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony.").

Rule 703 "was not intended to abolish the hearsay rule and to allow a witness under the guise of giving expert testimony, to in effect become the mouthpiece of the witnesses on whose statements or opinions the expert purports to base his opinion." Loeffel Steel Prods., Inc., v. Delta Brands, Inc., 387 F.Supp.2d 794, 808 (N.D. Ill. 2005). Therefore, defense experts should be barred from

repeating a defendant's self-serving statements in the guise of rendering an expert opinion. See United States v. White Horse, 316 F.3d 769, 775 (8th Cir. 2003) ("The district court correctly concluded, moreover, that the statements that Mr. White Horse made during the clinical interview and mental status examination were not independently admissible, because they were hearsay.").[2]

Here, defendant argues that his experts should be able to testify "regarding their opinions on [defendant's] statements." See Def. Opp. at 5. First, defendant fails to identify the expert, the testimony, and opinion of their purported experts, which the government address in their motion in limine to exclude the defendant's experts. Dkt. No. 149. Since defendant has until December 2022 to supplement their original deficient expert notice, the government will address defendant's purported expert testimony once the government reviews defendant's updated expert disclosures. However, just because Rule 703 allows an expert to rely on inadmissible evidence in forming an opinion, it does not mean the expert is free to disclose that evidence to the jury during the expert's testimony. Such evidence is admissible only if the probative value outweighs the prejudicial effect. Defendant cannot be a conduit for the defense expert to expose the jury to inadmissible evidence. And the government objects to any defense expert attempting to introduce inadmissible hearsay under the guise of expert opinion.

---

[2] To be clear, this prohibition does not apply to a government expert because, as the party opponent, the government may offer defendant's statements. Fed. R. Evid. 801(d)(2) (a statement of a party offered by a party opponent is not hearsay).

6

Second, although the government will not receive defendant's mental health report until next month, the government understands that defendant plans to introduce expert mental health testimony to support an affirmative defense and/or defendant's theory of the case. Although this motion specifically addresses defendant's post-arrest hearsay statements, the government objects to the admission of his statements made to defendant's medical expert.  Although there is an exception to the hearsay rule for statements made for medical diagnosis or treatment, that exception does not apply to a hired expert.  The exception pertains only when the statement "(A) is made for—and is reasonably pertinent to - medical diagnosis or treatment; and (B) describes medical history; past or present symptoms or sensations; their inception; or their general cause." Fed. R. Evid. 803(4).  What makes these types of statements reliable, and therefore an exception to the hearsay rule, is that the person has a motivation to make truthful statements to a medical provider who will be providing treatment. See, e.g., United States v. Bercier, 506 F.3d 625, 631 (8th Cir. 2007) ("Statements made by a patient seeking medical diagnosis or treatment are excluded from the hearsay rule because 'a statement made in the course of procuring medical services, where the declarant knows that a false statement may cause misdiagnosis or mistreatment, carries special guarantees of credibility.'") (quoting White v. Illinois, 502 U.S. 346, 356 (1992)).  Accordingly, to be admissible pursuant to Rule 803(4), "the declarant's motive in making the statement must be consistent with the purpose of promoting treatment." United States v. Renville, 779 F.2d 430, 436 (8th Cir. 1985).

When a defendant makes a statement to an expert hired in anticipation of litigation, it is not a statement made for purposes of treatment or diagnosis in the sense contemplated by the rule. A defendant's motive for making statements to a hired expert would not be to procure medical services where a false statement carried the risk of mistreatment. Indeed, a defendant arguably has a motive to provide false information because he is charged with a criminal offense and is hoping to develop a defense through the expert. Further, defendant's statements to his experts about what happened or what he was thinking during a crime does not "describe[ ] medical history; past or present symptoms or sensations; their inception; or their general cause." Fed. R. Evid. 803(4)(B). Rather, to allow a defendant's expert to testify about what defendant said about what happened during the crime would simply allow a defendant to testify without being subject to cross examination.

Therefore, defendant's hearsay statements, whether in his post-arrest interview, interview with defendant's mental health expert, or otherwise, should be excluded.

**III. CONCLUSION**

For the foregoing reasons, the government respectfully submits that the Court permit the government to introduce the portions from defendant's recorded post-Miranda interview, and preclude defendant from introducing other excerpts of his interview not admitted by the government.