KARREN KENNEY, CA. SBN 174872 at
KENNEY LEGAL DEFENSE
2900 Bristol Street, Suite C204
Costa Mesa, CA 92626
TELEPHONE:(855) 505-5588
E-MAIL: KARREN.KENNEY@GMAIL.COM

CHARLES D. SWIFT, WA Bar No. 41671
CONSTITUTIONAL LAW CENTER FOR
MUSLIMS IN AMERICA
100 N. Central Expy. SUITE 1010
Richardson, TX  75080
TELEPHONE: (972) 914-2507
FAX: (972) 692-7454
EMAIL: CSWIFT@CLCMA.ORG

ATTORNEYS FOR THE DEFENDANT

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATE OF AMERICA ) | Case No.    SACR  20-00146 -DOC |
| ) | |
| v.                                            ) | **DEFENDANT'S PROPOSED JURY** |
| ) | **INSTRUCTIONS AND MEMORANDUM** |
| JASON FONG                          ) | **OF LAW** |
| ) | |
| _____ ) | |

**DEFENDANT'S DISPUTED PROPOSED JURY INSTRUCTIONS**
**AND MEMORANDUM OF LAW**

Mr. Fong is charged in Count One and Two with attempting to provide HTS  with "*services,*

*including compiling, archiving, and providing tactical, combat, and weapons training materials and*

*information regarding the making of chemical weapons and improvised explosive devices*" on March

17, 2020, and April 1, 2020, respectively. Superseding Indictment, Doc. 110. (emphasis added). In

Count Three, Mr. Fong is charged with attempting to provide  "*services,* including combat training and

information regarding the making of booby-traps and improvised explosive devices." *Id*. (emphasis

added). Finally, in Count Four, Mr. Fong is charged with attempting to provide Hamas with services

and currency, including fundraising and money.

The issue presented by the charges in this case is identifying what constitutes a prohibited "service" to a terrorist organization.[1]  The Ninth Circuit has not published a model jury instruction to guide this Court on the question, but that is of little consequence because the Supreme Court in *Holder v. Humanitarian Law Project*, 561 U.S. 1 (2010) has provided clear instruction. In *Humanitarian Law Project*, the Supreme Court held that 18 U.S.C. § 2339B's prohibition against the provision of "services" to a designated terrorist organization, similarly to prohibition against provision of personnel, extends only to "services" performed "in coordination with, or at the direction of, a foreign terrorist organization." *Id.* at 24.

A close examination of the Supreme Court's decision in *Humanitarian Law Project* makes clear that the requirement that services be provided in coordination with, or at the direction of, a foreign terrorist organization is a binding interpretation of the meaning of the term "services" as incorporated into § 2339B.

**A.  The Humanitarian Law Decision**

The *Humanitarian Law Project* case came before the Supreme Court on cross appeal from the Ninth Circuit's decision in *Humanitarian Law Project v. Mukasey,* 552 F.3d 916 (9th Cir. 2009). The dispute in *Humanitarian Law Project v. Mukasey* was a long running one. From the onset, the plaintiffs complained that § 2339B prohibited them from providing training and other services, on topics

---

[1]  The charged conduct in this case, with the exception of the attempt to provide currency to Hamas in Count Four, necessarily charges the attempted provision of services to Hayat Tahrir al-Sham (HTS).  This is so because the types of materials alleged to have been provided are not in and of itself material support. *See United States v. Abu-Jihaad*, 600 F. Supp. 2d 362, 394 (D. Conn. 2009)(Noting that "[t]he Government did not at trial, and does not claim here, that Mr. Abu-Jihaad's provision of national defense information[in electronic form] to Azzam was a "physical asset" within the meaning of 18 U.S.C. § 2339A." and consequentially did not constitute material support in and of itself. Although Abu Jihaad was charged with a violation of §2339A, the same restrictions on what can constitute applied to 2339B as The definition for what constitutes prohibited "material support or resources" by 18 U.S.C § 2339B is found in 18 U.S.C § 2339A(b). *See* 18 U.S.C § 2339B(g)(4)([T]he term "material support or resources" has the same meaning given that term in section 2339A.

designed to further lawful activity, to designated foreign terrorist organizations in violation of their First Amendment and Due Process rights (void for vagueness). *Id.* at 921. The government had responded that the statute was constitutional because it survived intermediate scrutiny under the foreign affairs doctrine which allowed the government to restrict First Amendment activities, it adequately apprised the plaintiffs of the prohibited conduct, and it did not restrict the plaintiffs' ability to provide independent advocacy.

Over the course of the litigation, the district court and the Ninth Circuit had consistently rejected the plaintiffs' First Amendment argument finding that § 2339B was reviewable under "intermediate scrutiny" and survived a First Amendment challenge, but had sustained their challenge based on the void for vagueness doctrine. *See Humanitarian Law Project v. Reno*, 9 F. Supp. 2d 1205, 1215 (C.D. Cal. 1998); *see also Humanitarian Law Project v. Reno*, 205 F.3d 1130, 1133 (9th Cir. 2000). Inherent in the district court and Ninth Circuit's holdings was that § 2339B proscriptions were vague because they potentially included protected speech—instruction on advocacy concerning lawful activities.

Congress's response to the Ninth Circuit's decision regarding § 2339B has been first to provide an explicit description of what constituted "training" and "expert advice", and when that did not work, then to add an explicit definition of what "personnel" constituted to § 2339B. *See* 18 U.S.C. 2339B(h). Then it added the term "service" to the list of prohibited activities in § 2339A(b). The district court and the Ninth Circuit however continued to strike down the government's efforts, despite Congress's efforts to make clear that the activities the defendant's wanted to engage in would violate § 2339B.

In *Humanitarian Law Project v. Mukasey*, the Ninth Circuit continued that trend. There, the government argued, as it does here, that § 2339B did not prohibit independent advocacy and was therefore constitutional. The government's interpretation of "independent advocacy" became clear when the Circuit Court inquired whether § 2339B would prohibit the plaintiff's from filing an amicus brief on behalf of a designated terrorist organization. *Id.* at 930. In the government's response, it indicated its interpretation of "independent advocacy" under § 2339B only permitted someone to speak

positively about a terrorist organization or its goals, but proscribed any activity, including speech, that might directly benefit the organization. In short, the government defines "service", in part, to include any act done for the benefit of another.  That response lead the Ninth Circuit to find that, among other things, the term "services", which included training and expert advice, was void for vagueness. *Id.* at 929.  Both sides cross-appealed. The Supreme Court resolved the matter in a way neither side likely anticipated. First, the Court rejected the plaintiffs' argument that the text of the statute only prohibited services which would further an unlawful activity of the terrorist organization.[2] Second, the Court had little difficulty striking down the lower courts void for vagueness finding that a reasonable person would understand that the statute prohibited what the plaintiff sought to do. *Id.* at 929. The Court, however, did not stop here. Instead, it found that the district court and the Ninth Circuit had erred in applying the intermediate scrutiny standard and that § 2339B's prohibition on speech was subject to strict scrutiny. *Holder v. Humanitarian Law Project*, 561 U.S. 1, 44-46 (2010). Having done so, the Court nevertheless found that § 2339B's proscription against "services", which could include speech, did not violate the First Amendment. To reach this conclusion, the Court held that, when it came to speech, the term "services" had the same restrictions as "personnel", reasoning that it would make little sense for Congress to prohibit under "services" what it had permitted under "personnel". The Court stated,

> We interpret "service" along the same lines. Thus, any independent advocacy in which plaintiffs wish to engage is not prohibited by § 2339B. On the other hand, a person of ordinary intelligence would understand the term "service" to cover *advocacy performed in coordination with, or at the direction of, a foreign terrorist organization. Id. at 24.* (emphasis added).

In so doing, the Court noted that not all "services" would constitute speech, stating

> Congress has not, therefore, sought to suppress ideas or opinions in the form of "pure

---

[2]  Had the plaintiff prevailed on this argument the defendant's conduct here would almost unquestionably be unlawful because the charged activity would further HTS's combat in Syria and, potentially provide funds to terrorist organization (Hamas) in Count Four.

political speech." Rather, Congress has prohibited "material support," which most often does not take the form of speech at all. And when it does, the statute is carefully drawn to cover *only a narrow category of speech to, under the direction of, or in coordination with foreign groups that the speaker knows to be a terrorist organization*. *Id*. at 26 (2010) (emphasis added).

After the Humanitarian Law Project decision, Courts have likewise held that when material support takes the form of speech, it only covers a narrow category of speech performed under the direction of, or in coordination with, someone the speaker knows to be a foreign terrorist organization. *See United States v. Osadzinski*, No. 19 CR 869, 2021 U.S. Dist. LEXIS 141637, at *7 (N.D. Ill. July 29, 2021); *see also United States v. Griffith*, 515 F. Supp. 3d 106, 119-20 (S.D.N.Y. 2021) (stating "regulations did not prohibit independent advocacy on behalf of the designated groups, even though it prohibited advocacy in coordination with or at the  behest of such groups").

The charged activity in Counts One through Four, with the provision of currency in Count Four, constitutes speech. The defendant is charged in Counts One and Two with compiling, archiving, and providing via publishing third-party resources in the form of digital manuals and documents. *See People for the Ethical Treatment of Animals, Inc. v. Gittens*, 414 F.3d 23, 28 (2005) (holding that the selection and curation of books for a library constitutes speech activity); *see also Miami Herald Pub. Co., Div. of Knight Newspapers, Inc. v. Tornillo*, 418 U.S. 241, 252 (1974) (stating that "freedom to publish means freedom for all and not for some. Freedom to publish is guaranteed by the Constitution…")  In Count Three the defendant is charged with attempting to provide services, including training, which the Supreme Court held in *Holder* was also a form of speech.  Finally, the defendant is charged with fundraising in Count Four which courts have previous found to constitute speech. *See Vill. of Schaumburg v. Citizens for a Better Env't*, 444 U.S. 620 (1980); *see also Sec'y of Md. v. Joseph H. Munson Co*., 467 U.S. 947.

**B. The defense Proposed Instruction 28 correctly states the law as held by the Supreme Court.**

For the reasons set forth above, all of the charged conduct, with the exception of attempting to provide currency, is speech activity. The defense's proposed instruction recognizes this and instructs the jury in accordance with the Supreme Court's holding in *Holder v. Humanitarian Law Project*. The government's proposed instruction is erroneous because it includes in the definition of "service" any act done for the benefit of another. This definition would be appropriate for most services. *See e.g. United States v. Farhane*, 634 F.3d 127, 152 (2d Cir. 2011) (holding that "services" in the form of medical assistance was subject to the broader definition direction to, in coordination with, or controlled by a foreign terrorist organization.) However, this definition is not appropriate for speech because it can and will intrude into protected speech. Most importantly, it is contrary to the findings of the Supreme Court.

**C. Theory of the Defense Instruction – Instruction 46**

In the alternative, the defendant seeks an affirmative theory of the defense instruction. "A defendant is entitled to have the judge instruct the jury on his theory of defense, provided that it is supported by law and has some foundation in the evidence." *United States v. Mason,* 902 F.2d 1434, 1438 (9th Cir. 1990). "A failure to give such instruction is reversible error; but it is not reversible error to reject a defendant's proposed instruction on h[er] theory of the case if other instructions, in their entirety, adequately cover that defense theory." *Id.* Here, for the reasons stated above, the defense's proposed instruction is supported by the law.

**D. Specific Unanimity Instruction - Count Four – Instruction 28.1**

Defendant Mr. Jason Fong seeks a specific unanimity instruction for Count Four. A specific unanimity instruction is required "where it appears (1) there is a genuine possibility of jury confusion, or (2) that a conviction may occur as a result of different jurors concluding that the defendant

committed different acts." *United States v. Kim,* 196 F.3d 1079, 1082 (9th Cir. 1999)*; U.S. v. Lyons*, 472 F.3d 1055, 1068 (9th Cir. 2007). The conduct charged in Count Four meets both criteria.

### E.  Conduct Charged in Count Four

Count Four charges the attempted provision of material support to Hamas in the alternative forms of 1) the attempted provision of services in the form of fundraising, and 2) the attempted provision of currency.  These two theories of guilt are distinct forms of material support.  Services, as discussed *supra*, require not just that the terrorist organization receive a service, but in order to distinguish the service from independent advocacy, that the service be performed either at the direction of, or in coordination with, the terrorist organization.  The provision of currency, which constitutes a tangible form of support, however, requires no such coordination.  *See Holder v. Humanitarian Law Project* at 59.  Instead, for currency the government need only establish that the funds were provided to Hamas.  Direction and coordination are immaterial. In this case, because Mr. Fong is not alleged to have sent money to Hamas but instead to have attempted to do so, the government must show that Mr. Fong's actions were more than mere plans or preparation.

### F.  A Genuine Possibility of Jury Confusion

The differing requirements for guilt for "services" and "currency" create a genuine possibility for jury confusion.  The legal dispute between the differing requirements for services and currency were enough to require the Supreme Court to ultimately interpret the meaning of the statue.  As such, laymen cannot reasonably be expected to distinguish between the two charged forms of conduct in Count Four. That is particularly true in this case because the underlying conduct is the same for both theories of guilt.  Mr. Fong is alleged to have advocating for sending Bitcoin to Hamas and presenting a plan to do so on his Ikhwan group.  A genuine possibility of jury confusion exists and could easily confuse the elements required to prove service with those required to prove attempted provision of currency.

### G.  The Jurors Cannot Convict Without Being Unanimous As To The Type of Support

7

This Court has previously ruled that under 18 U.S.C. § 2339B, the listed means of violating § 2339B set out in 18 U.S.C. § 2339A constitute separate distinct offenses which may be charged individually. *See* Minutes of Hearing, Doc. 129 (denying Mr. Fong's Motion to Dismiss Counts One through Three for violating the rule against multiplicity). From that ruling, it necessarily follows that Count Four charging the attempted provision of material support through the attempted provision of services and currency is duplicitous because it charges two distinct crimes.  Duplicity is the joining in a single count of two or more distinct and separate offenses. One vice of duplicity is that a jury may find a defendant guilty on a count without having reached a unanimous verdict on the commission of a particular offense. This may conflict with a defendant's Sixth Amendment rights and may also prejudice a subsequent double jeopardy defense. Duplicity may also give rise to problems regarding the admissibility of evidence, including its admissibility against one or more co-defendants.  On the other hand, an indictment may not charge a single offense in several counts without offending the rule against multiplicity. Here, the vice would be that the punishment provided for a single offense may be pyramided by a multi-count indictment. *United States v. UCO Oil Co.*, 546 F.2d 833, 835 (9th Cir. 1976).

**H.  This Court Has Previously Found that §2339B creates separate offenses for each means of support**

To determine whether a statute "creates separate offenses, or simply describes alternative means to commit the same crime, [the court] employ[s] the analytical framework established in *UCO Oil* . . . : (1) 'language of the statute itself,' (2) 'the legislative history and statutory context,' (3) the type of conduct proscribed, and (4) the 'appropriateness of multiple punishment for the conduct charged in the indictment.'" *Arreola*, 467 F.3d 1153, 1157 (9th Cir. 2006) (quoting *UCO Oil,* 546 F.2d at 836-38). Not surprisingly, the test mirrors the test for multiplicity.  *See Brown v. United States*, 623 F.2d 54, 57 (9th Cir. 1980) (holding that "[a] court may not impose consecutive sentences for a single transaction that

violates more than one statutory provision or purpose unless Congress has clearly expressed its intent to make each violation within that single transaction a separate offense subject to separate punishment.") In response to the defendant's Motion to Dismiss Counts One through Three, the government argued that Congress had clearly expressed in 18 U.S.C. § 2339B an intent to create separate offenses for each listed form of material support.  Doc. 121 at 9-16.  While the defense argued to the contrary, and this Court expressed some reticence in accepting the government's arguments that § 2339B creates separate offenses, it is the government who prevailed.  Having prevailed in the argument on multiplicity, the government is compelled to take the bitter with the sweet in Count Four, namely that providing services in the form of fundraising, and providing currency, are separate offenses.

The attempted provision of "services" and "currency" therefore constitute two different criminal charges in Count Four creating duplicity. *See UCO Oil Co.*, 546 F.2d at 835. The Ninth Circuit has set out multiple remedies for duplicity.

"[W]here the indictment is duplicitous, a defendant "may [still] be properly prosecuted and convicted if either (1) the government elects between the charges in the offending count, or (2) *the court provides an instruction requiring all members of the jury to agree as to which of the distinct charges the defendant actually committed.*" *United States v. Ramirez-Martinez,* 273 F.3d 903, 915 (9th Cir. 2001) (overruled in part on other grounds by *United States v. Lopez*, 484 F.3d 1186, 1191 (9th Cir. 2007)) (rejecting the "ultimate destination" rule for transporting aliens in violation of 18 U.S.C. 1324(a)(2) set out in *Ramirez-Maritnez*) (emphasis added). The Ninth Circuit has also stated that in lieu of election or dismissal of the duplicitous indictment, the court may require the government to prove both offenses as charged. *See United States* v. *Aguilar,* 756 F.2d 1418, 1424 n.4 (9th Cir.  1985).

Under Ninth Circuit case law the minimum requirement is to provide the specific unanimity instruction proposed by the defense.  The instruction is based on the Ninth Circuit's model jury

instruction and includes the suggested phrase "with you all agreeing".  *See* Ninth Circuit, Model Jury Instruction 6.27; *see also United States v. Garcia-Rivera*, 353 F. 3d 788, 792 (9th Cir. 2003).

The defense, however, maintains that more than unanimity on one of the two offenses charged in Count Four is appropriate here, and the Court should require the government to prove both material support in the form of fundraising, as well as the attempted provision of currency, in order to prevail on Count Four. The government did not charge material support in the form of services and currency in the alternative but instead charged material support in the conjunctive – Mr. Fong attempted to provide "services in the form of fund raising *and* currency" to Hamas.  The Supreme Court has recognized that it is appropriate under these circumstances to require the proof of both offenses. See *Abney v. United States*, 431 U.S. 651, 654, (1977) (noting the trial court's decision that "I would also point out that in the indictment it is charged that the defendants were guilty of both conspiracy and attempt and *the essential elements of both of these offenses must be proved before any defendant could be found guilty*." (emphasis added in the original).

To this end, the defense provides an alternative instruction requiring the government to prove both attempted provision of services in the form of fundraising, and attempted provision of currency in order to prevail on Count Four.

## I.  First Amendment Instruction – Instruction 47

In *Brandenburg v. Ohio*, 395 U.S. 444, 449 (1969) the Supreme Court noted that, "[n]either the indictment nor the trial judge's instructions to the jury in any way refined the statute's bald definition of the crime in terms of mere advocacy not distinguished from incitement to imminent lawless action". In *Whitney v. California*, Justice Louis Brandeis stated in his concurring opinion: "Whenever the fundamental rights of free speech and assembly are alleged to have been invaded, it must remain open to a defendant to present the issue whether there actually did exist at the time a clear danger; whether the danger, if any, was imminent; and whether the evil apprehended was one so substantial as to justify

the stringent restriction interposed by the legislature. .. In order to support a finding of clear and present danger, it must be shown that immediate serious violence was to be expected [.]" 274 U.S. 357, 378-379 (1927), J. Brandeis, concurring.

The defendant seeks this instruction in relation to the other acts evidence the government seeks to admit relating to the defendant' speech in the chat groups, discussion of politics, and his religious opinions which constitute protected speech and were independent from HTS and Hamas. Political speech is separate from actual conduct. *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 37 (2010) (distinguishing speech from conduct under the material support statute); *see also Citizens United v. Federal Election Comm'n*, 558 U.S. 310, 349 (2010) ("If the First Amendment has any force, it prohibits Congress from fining or jailing citizens, or associations of citizens, for simply engaging in political speech").

**J. Reserved**

The defense reserves the right to seek additional cautionary instructions concerning expert testimony, limiting instructions concerning evidence admitted under Rule 404(b), and security measures relating to witness identity, all depending on the Courts rulings.

Respectfully submitted this 1st day of December, 2022

By: /s/ Charles Swift

Charles D. Swift, CLCMA

*Pro Hac* Attorney for Fong

100 N. Central Expy, Suite 1010

Richardson, TX 75080

(972) 914-2507


Karren Kenney

Karren Kenney, Kenney Legal Defense

Attorney for Fong

2900 Bristol Street, Suite C204

Costa Mesa, CA 92626

(855) 505-5588