E. MARTIN ESTRADA
United States Attorney
CHRISTOPHER D. GRIGG
Assistant United States Attorney
Chief, National Security Division
CHRISTINE M. RO (Cal. Bar No. 285401)
SOLOMON KIM (Cal. Bar No. 311466)
Assistant United States Attorneys
Terrorism and Export Crimes Section
     1500 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-4496
     Facsimile: (213) 894-2927
     E-mail:   Christine.Ro@usdoj.gov

MATTHEW G. OLSEN
Assistant Attorney General
National Security Division
JOHN CELLA (D.C. Bar No. 1035356)
Trial Attorney
Counterterrorism Section
     950 Pennsylvania Ave, NW
     Washington, DC 20530
     Telephone: (202) 305-1601
     Email:   John.Cella@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. SA CR 20-00146(A)-DOC |
|     Plaintiff, | GOVERNMENT'S DISPUTED PROPOSED JURY INSTRUCTION AND OBJECTIONS TO DEFENDANT'S PROPOSED JURY INSTRUCTIONS |
|         v. | |
| JASON FONG, <br>   aka "asian_ghazi," <br>   aka "Jason Asian Ghazi," <br>   aka "Mustafa Ahmed Al-Hakim," <br><br>     Defendant. | Trial Date:   January 17, 2023 <br> Trial Time:   TBA <br> Location:   Courtroom of the <br>             Hon. David O. <br>             Carter |

     Plaintiff United States of America, by and through its counsel

of record, the United States Attorney for the Central District of

California and Assistant United States Attorneys Christine M. Ro and

1

Solomon Kim and National Security Division Counterterrorism Section

Trial Attorney John Cella, hereby submits the government's disputed

proposed jury instruction and the government's objections to

defendant's proposed jury instructions in the above-captioned case.

Dated: December 1, 2022          Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

CHRISTOPHER D. GRIGG
Assistant United States Attorney
Chief, National Security Division


_____/s/_____
CHRISTINE M. RO
SOLOMON KIM
Assistant United States Attorneys

JOHN CELLA
Trial Attorney
Counterterrorism Section
National Security Division

Attorneys for Plaintiff
UNITED STATES OF AMERICA

GOVERNMENT's DISPUTED PROPOSED JURY INSTRUCTION AN OBJECTIONS TO DEFENDANT'S PROPOSED JURY INSTRUCTIONS

| Proposed No. | Court No. | Title | Source | Page |
|---|---|---|---|---|
| 28 | | **Substantive Instruction on All Counts**<br><br>Government's Proposed Instruction and Government's Position in Support of Government's Proposed Instruction | 18 U.S.C. §§ 2339B, 2339A; Ninth Circuit Model Criminal Jury Instructions, No. 4.4 (2022 ed.) [Attempt]; Holder v. Humanitarian Law Project, 561 U.S. 1, 23-24 (2010), citing Webster's Third New International Dictionary 2075 (1993); United States v. Elhuzayel, et al., No. 9:15-cr-00060-DOC, Dkt. No. 163 (C.D. Cal. Jun. 21, 2016); United States v. Moalin, No. 3:10-cr-04246-JM, Dkt. No. 301 (S.D. Cal. Feb. 19, 2013); United States v. Jama, 217 F. Supp. 3d 882, 886-87 (E.D. Va. 2016), aff'd sub nom. United States v. Dhirane, 896 F.3d 295 (4th Cir. 2018). | 1 |
| – | | Government's Objections to Defendant's Proposed Instructions: "Counts One Through Three -- Attempting to Provide Material Support to HTS" and "Count Four - Attempting to Provide Material Support to HAMAS" | | 7 |

| Proposed No. | Court No. | Title | Source | Page |
|---|---|---|---|---|
| – | | Government's Objections to Defendant's Proposed Instruction: "Theory of the Defense Instruction" | | 16 |
| | | Government's Objections to Defendant's Proposed Instruction: "First Amendment Protected Speech Instruction" | | 18 |

**TABLE OF AUTHORITIES**

<u>DESCRIPTION</u>                                                          <u>PAGE(S)</u>

**Cases**

<u>Boim v. Quranic Literacy Institute</u>,
  291 F.3d 1000 (7th Cir. 2002) ...................................21

<u>Brandenburg v. Ohio</u>,
  395 U.S. 444 (1969) .......................................18, 25

<u>Haupt v. United States</u>,
  330 U.S. 631, (1947) ..........................................27

<u>Holder v. Humanitarian Law Project</u>,
  561 U.S. 1 (2010) .........................................passim

<u>Holy Land Foundation for Relief and Development v. Ashcroft</u>,
  333 F.3d 156 (D.C. Cir. 2003) .................................20

<u>Malta-Espinoza v. Gonzales</u>,
  478 F.3d 1080 (9th Cir. 2007) .................................13

<u>People's Mojahedin Organization of Iran v. Department of State</u>,
  327 F.3d 1238 (D.C. Cir. 2003) ................................21

<u>Rice v. Paladin Enterprises, Inc.</u>,
  128 F.3d 233 (4th Cir. 1997) .................................22

<u>Richardson v. United States</u>,
  526 U.S. 813 (1999) ..........................................11

<u>Texas v. Johnson</u>,
  491 U.S. 397 (1989) ..........................................18

<u>United States v. Afshari</u>,
  426 F.3d 1150 (9th Cir. 2005) .............................22, 23

<u>United States v. Afshari</u>,
  635 F. Supp. 2d 1110 (C.D. Cal. 2009) .........................26

<u>United States v. Alhaggagi</u>,
  978 F.3d 693 (9th Cir. 2020) .................................23

<u>United States v. Amawi</u>,
  695 F.3d 457 (6th Cir. 2012) .................................24

<u>United States v. Augustine</u>,
  No. 18-cr-393(SJ)(RML), 2020 WL 9199944, (E.D.N.Y. Sep. 8, 2020)
  .............................................................27

United States v. Badawi,
   No. 15-cr-00060-DOC, 2021 WL 4735022 (C.D. Cal. Jun. 28, 2021). 20

United States v. Barnes,
   No. 20-30059, 2021 WL 4938126 (9th Cir., Oct. 22, 2021) ........17

United States v. Bonanno,
   852 F.2d 434 (9th Cir. 1988) ...................................13

United States v. D'Amelio,
   683 F.3d 412 (2d Cir. 2012) ...................................12

United States v. Del Muro,
   87 F.3d 1078 (9th Cir. 1996) ..................................16

United States v. Faust,
   850 F.2d 575 (9th Cir. 1988) ..................................25

United States v. Foppe,
   993 F.2d 1444 (9th Cir. 1993) .................................23

United States v. George,
   420 F.3d 991 (9th Cir. 2005) ..................................16

United States v. Gladney,
   521 F. App'x 627 (9th Cir. 2013) ..............................25

United States v. Hassan,
   742 F.3d 104 (4th Cir. 2014) ..................................26

United States v. Jama,
   217 F. Supp. 3d 882 (E.D. Va. 2016) ............................i

United States v. Keyser,
   704 F.3d 631 (9th Cir. 2012) ..................................17

United States v. Lindh,
   212 F.Supp.2d 541 (E.D. Va. 2002) .............................21

United States v. Mehanna,
   735 F.3d 32 (1st Cir. 2013) ...............................14, 24

United States v. Mendelsohn,
   896 F.2d 1183 (9th Cir. 1990) .................................23

United States v. Mickey,
   897 F.3d 1173 (9th Cir. 2018) .................................11

United States v. Mustafa,
   406 F. App'x 526 (2d Cir. 2011) ...................................23

United States v. Nagi,
   254 F.Supp.3d 548 (W.D.N.Y 2017) ................................21

United States v. Osadzinski,
   No. 19-cr-869, 2021 WL 3209671 (N.D. Ill. Jul. 29, 2021) ........26

United States v. Payseno,
   782 F.2d 832 (9th Cir. 1986) ....................................12

United States v. Rahim,
   No. 19-11341, 2021 WL 2065902 (N.D. Tex., May 21, 2021) .........22

United States v. Rahman,
   189 F.3d 88 (2d Cir. 1999) ......................................20

United States v. Ruiz,
   710 F.3d 1077 (9th Cir. 2013) ...................................12

United States v. Sattar,
   395 F. Supp. 2d 79 (S.D.N.Y. 2005) ..............................26

United States v. Sibley,
   595 F.2d 1162 (9th Cir. 1979) ...................................24

United States v. Stevens,
   559 U.S. 460 (2010) .............................................24

United States v. Taleb-Jedi,
   566 F.Supp.2d 157 (E.D.N.Y. 2008) ...............................28

United States v. Tucker,
   641 F.3d 1110 (9th Cir. 2011) ...................................16

United States v. Waggy,
   936 F.3d 1014 (9th Cir. 2019) ...................................28

United States v. Wright,
   937 F.3d 8 (1st Cir. 2019) ......................................14

Wisconsin v. Mitchell,
   508 U.S. 476 (1993) .............................................27

Young v. Barnes,
   No. 14-cv-5648-VBF, 2015 WL 4064968 (C.D. Cal. Apr. 20, 2015) ...16

**Statutes**

8 U.S.C. § 1101(a)(22) .............................................6

18 U.S.C. § 2339A(b)(1) .......................................3, 13

18 U.S.C. § 2339A(b)(2) ...........................................4

18 U.S.C. § 2339B(a)(1) .....................................passim

18 U.S.C. § 2339B(d)(1)(A) .....................................2, 6

18 U.S.C. § 2339B(g)(4) ...........................................3

18 U.S.C. § 2339B(g)(6) ...........................................4

22 U.S.C. § 2656f(d)(2) ...........................................5

**Regulations**

62 Fed. Reg. 52650 (October 8, 1997) ..............................5

79 Fed. Reg. 27972 (May 15, 2014) .................................5

83 Fed. Reg. 25497 (June 1, 2018) .................................5

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

GOVERNMENT'S PROPOSED INSTRUCTION NO. 28

SUBSTANTIVE INSTRUCTION ON ALL COUNTS

Defendant is charged in Counts One, Two, Three, and Four of the indictment with knowingly attempting to provide material support and resources to a designated foreign terrorist organization, in violation of Section 2339B of Title 18 of the United States Code.

Counts One, Two, and Three

In order for defendant to be found guilty of Counts One, Two, and Three, the government must prove each of the following elements beyond a reasonable doubt:

First, that on or about the dates in Counts One, Two, and Three of the indictment -- March 17, 2020 for Count One; April 1, 2020 for Count Two; and May 7, 2020 for Count Three -- defendant intended to provide material support or resources to the designated foreign terrorist organization Hay'at Tahrir al-Sham, also known as HTS;[1]

Second, that defendant acted knowingly;[2]

Third, that defendant knew that HTS was a designated foreign terrorist organization, or had engaged or was engaging in terrorist activity or terrorism;[3]

Fourth, that defendant did something that was a substantial step toward providing material support or resources to HTS and that strongly corroborated defendant's intent to commit the crime; and

---

[1] The government's proposed language for the first and fourth elements under all counts is drawn from the Ninth Circuit Model Criminal Jury Instructions, No. 4.4 (2022 ed.) [Attempt].

[2] 18 U.S.C. § 2339B(a)(1).  The parties have separately agreed to use the Ninth Circuit's model instruction defining "knowingly," Ninth Circuit Model Criminal Jury Instruction No. 4.8 (2022 ed.) [Knowingly].

[3] 18 U.S.C. § 2339B(a)(1).

Fifth, that defendant was a national of the United States or that the offense occurred in whole or in part in the United States.[4]

Count Four

In order for defendant to be found guilty of Count Four, the government must prove each of the following elements beyond a reasonable doubt:

First, that on or about May 18, 2020, defendant intended to provide material support or resources to the designated foreign terrorist organization HAMAS, also known as the Al Qassam Brigades;

Second, that defendant acted knowingly;

Third, that defendant knew that HAMAS was a designated foreign terrorist organization, or had engaged or was engaging in terrorist activity or terrorism;[5]

Fourth, that defendant did something that was a substantial step toward providing material support or resources to HAMAS and that strongly corroborated defendant's intent to commit the crime; and

Fifth, that defendant was a national of the United States or that the offense occurred in whole or in part in the United States.[6]

The first element of Counts One, Two, Three, and Four that the government must prove is that defendant intended to provide material support or resources to a designated foreign terrorist organization. As to this element, the government is not required to prove that defendant attempted to join or to become a member of a designated

---

[4] 18 U.S.C. § 2339B(d)(1)(A) & (D).

[5] 18 U.S.C. § 2339B(a)(1).

[6] 18 U.S.C. § 2339B(d)(1)(A) & (D).

foreign terrorist organization.  Conversely, mere membership in or association with a foreign terrorist organization, standing alone, does not constitute providing material support or resources to the organization.[7]  Instead, providing material support or resources has a specific definition under the law.

The term "provide" means to make available, furnish, or supply.[8]

"Material support or resources" is defined under the law to include any property or service, including training and currency. "Material support or resources" does not include medicine or religious materials.[9]

As to Count One, the government has alleged that the "material support or resources" was "services," including "compiling, archiving, and providing tactical, combat, and weapons training materials and information regarding the making of chemical weapons and improvised explosive devices."

As to Count Two, the government has alleged that the "material support or resources" was "services," including "compiling, archiving, and providing tactical, combat, and weapons training materials and information regarding the making of chemical weapons and improvised explosive devices."

As to Count Three, the government has alleged that the "material support or resources" was "services," including "combat training and

---

[7] <u>Holder v. Humanitarian L. Project</u>, 561 U.S. 1, 18 (2010) ("Section 2339B does not criminalize mere membership in a designated foreign terrorist organization.  It instead prohibits providing 'material support' to such a group.")

[8] <u>United States v. Moalin</u>, No. 10-cr-04246-JM, Dk. No. 301, at 34 (S.D. Cal. Feb. 19, 2013).

[9] 18 U.S.C. § 2339A(b)(1) (providing definition); 18 U.S.C. § 2339B(g)(4) (adopting definition).

information regarding the making of boobytraps and improvised
explosive devices."

As to Count Four, the government has alleged that the "material
support or resources" was "services," including "fundraising," and
"currency," including "money."

A defendant provides a "service" to a foreign terrorist
organization if he performs work commanded by or done for the benefit
of a foreign terrorist organization.[10]  Independent advocacy for a
cause is not providing a service to a foreign terrorist
organization.[11]  One type of "service" that a defendant may provide is
"training," which means instruction or teaching designed to impart a
specific skill, as opposed to general knowledge.[12]

The term, "foreign terrorist organization" has a particular
meaning.  In order for an organization to qualify as a "foreign
terrorist organization," the organization must have been designated
as such by the Secretary of State of the United States through a
process established by law.[13]  I instruct you as a matter of law that
HTS and HAMAS have been designated as foreign terrorist organizations
by the Secretary of State.[14]  I further instruct you that HTS's and

---

[10] Holder, 561 U.S. at 23-24 (defining "service" as "concerted activity, not independent advocacy ... [or] independent activity," and quoting the definition of "service" from Webster's Third New International Dictionary: "an act done for the benefit or at the command of another").

[11] Id. at 24.

[12] 18 U.S.C. § 2339A(b)(2).

[13] 18 U.S.C. § 2339B(g)(6).

[14] Defendant has proposed the same language stipulating that "at all times relevant to the charged conduct, HTS and Hamas were designated as foreign terrorist organization[s] by the Secretary of State" in his proposed instructions provided to the government on November 21, 2022.

HAMAS's designations as foreign terrorist organizations have remained continuously in effect since those organizations were first designated, including during the period of the alleged conduct.[15]

The term "terrorist activity" includes any activity that, if it had been committed in the United States, would be unlawful under the laws of the United States or any State and that involves a threat, attempt, or conspiracy to use any explosive, firearm, or other weapon or dangerous device (other than for mere personal monetary gain), with intent to endanger, directly or indirectly, the safety of one or more individuals or to cause substantial damage to property.[16]

The term, "terrorism" means premeditated, politically motivated violence perpetrated against noncombatant targets by subnational groups or clandestine agents.[17]

The fourth element of Counts One, Two, Three, and Four is that defendant did something that was a substantial step toward providing material support or resources to a designated foreign terrorist organization and that strongly corroborated defendant's intent to commit the crime.[18]

Mere preparation is not a substantial step toward committing the crime.  To constitute a substantial step, a defendant's act or

---

[15] 62 Fed. Reg. 52650 (October 8, 1997); 79 Fed. Reg. 27972 (May 15, 2014); 83 Fed. Reg. 25497 (June 1, 2018).

[16] 18 U.S.C. § 2339B(a)(1) (defining "terrorist activity" by reference to "section 212(a)(3)(B) of the Immigration and Nationality Act," i.e., 8 U.S.C. § 1182(a)(3)(B)); 8 U.S.C. § 1182(a)(3)(B)(iii) (defining "terrorist activity").

[17] 18 U.S.C. § 2339B(a)(1) (defining "terrorist activity" by reference to "section 140(d)(2) of the Foreign Relations Authorization Act, Fiscal Years 1988 and 1989," i.e., 22 U.S.C. § 2656f(d)(2)); 22 U.S.C. § 2656f(d)(2) (defining "terrorism").

[18] Ninth Circuit Model Criminal Jury Instructions, No. 4.4 (2022 ed.) [Attempt].

1    actions must unequivocally demonstrate that the crime of providing

2    material support or resources to a designated foreign terrorist

3    organization will take place unless interrupted by independent

4    circumstances.[19]

5         Jurors do not need to agree unanimously as to which particular

6    act or actions constituted a substantial step toward the commission

7    of a crime.[20]

8         The term "national of the United States" means (A) a citizen of

9    the United States, or (B) a person who, though not a citizen of the

10   United States, owes permanent allegiance to the United States.[21]  I

11   instruct you as a matter of fact that the parties have stipulated

12   that at all times relevant to Counts One, Two, Three, and Four,

13   defendant was and is a national of the United States.[22]

---

[19] Id.; United States v. Elhuzayel, et al., No. 15-cr-00060-DOC, Dk. No. 163, at 30 (C.D. Cal. Jun. 21, 2016).

[20] Ninth Circuit Model Criminal Jury Instructions, No. 4.4 (2022 ed.) [Attempt].

[21] 18 U.S.C. § 2339B(d)(1)(A) (defining "national of the United States" by reference to "section 101(a)(22) of the Immigration and Nationality Act (8 U.S.C. § 1101(a)(22)"; 8 U.S.C. § 1101(a)(22) (defining "national of the United States").

[22] Defendant has proposed the same language stipulating that he was and is a national of the United States in his proposed instructions provided to the government on November 21, 2022.

GOVERNMENT'S POSITION IN SUPPORT OF GOVERNMENT'S PROPOSED INSTRUCTION NO. 28 AND OBJECTIONS TO DEFENDANT'S PROPOSED INSTRUCTIONS ON THE SUBSTANTIVE OFFENSE

**A. Government's Position in Support of Government's Proposed Instruction**

The government's proposed instruction on the substantive offense charged in Counts One, Two, Three, and Four accurately states the law and is consistent with instructions provided in other cases in the Central District of California and elsewhere involving offenses under Section 2339B.

Since the Ninth Circuit's Manual of Model Criminal Jury Instructions does not provide a model instruction covering attempt to commit a violation of Section 2339B, the government's proposed instruction follows the format of the Ninth Circuit's Model Instruction on "Attempt" (No. 4.4) by stating the offense with which defendant is charged, then stating that the government must prove defendant "intended to" engage in conduct meeting the elements of Section 2339B(a)(1) and that defendant did something that was a substantial step toward committing the crime and that strongly corroborated the defendant's intent to commit the crime. See Ninth Circuit Model Instruction (No. 4.4), cmt. For clarity and efficiency, the government's proposed instruction is tailored to indicate the specific dates and designated FTOs referenced in each count of the indictment, grouping Counts One, Two, and Three (involving HTS) and Count Four (involving HAMAS).

The government's proposed instruction further states that the government must prove that defendant intended to knowingly provide material support or resources to an FTO, but need not prove that

1    defendant attempted to join or become a member of the FTO,

2    incorporating the limiting language of Holder v. Humanitarian Law

3    Project, 561 U.S. 1, 18 (2010), which held that Section 2339B does

4    "not criminalize mere membership in a designated foreign terrorist

5    organization."  Substantially identical language was recently

6    included in a jury instruction in relation to an offense charged

7    under Section 2339B in United States v. Saab, No. 19-cr-00676-PGG,

8    Dkt. No. 202, at 21 (S.D.N.Y. May 3, 2022); see also United States v.

9    Elhuzayel, et al., No. 9:15-cr-00060-DOC, Dkt. No. 163 (C.D. Cal.

10   Jun. 21, 2016).[23]

11        The government's proposed instruction also includes definitions

12   of relevant terms drawn from the statutory language of Sections 2339A

13   and 2339B (e.g., "material support or resources" and "training"),

14   Holder (e.g., "service"), and instructions in other 2339B cases

15   ("provide").  It expressly includes language from Holder that Section

16   2339B does not prohibit "independent advocacy."

     **B.  Government's Objections to Defendant's Proposed
          Instructions on Substantive Offense**

17

18        The government's proposed instruction on the substantive offense

19   tracks the statutory language, the relevant case law, and this

20   Court's prior jury instructions on the charged offenses.  Defendant's

21   instruction includes irrelevant language, fails to provide the full

22   context of the language, and is otherwise misleading and confusing.

23

24

25

26        [23] In Elhuzayel, the Court used separate instructions to define
     conspiracy and attempt with respect to Section 2339B, providing the
27   relevant definitional instructions for the substantive offense in the
     instruction on the Section 2339B conspiracy.  Because defendant is
28   charged only with attempts to commit violations of Section 2339B, the
     government combined the attempt and substantive offense language into
     one instruction.

                                    8

1

          1.    <u>Defendant's Proposed Instruction Incorrectly Describes the Material Support and Resources Alleged in Counts One, Two, and Three</u>

2

3

    The government's proposed instruction on the substantive offense

4

is superior to that offered by defendant, which confuses -- and in

5

two counts, omits -- the services alleged by the government.

6

Specifically, defendant incorrectly describes the material support

7

alleged in Counts One, Two, and Three as "training and training

8

materials."  While the government has charged defendant with

9

attempting to provide training materials in Counts One, Two, and

10

Three including the provision of "training information," the

11

"service" alleged in Counts One and Two is the "compiling, archiving,

12

and provision" of those "training materials and information" and is

13

thus broader than mere provision.  The Court should instruct the jury

14

on the forms of material support and resources actually alleged in

15

the indictment, rather than the incomplete versions contained in

16

defendant's proposed instructions.

17

          2.    <u>Defendant's Proposed Instruction Includes an Unnecessary Element Regarding "Specially Designated Terrorist Organizations"</u>

18

19

    Defendant's substantive offense instructions also include an

20

unnecessary element that would require the government to prove that

21

HTS and Hamas are "specially designated terrorist organizations."

22

While FTOs -- such as HTS[24] and HAMAS[25] -- also may be Specially

23

Designated Global Terrorist organizations under Executive Order

24

---

25

    [24] On May 17, 2018, the Secretary of Stated added certain aliases, including Hay'at Tahrir al-Sham and HTS, to the al-Nusrah Front designation as a Specially Designated Global Terrorist under Executive Order 13224.

26

27

    [25] On October 31, 2001, the Secretary of State designated HAMAS as a Specially Designated Global Terrorist under Executive Order 13224.

28

1    13224, Section 2339B criminalizes the provision of material support

2    or resources to designated FTOs, irrespective of whether such FTOs

3    are also Specially Designated Global Terrorists.  See 18 U.S.C. §

4    2339B(a)(1) & (g)(6) (criminalizing knowing provision of material

5    support or resource to a "foreign terrorist organization" and

6    defining "terrorist organization" as "an organization designated as a

7    terrorist organization under section 219 of the Immigration and

8    Nationality Act").  The Court should not include defendant's request

9    for this unnecessary element referencing "specially designated

10   terrorist organizations," which has no basis in Section 2339B.

11            3.   Defendant Requests a Confusing and Duplicative
                   Unanimity Instruction With Respect to the Dates
12                 Referenced in Counts One, Two, and Three

13        Defendant's proposed instruction also states the jury "must

14   unanimously agree that defendant attempted to provide material

15   support" to HTS in Counts One, Two, and Three on or about the dates

16   alleged in each of those Counts.  The government's proposed

17   instruction already includes those dates as part of the first element

18   that the government must prove, and the parties have separately

19   agreed to include the Ninth Circuit Model instruction defining "on or

20   about."  That separate definitional instruction states that

21   "[a]lthough it is necessary for the government to prove beyond a

22   reasonable doubt that the offense was committed on a date reasonably

23   near the date alleged in the indictment, it is not necessary for the

24   government to prove that the offense was committed precisely on the

25   date charged."  Ninth Circuit Model Criminal Jury Instructions, No.

26   6.18 (2022 ed.) [On or About -- Defined].  The government

27   respectfully submits that the Court should rely on the Ninth Circuit

28   Model instruction rather than incorporate a confusing and incomplete

10

version of that instruction when instructing the jury on the substantive offense.  Indeed, the Ninth Circuit has noted the inherent risk of juror confusion when jury instructions subdivide the charges "to the atomic level," and has cautioned against doing so unnecessarily.  See United States v. Mickey, 897 F.3d 1173, 1182 (9th Cir. 2018) (affirming district court's denial of a specific unanimity instruction regarding the means by which defendant accomplished the charged offense).

> 4.   Defendant Requests an Unnecessary Unanimity Instruction With Respect to the Form of Material Support or Resources the Government Must Prove in Count Four

With respect to Count Four, defendant seeks an instruction that the jury "must unanimously agree that the defendant attempted to provide material support to Hamas in one of the two forms charged: services in the form of fundraising, or currency, with all of you agreeing that the defendant attempted to provide services or all of you agreeing that the defendant attempted to provide currency, or both."  But so long as the Court instructs the jury on each of the elements the government must prove, the jury need not be instructed to decide unanimously which means satisfies each of those elements. Richardson v. United States, 526 U.S. 813, 817 (1999) ("[A] jury in a federal criminal case cannot convict unless it unanimously finds that the Government has proved each element ... [but a] federal jury need not always decide unanimously which of several possible sets of underlying brute facts make up a particular element."); Mickey, 897 F.3d at 1181.

In Count Four, the government must prove the element that defendant intended to provide "material support and resources," not

the specific means or manner of those material support or resources. See United States v. D'Amelio, 683 F.3d 412, 422-23 (2d Cir. 2012) (the "specific means used by a defendant to effect his or her crime does not constitute an 'essential element' of the offense."). Because "different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line," "there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict." United States v. Ruiz, 710 F.3d 1077, 1081 (9th Cir. 2013).

A general unanimity instruction like the government has included in its proposed instruction on the substantive offense normally suffices, unless there is real potential for "juror confusion." See, e.g., United States v. Payseno, 782 F.2d 832, 837 (9th Cir. 1986) (finding that general unanimity instruction not sufficient for single charged count where "[t]he three acts of extortion in this case were directed at separate victims, occurred at different times and different locations, involved different methods of communicating the threats, and were carried out by varying numbers of individuals."). Count Four charges defendant's conduct on a single date, based on evidence from the same series of online communications that date, so there is no risk of juror confusion with respect to the material support and resources at issue.

Any argument by defendant that since Count Four charges defendant with attempting to provide "services and currency, including fundraising and money" (emphasis added), the government must therefore prove both potential forms of material support, or have the jury unanimously indicate its findings with respect to each potential form, is unavailing. "It is common to charge conjunctively

12

1   when an underlying statute proscribes more than one act
2   disjunctively; such a charge permits conviction upon proof that the
3   defendant committed either of the conjunctively charged acts."
4   Malta-Espinoza v. Gonzales, 478 F.3d 1080, 1082 (9th Cir. 2007); see
5   also United States v. Bonanno, 852 F.2d 434, 441 (9th Cir. 1988)
6   ("Where a statute specifies two or more ways in which an offense may
7   be committed, all may be alleged in the conjunctive in one count and
8   proof of any one of those acts conjunctively charged may establish
9   guilt.").  Section 2339B criminalizes attempting to provide "material
10  support or resources," 18 U.S.C. § 2339B(a)(1), and "material support
11  or resources" is defined as "any property ... or service ..."  18
12  U.S.C. § 2339A(b)(1).  Thus, the government has properly charged
13  defendant with attempting to provide material support and resources,
14  to include the "service" of "fundraising" and "currency," and the
15  jury should be instructed that they should convict defendant if they
16  unanimously find defendant provided the requisite material support or
17  resources, whichever form that took as alleged in the indictment.

18          5.   Defendant's Proposed Instruction Stating That the
                 Government Must Prove Defendant's Intent to Provide
19               Material Support or Resources "In Coordination With or
                 at the Direction Of" FTOs Is Wrong as a Matter of Law
20

21       Defendant incorrectly seeks to import language from Holder, 561
22  U.S. at 26, into the description of the first element under all
23  counts and in defendant's proposed definition of "substantial step,"
24  requesting that the Court instruct that the jury is required to find
25  that defendant intended to provide material support or resources "in
26  coordination with or at the direction of" the relevant FTOs.  But the
27  Supreme Court used this language in Holder to refer to the
28  "coordination" or "direction" required when the service alleged is

"advocacy," as opposed to the types of services the government has alleged defendant attempted to provide here.  See id. (holding that the material support prohibited by Section 2339B "often does not take the form of speech at all.  And when it does, the statute is carefully drawn to cover only a narrow category of speech to, under the direction of, or in coordination with foreign groups that the speaker knows to be terrorist organizations."); see also United States v. Mehanna, 735 F.3d 32, 50 (1st Cir. 2013) ("a direct link is neither required by statute nor mandated by [Holder]").

The government has charged defendant with attempting to provide the services of "compiling, archiving, and providing" certain information in Counts One and Two, "combat training and information" in Count Three, and "fundraising" and currency ("money") in Count Four.  The information and training defendant attempted to provide as alleged in Counts One, Two, and Three (and that he "compiled" and "archived," as alleged in Counts One and Two) is not speech or advocacy as contemplated by Holder.  Nor has the government alleged defendant provided himself as "personnel," which is specifically defined by statute.  See United States v. Wright, 937 F.3d 8, 24 (1st Cir. 2019) (discussing "in coordination with" and "at the direction of" in relation to conviction for conspiring to provide material support in the form of "personnel," defined at 18 U.S.C. § 2339B(h)).  Rather, the services alleged in Counts One, Two, and Three constitute conduct "done for the benefit or at the command of another," Holder, 561 U.S. at 23-24, language the government has incorporated in the definition of "services" in the government's proposed instruction on the substantive offense.

Even if the government was required to prove under Section 2339B that defendant acted in "coordination with" or "at the direction of" an FTO when providing the type of services alleged, defendant is charged with <u>attempting</u> to provide those services, so the government is not required to allege or establish that defendant actually coordinated with HTS or HAMAS in any event.

The government will address defendant's arguments regarding the First Amendment further in its objection to defendant's proposed "First Amendment Protected Speech Instruction," below.

1
2

GOVERNMENT'S OBJECTIONS TO DEFENDANT'S PROPOSED
"THEORY OF THE DEFENSE INSTRUCTION"

3      For the same reasons that defendant's request to instruct the
4  jury that the government is required to prove defendant's conduct was
5  "at the direction of, or in coordination with" the FTOs in all Counts
6  misstates the law, defendant's proposed "Theory of the Defense
7  Instruction" is also improper.  Defendant's proposed instruction
8  merely re-states the (legally inaccurate) instruction that the jury
9  cannot find defendant guilty of Counts One, Two, Three, and Four
10 unless the government proves that material support and resources
11 defendant attempted to provide were "done either at the direction of,
12 or in coordination with" the FTO named in each count.  First, there
13 is no such "at the direction of, or in coordination with" requirement
14 for Section 2339B offenses where the alleged service is not
15 expressive speech or advocacy.  See Holder, 561 U.S. at 26; United
16 States v. George, 420 F.3d 991, 1000 (9th Cir. 2005) (a defendant is
17 not "entitled to an instruction that misstates the law.").  Moreover,
18 even if defendant had correctly stated the definition of a "service"
19 and what the government must prove, defendant is not entitled to a
20 theory of defense instruction given that defendant's theory is
21 covered sufficiently in the government's proposed instruction on the
22 substantive offense.  Young v. Barnes, No. 14-cv-5648-VBF, 2015 WL
23 4064968, at *6 (C.D. Cal. Apr. 20, 2015), report and recommendation
24 adopted, 2015 WL 4066502 (C.D. Cal. July 2, 2015) ("the defendant is
25 not entitled to have jury instructions raised in his or her precise
26 terms where the given instructions adequately embody the defense,"
27 citing United States v. Del Muro, 87 F.3d 1078, 1081 (9th Cir.
28 1996)); United States v. Tucker, 641 F.3d 1110, 1122-23 (9th Cir.

2011).  Defendant's proposed "theory of the defense" instruction merely restates an element of the offense in the negative.  "A judge need not include proposed instructions that are not necessary to explain to the jury the legal effect of the theory of the defense." United States v. Barnes, No. 20-30059, 2021 WL 4938126, at *1 (9th Cir., Oct. 22, 2021), cert. denied, 142 S. Ct. 2754 (2022) (internal quotations omitted) (affirming district court's refusal to give a defendant's proposed theory of defense instruction); United States v. Keyser, 704 F.3d 631, 641-42 (9th Cir. 2012) ("a defendant is entitled to have his theory fairly and adequately covered by the instructions, but [he] is not entitled to an instruction in a particular form.").

1    GOVERNMENT'S OBJECTIONS TO DEFENDANT'S PROPOSED "FIRST AMENDMENT
2                   PROTECTED SPEECH INSTRUCTION"

3         Stretching <u>Holder</u>'s discussion of protected "speech" and
4    "advocacy" in an attempt to cover his criminal conduct in this case,
5    defendant seeks an instruction that unnecessarily restates certain
6    guarantees provided by the First Amendment and wrongly intimates that
7    defendant's offenses are merely an "expression of [his] beliefs, or
8    his associations."  But defendant is charged with attempting to
9    provide material support and resources in the form of certain
10   "services" -- including compiling, archiving, and providing training
11   and training information that would help further armed attacks by
12   FTOs, as well as fundraising -- that constitute noncommunicative
13   conduct, not protected speech or advocacy.  Since the services
14   defendant provided to FTOs HTS and HAMAS are not "expressions" of his
15   "beliefs" or "associations," <u>see</u> <u>Texas v. Johnson</u>, 491 U.S. 397, 403
16   (1989) (distinguishing protected "expression" from "noncommunicative
17   conduct" for purposes of First Amendment), <u>cited by</u> <u>Holder</u>, 561 U.S.
18   at 28, defendant's proposed instruction is an irrelevant deflection
19   that improperly invites the jury to evaluate the boundaries of the
20   First Amendment.

21        Defendant's proposed instruction also wrongly implies that
22   defendant cannot be convicted of the charges unless "defendant's
23   words are both intended to incite or produce imminent lawless action
24   and are actually likely to incite or produce such action,"
25   referencing the <u>Brandenburg v. Ohio</u>, 395 U.S. 444 (1969), incitement
26   standard that is inapposite in relation to the Section 2339B offenses
27   in the indictment.

28

                                    18

1    Finally, defendant's proposed instruction concludes by stating

2    that defendant's "discussion of events and politics, and expressions

3    of his opinion about them," are "protected by the First Amendment,"

4    suggesting that defendant's many statements of support for FTOs HTS

5    and HAMAS, as well as affiliated groups and their extremist and

6    violent ideologies, are not admissible.  But as defendant

7    acknowledges at the end of his proposed instruction, defendant's

8    statements regarding these topics are probative of his intent and

9    knowledge, which are elements the government must prove for all

10   counts.[26]  Defendant's proposed instruction risks misleading the jury

11   by implying defendant's expressive statements are insufficient, or

12   otherwise inadmissible, to establish defendant's intent or knowledge.

13   To the extent that the Court is inclined to grant a cautionary

14   instruction (which the government respectfully submits is not

15   necessary), the government requests an opportunity to review and

16   comment on the language.

17   **A.  Section 2339B Does Not Infringe Upon Defendant's First**
     **Amendment Rights, Since Defendant's Charged Conduct Does**
18   **Not Include Protected Speech**

19       The First Amendment protects speech but does not protect

20   criminal acts like those alleged against defendant in this case,

21   whatever his purported religious or political excuse for that

22

23   _____

     [26] See Dkt. Nos. 144 and 161 (Government's Motion in Limine to
24   Permit Introduction of Evidence Pursuant to Rule 404(b) and
     Memorandum of Points and Authorities, and Government's Reply to
25   Defendant's Response).  To the extent the Court finds any of
     defendant's statements are not "inextricably intertwined" with his
26   offenses but are instead admissible under Rule 404(b) for the
     purposes of providing motive, intent, or knowledge, the government
27   respectfully submits that the Ninth Circuit's Model Criminal Jury
     Instruction No. 3.3 ("Other Crimes, Wrongs, or Acts of Defendant") is
28   more appropriate than defendant's proposed "First Amendment Protected
     Speech" instruction.

                                    19

conduct.  Indeed, when the Supreme Court upheld Section 2339B against a First Amendment challenge in Holder, it determined that Section 2339B does not impinge upon an individual's First Amendment right to freedom of speech and freedom of association.  Holder, 561 U.S. 1. The Holder Court concluded that Section 2339B "does not criminalize mere membership in a designated foreign terrorist organization, but rather, it prohibits providing material support to such a group," reasoning that "a person of ordinary intelligence would understand that independently advocating for a cause is different from providing a service to a group that is advocating for that cause."  Id. at 18, 24; see also United States v. Badawi, No. 15-cr-00060-DOC, 2021 WL 4735022, at *2 (C.D. Cal. Jun. 28, 2021) (defendant's "argument that his material support convictions violated the First Amendment is meritless, because the government did not convict him based on his mere association with and oral support for ISIS.  Rather, Petitioner was convicted for his conspiracy to provide, and aiding and abetting an attempt to provide, material support to ISIS.").

In so doing, Holder validated the approach of numerous other courts that evaluated First Amendment challenges to Section 2339B. Those other courts found that where the alleged material support or resources was conduct, not protected speech, the First Amendment offered no refuge.  See United States v. Rahman, 189 F.3d 88, 117 (2d Cir. 1999) ("Notwithstanding that political speech and religious exercise are among the activities most zealously guarded by the First Amendment, one is not immunized from prosecution for such speech-based offenses merely because one commits them through the medium of political speech or religious preaching."); see also Holy Land Foundation for Relief and Development v. Ashcroft, 333 F.3d 156, 165

(D.C. Cir. 2003) ("[T]he law is well established that there is no constitutional right to fund terrorism."); People's Mojahedin Organization of Iran v. Department of State, 327 F.3d 1238, 1244-45 (D.C. Cir. 2003); Boim v. Quranic Literacy Institute, 291 F.3d 1000, 1026 (7th Cir. 2002) ("Under Section 2339B ... [defendant] may, with impunity, become [a member] of Hamas [an FTO], praise Hamas for its use of terrorism, and vigorously advocate the goals and philosophies of Hamas.  Section 2339B prohibits only the provision of material support (as that term is defined) to a terrorist organization.  There is no constitutional right to provide weapons and explosives to terrorists."); see also United States v. Taleb-Jedi, 566 F.Supp.2d 157, 174-77 (E.D.N.Y. 2008) ("The premise of [defendant's] argument is that § 2339B criminalizes mere membership in or association with a terrorist organization.  However, defendant is mistaken because § 2339B prohibits the conduct of providing material support and resources to an FTO.") (emphasis in original).  As another district court observed in rejecting a First Amendment challenge in the context of a material support prosecution:

> There is ... a clear line between First Amendment protected activity and criminal conduct for which there is no constitutional protection.  The First Amendment's guarantee of associational freedom is no license to supply terrorist organizations with resources or material support in any form, including services as a combatant.  Those who choose to furnish such material support to terrorists cannot hide or shield their conduct behind the First Amendment.

United States v. Lindh, 212 F.Supp.2d 541, 570 (E.D. Va. 2002); see also United States v. Nagi, 254 F.Supp.3d 548, 558-59 (W.D.N.Y 2017).  Moreover, a defendant who encourages others to join an FTO by traveling to join the fight or who commits acts on behalf of the FTO

21

elsewhere, using an internet-based application to spread information about the organization and its leaders, can be guilty of attempting to provide material support to an FTO.  See United States v. Rahim, No. 19-11341, 2021 WL 2065902 (N.D. Tex., May 21, 2021) (per curiam).

The charges against defendant are aimed not at his speech, but at his conduct, namely, his compiling, archiving, and providing certain tactical, combat, weapons, and bomb-making information, as well as his fundraising, which he accomplished by sharing information describing how to transfer cryptocurrency to HAMAS along with a link to direct such transfers.  See Rice v. Paladin Enterprises, Inc., 128 F.3d 233, 256 (4th Cir. 1997) (finding that book "to be used by criminals and would-be criminals to commit murder for hire in accordance with the book's instructions ... is at the other end of the continuum from the ideation at the core of the advocacy protected by the First Amendment"); United States v. Afshari, 426 F.3d 1150, 1161 (9th Cir. 2005) ("Defendants are entitled under the First Amendment to publish articles arguing that the MEK is not really a terrorist organization, but they are not entitled to furnish bombs to the MEK, nor to furnish money to buy bombs and ammunition").  The First Amendment is not implicated merely because defendant provided these services using the same "medium" -- online group chats and messages -- that he used to express his ideological support for the FTOs he hoped would benefit from those services.  Cf. Holder, 561 U.S. at 28 (finding that the First Amendment issue before the Court in that case was "not whether the Government may prohibit pure political speech, or may prohibit material support in the form of conduct" but was "instead whether the Government may prohibit ... provid[ing] material support to [FTOs] in the form of speech."); see

22

1  also United States v. Mendelsohn, 896 F.2d 1183, 1185 (9th Cir. 1990)

2  (affirming district court's refusal to provide a First Amendment

3  instruction where the defendant's words were "too instrumental in and

4  intertwined with the performance of criminal activity to retain first

5  amendment protection").  Thus, to the extent that defendant's

6  proposed First Amendment language is legally accurate, it does not

7  apply to the charged conduct in this case.  And to the extent that

8  defendant argues that the protections of the First Amendment do apply

9  to his charged conduct, such an argument is inconsistent with the

10 law.  See, e.g., Afshari, 426 F.3d at 1160 (conviction under Section

11 2339B for making "contributions of money" to FTO); United States v.

12 Alhaggagi, 978 F.3d 693, 700 (9th Cir. 2020) (conviction under

13 Section 2339B for "opening social media accounts" for FTO); United

14 States v. Mustafa, 406 F. App'x 526, 530 (2d Cir. 2011) ("providing

15 jihad training and disseminating training manuals on the Internet for

16 the benefit of al Qaeda, and other terrorist organizations,

17 implicates the core meaning of a statute that proscribes knowingly

18 providing training and expert advice or assistance to a foreign

19 terrorist organization [Section 2339B]") (internal quotation

20 omitted).

21     **B.  Defendant Should Not Be Permitted to Invite the Jury to**
       **Independently Evaluate First Amendment Protections That Are**
22     **Irrelevant to Any Valid Defense**

23     Given that the First Amendment does not protect the charged

24 conduct, defendant should not be allowed to invite the jury to acquit

25 him in order to vindicate perceived rights to free speech or

26 religion, notwithstanding evidence of his provision of material

27 support and resources to FTOs.  See United States v. Foppe, 993 F.2d

28 1444, 1452 (9th Cir. 1993) (a defendant is not entitled to an

                                   23

irrelevant jury instruction); <u>United States v. Amawi</u>, 695 F.3d 457,
482 (6th Cir. 2012) (affirming denial of First Amendment instruction
in relation to Section 2339A conspiracy, since defendant's "requested
instruction would have directed the jury to acquit the defendants,
even if every element of the crime was proved beyond a reasonable
doubt, <u>if</u> the jury made the legal judgment that the conduct was
protected by the First Amendment."). Nor should defendant be
permitted to confuse the jury by suggesting that the First Amendment
prevents the jury from considering his statements or beliefs as
evidence of his guilt. <u>See</u> <u>United States v. Sibley</u>, 595 F.2d 1162,
1165 (9th Cir. 1979) (a district court may reject defense
instructions that are confusing or incorrectly inject new elements
into deliberations).

As the First Circuit found in the context of Section 2339B,
specifically, the "role of the jury in a federal criminal case is to
decide only the issues of fact" and the jury should be "barred ...
from embarking on an independent evaluation of First Amendment
protections." <u>Mehanna</u>, 735 F.3d at 49-50 (internal quotations
omitted). As noted above, the Supreme Court evaluated the extent of
First Amendment protections where a defendant provides material
support or resources in the form of expressive speech or advocacy, a
scenario unlike this case, and upheld Section 2339B. <u>Holder</u>, 561
U.S. 1. The Court should not inject such First Amendment
considerations into the jury's deliberation here by providing an
unnecessary and confusing instruction.

Even if certain language in defendant's proposed instruction
accurately states aspects of First Amendment law, "a defendant is not
entitled to any particular form of an instruction so long as the

24

1  instructions given fairly and adequately cover his theories of

2  defense." <u>United States v. Faust</u>, 850 F.2d 575, 583 (9th Cir. 1988),

3  <u>cited by</u> <u>United States v. Gladney</u>, 521 F. App'x 627, 629 (9th Cir.

4  2013).  Here, the government's proposed instruction on the

5  substantive offense contains all required elements and definitions,

6  as well as <u>Holder</u>'s cautionary language as to "independent advocacy,"

7  and therefore the government's proposed instruction adequately

8  embodies defendant's theory of defense.

9       **C.   Defendant's Reference to the <u>Brandenburg</u> Incitement**
          **Standard is Inapposite and Unnecessary**
10

11      Defendant's proposed instruction also states, "[t]he Supreme

12  Court holds that expression is protected unless the defendant's words

13  both are intended to incite or produce imminent lawless action and

14  are actually likely to incite or produce such action.  In other

15  words, there must be a clear danger of immediate violence."  But

16  defendant is charged under Section 2339B with providing services and

17  currency to FTOs, not inciting violence, and there is no requirement

18  that the government prove any of defendant's statements presented a

19  "clear danger of immediate violence," which is an inexact

20  reformulation of the Supreme Court's incitement standard in

21  <u>Brandenburg</u> anyhow.  395 U.S. at 447 (holding that the government may

22  prohibit the advocacy of force "where such advocacy is directed to

23  inciting or producing imminent lawless action and is likely to incite

24  or produce such action").  Other district courts have considered the

25  <u>Brandenburg</u> test in relation to a charge under Section 2339B, finding

26  the test "inapplicable" since it is the "attempt to provide services

27  to [the FTO] that form[s] the basis of the indictment," not the

28  "content" of what defendant or those FTOs had advocated, "violent or

25

otherwise." United States v. Osadzinski, No. 19-cr-869, 2021 WL 3209671, at *4 (N.D. Ill. Jul. 29, 2021); see also United States v. Afshari, 635 F. Supp. 2d 1110, 1119 (C.D. Cal. 2009) ("because the Indictment does not allege that Defendants violated Section 2339B by engaging in protected advocacy, the Indictment need not allege nor need the Government prove at trial, that Defendants' conduct incited or produced imminent lawless action and that it was likely to incite or produce such action under Brandenburg v. Ohio and its progeny"); United States v. Sattar, 395 F. Supp. 2d 79, 102 (S.D.N.Y. 2005), aff'd sub nom. United States v. Stewart, 590 F.3d 93 (2d Cir. 2009) ("Brandenburg analysis does not apply to unlawful speech-acts such as conspiracy or aiding and abetting."); see also United States v. Hassan, 742 F.3d 104, 129 (4th Cir. 2014) (defendant's proposed instructions "encompassing the First Amendment protections extended to speech advocating violence, are of no import in this case. Put simply, the appellants were not prosecuted for inciting violence.").

**D. The Admission of Evidence of Defendant's Statements Regarding FTOs, Affiliated Groups, and Extremist Ideologies Does Not Require a Cautionary Instruction**

Finally, to the extent that defendant's proposed instruction is meant to limit the jury's consideration of defendant's statements outside of his conduct that forms the basis of Counts One, Two, Three, and Four on the dates charged, it is misleading and unnecessary.

In this case, the defendant's online statements to government undercover agents and others in online group chats in one-on-one conversations may be considered by the jury to evaluate defendant's mens rea in connection with the charged offense. The First Amendment "does not prohibit the evidentiary use of speech to establish the

26

1   elements of a crime or to prove motive or intent." <u>Wisconsin v.</u>
2   <u>Mitchell</u>, 508 U.S. 476, 489 (1993).  Consistent with <u>Mitchell</u>, the
3   defendant's statements in this case will be used as evidence that he
4   knew HTS was a designated FTO that was involved in terrorism and
5   terrorist activity; that he intended to train other individuals who
6   planned to fight on behalf of HTS abroad or in the United States;
7   that he intended to compile, archive, and provide bomb-making and
8   other information that could be used to carry out lethal attacks on
9   behalf of HTS and other terrorist groups; and that he intended to
10  send funds to HAMAS's military wing and encouraged others to do so.
11  Such use of speech evidence is legally permissible and directly
12  relevant to establishing <u>mens rea</u> for Section 2339B.  As one district
13  court observed, "it is the combination of speech evincing intent and
14  subsequent action on [the] defendant's part ... that form the basis
15  of the charge against [him]." <u>United States v. Augustine</u>, No. 18-cr-
16  393 (SJ)(RML), 2020 WL 9199944, at *8 (E.D.N.Y. Sep. 8, 2020), <u>report</u>
17  <u>and recommendation adopted</u>, No. 18-cr-393 (SJ) (RML), 2021 WL 1381060
18  (E.D.N.Y. Apr. 13, 2021), and <u>report and recommendation adopted</u>, No.
19  18-cr-393 (SJ) (RML), 2021 WL 1394059 (E.D.N.Y. Apr. 13, 2021).

20       The defendant's statements concerning "events and politics" and
21  "his opinions about them" that the government intends to offer are
22  also highly probative of defendant's motive to commit the charged
23  offenses and should be considered by the jury on that basis.  <u>See</u>
24  <u>Haupt v. United States</u>, 330 U.S. 631, (1947) (First Amendment does
25  not prevent the admission in evidence of a defendant's political
26  views to demonstrate the defendant's relevant motive in a prosecution
27  for treason).

28       To the extent that the Court concludes a cautionary instruction

is necessary to guard against undue prejudice or the jury's consideration of defendant's expressive speech outside of his charged conduct for purposes other than for intent, knowledge, and motive, the government respectfully submits that the Court should offer an alternative instruction that makes clear (1) the jury may consider defendant's provision of combat, tactical, and bomb-making information, training, and fundraising as unprotected speech that is "integral to his charged conduct," see United States v. Waggy, 936 F.3d 1014, 1017 (9th Cir. 2019) (quoting United States v. Stevens, 559 U.S. 460, 468 (2010)); and (2) the jury may consider defendant's other statements as evidence of motive, intent, and knowledge.