KARREN KENNEY, CA. SBN 174872
KENNEY LEGAL DEFENSE
2900 Bristol Street, Suite C204
Costa Mesa, CA 92626
TELEPHONE:(855) 505-5588
E-MAIL: KARREN.KENNEY@GMAIL.COM

CHARLES D. SWIFT, WA Bar No. 41671
CONSTITUTIONAL LAW CENTER FOR
MUSLIMS IN AMERICA
100 N. Central Expy. SUITE 1010
Richardson, TX 75080
TELEPHONE: (972) 914-2507
FAX: (972) 692-7454
EMAIL: CSWIFT@CLCMA.ORG

ATTORNEYS FOR THE DEFENDANT

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff(s),<br><br>vs.<br><br>JASON FONG<br><br>    Defendant(s). | Case No.: SACR 20-00146-DOC |

**MOTION IN LIMINE-DEFENDANT'S DAUBERT OBJECTIONS TO GOVERNMENT EXPERT'S PROPOSED TESTIMONY – MICHAEL HONG**

Comes now Defendant, Jason Fong, and objects to portions of the government's proposed expert testimony for Special Agent (SA) Michael Hong, a Special Agent Bomb Technician. The government's expert disclosure includes sections of proposed testimony that do not require expert testimony, are irrelevant to the four counts of the Indictment, are more prejudicial than probative, and risk confusing the jury.

- 1 -

## I. FACTUAL BACKGROUND

Mr. Fong is charged in four counts with attempting to provide material support or resources to Hayat Tahrir Al Sham (HTS), and Hamas.

### a. Charges

| Count | Charge | Type of Support | Foreign Terrorist Organization |
|---|---|---|---|
| 1 | Attempt to Provide Material Support to foreign terrorist organization on March 17, 2020 | services, including compiling, archiving, and providing tactical, combat, and weapons training materials and information regarding the making of chemical weapons and improvised explosive devices | Hayat Tahrir Al Sham (HTS) |
| 2 | Attempt to Provide Material Support to foreign terrorist organization on April 1, 2020 | services, including compiling, archiving, and providing tactical, combat, and weapons training materials and information regarding the making of chemical weapons and improvised explosive devices | HTS |
| 3 | Attempt to Provide Material Support to foreign terrorist organization on May 7, 2020 | services, including combat training and information regarding the making of boobytraps and improvised explosive devices | HTS |
| 4 | Attempt to Provide Material Support to foreign terrorist organization on May 18, 2020 | services and currency, including fundraising and money | Hamas |

### b. Proposed Expert Testimony of SA Hong

#### *1. Testimony Concerning Counts One and Two (Exhibit A)*

- Improvised explosives and IEDs, specifically an explanation of what they are and their capabilities, such as the blast radius, lethality, and remote-detonation, also including the fact that the blast radius and lethality varies based on the weight, ratio, and size of the device or improvised explosive;

- Improvised explosives and IEDs are used in instances where they cause injury or death and not generally used for self-defense purposes;

- the significance of possessing and making the following items in the context of weapons (including weapons made of chemicals), explosives, and IEDs: thermite, potassium nitrate, sulfur, pyrite, black powder and improvised black powder, charcoal, and nitric acid, (Bates No. USA_018887-18918);

- the mixing of the following chemicals: bleach and vinegar, bleach and ammonia, bleach and rubbing alcohol, hydrogen peroxide and vinegar can be hazardous (Bates No. USA_18888);

- the information provided in Bates No. USAO_018896 – 18901 are instructions to make improvised explosives;

- the information provided in Bates Nos. USAO_018993-18999 (Count 2 PDF) are instructions to make improvised explosives and/or IEDs;

- that the information listed about motor scrap mines (USA_19004-19006, Count 2), nail grenade (USA_19008, Count 2), sodium chlorate and sugar or aluminum explosive (USA_19009-19010, Count 2), fertilizer explosive (USA_19011-19012, Count 2), plastic explosive filler (USA_19022, Count 2), chemical fire bottle (USA_19023, Count 2), recoilless launcher (USA_19038-39, Count 2); grenade launcher (57mm cardboard container) (USA_19040-42, Count 2), pipe hand grenade (USA_19043-44, Count 2),

- that the following chemicals can be used to make weapons, such as improvised explosives and/or IEDs: nitric acid (USA_019013-14); improvised black powder (USA_19015-16), potassium nitrate (USA_19017-19019), and sodium chlorate (USA_19024-26);

- the significance and/or functionality of possessing and mixing gun cotton, thermite, and potassium nitrate (USA_19275-76) and how they can be used to make weapons, such as weapons made of chemicals, improvised explosives, boobytraps, and/or IEDs;

- the replica of the "Improvised Munitions Black Book," which is based in part on a 1969 U.S. Army manual titled the "TM 31-210 Improvised Munitions Handbook," outlines how to make weapons, weapons made of chemicals, explosives, and IEDs; and

### 2. Testimony Concerning Count Three (Exhibit A)

- the "FM 5-31 Boobytraps" manual outlines how to make boobytraps and IEDs

- pressure plate bombs and remote detonated (USA_19276, COUNT 3) are information about how to make a boobytrap, weapons, weapons made of chemicals, explosives, and/or IED;

- that fuse cords – fast and slow burning fuses (USA_19045-46) can be used to initiate weapons, such as weapons made of chemicals, improvised explosives, and/or IEDs;

## II. LEGAL STANDARDS

### a. Expert testimony must be relevant to prove a material fact at issue

Federal Rule of Evidence 702 requires that the expert testimony "assist the trier of fact to understand the evidence or to determine a fact in issue . . . ."). Federal Rule of Evidence 401, states that evidence is relevant if it tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evid. 401.

- 3 -

Once qualified, an expert may testify within their area of expertise so long as the expert's testimony "is both relevant and reliable." *Cooper*, 510 F.3d at 942 (citation omitted); *see also Daubert I*, 509 U.S. at 589. In carrying out this responsibility, a court has discretion in determining what evidence is relevant, and helpful to the trier of fact. *See United States v. Cordoba*, 104 F.3d 225, 228 (9th Cir. 1997) ("District Courts must strike the appropriate balance between admitting reliable, helpful expert testimony and excluding misleading or confusing testimony to achieve the flexible approach outlined in *Daubert [I]*.") (citation omitted).

The Ninth Circuit has articulated a two-prong analysis for admissibility of a qualified expert's testimony. First, the proffered testimony must be reliable, i.e., the expert's testimony reflects scientific knowledge, the findings are derived by the scientific method, and the work product amounts to "good science." *Daubert v. Merrell Dow Pharm.*, 43 F.3d 1311, 1315 (9th Cir. 1995) ("Daubert II") (citation and quotation signals omitted). The defendant does not dispute the qualifications of Mr. Hong.

The second prong, requires the testimony to meet the "fit" requirement of relevancy, i.e., "it logically advances a material aspect of the proposing party's case." Id. A court's determination of relevancy "must be 'tied to the facts' of [the] particular case.'" *Cooper*, 510 F.3d at 942 (quoting Kumho Tire, 526 U.S. at 150) (internal quotation signals omitted).

The Ninth Circuit's "fit" requirement, is directed "primarily to relevance." *Daubert I*, 509 U.S. at 591. "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Id*. (internal quotations omitted).

**b. Power of expert testimony requires Rule 403 balancing, and not mislead the jury**

However, the "fit" requirement is not merely a reiteration of the general relevancy requirement under Rule 402. *Daubert II*, 43 F.3d at 1321 n.17. Instead, such a determination is meant to take into account that "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible

prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." *Daubert I*, 509 U.S. at 595 (citation and quotation signals omitted). "Federal judges must therefore exclude proffered scientific evidence under Rules 702 and 403 unless they are convinced that [the evidence] speaks clearly and directly to an issue in dispute in the case, and that it will not mislead the jury." *Daubert II*, 43 F.3d at 1321 n.17.

**III. ARGUMENT**

    **a. SA Hong's testimony is not relevant to any fact in issue**

Mr. Fong is charged with attempting to provide material support, in the form of the various services outlined above, to HTS and Hamas. SA Hong's testimony is only pertinent to Counts One through Three—attempting to provide services in the form of compiling and providing various weapons training materials (Counts One and Two), and attempting to provide combat training materials (Count Three) to HTS.

    **b. Counts One and Two - Fed. Rule of Evid. 402 and 702 – Relevance**

The proposed testimony for SA Hong, related to Counts One and Two, concerns improvised explosives described in the materials Mr. Fong is alleged to have provided. The government proffers that Mr. Hong will provide expert testimony concerning how the devices are constructed, how the devices are used, and the impact of such explosives or weapons. None of this testimony is relevant to a fact of consequence in proving the offense charged in Counts One and Two.

To prove Counts One and Two, the government must establish that Mr. Fong knowingly attempted to provide the service of compiling tactical, combat, and weapons training materials to HTS; at the direction of, or in coordination with, HTS; and that Mr. Fong knew HTS was a foreign terrorist organization, or engaged in terrorist activities. [1]

What Count's One and Two do not require, is proof of the value of the materials provided to the terrorist organization in furthering its activities. This is because the materials, in and of themselves, do not constitute material support in the way that a tangible item such as currency does. *See United States v. Abu-Jihaad*, 600 F. Supp. 2d 362 (D. Conn. 2009) (holding that providing an electronic copy of a carrier battle groups transit plan through the straits of Malacca did not constitute material support in and of itself).

Nor do Counts One and Two require that the government prove Mr. Fong intended the materials to be used, or that Mr. Fong intended to create or help to create any weapons or explosives. The intent to further a crime with the materials is an element of 18 U.S.C. 2339A, a crime Mr. Fong is not charged with.

SA Hong's proposed expert testimony concerning the documents Mr. Fong allegedly complied, archived and provided to HTS, therefore does not meet the relevance requirement of 702, as it does not "logically advance a material aspect of the charged conduct.

**c. SA Hong's Testimony concerning the materials allegedly provided in Counts One and two is more prejudicial than probative.**

SA Hong's proposed testimony with respect to Counts One and Two does not speak clearly and directly to an issue in dispute in the case as required under Daubert II.  As explained above, expert testimony describing and explaining the nature of the materials posted by Mr. Fong on his Signal chat group is not directly relevant to any elements of the charged offense. Whatever tangential relevance the testimony might have, it is collateral and does nothing to establish the issue in dispute - whether Mr. Fong's activities were sufficiently coordinated with, or directed by, HTS, to constitute a service to HTS.

What the testimony would do instead is misled the jury by focusing attention away from the issue in dispute which they are required to decide.  To reach this conclusion, the Court need look no further than what happened in *Abu Jihad*. In *Abu Jihad* the defendant was

charged both with material support and unlawfully disclosing national defense information. *United States v. Abu-Jihaad*, 600 F. Supp. 2d 362 (D. Conn. 2009). The disclosing defense information Count necessarily was supported by expert testimony concerning the value of the information. *Id.* at 385. The jury returned a guilty verdict on both counts. Post-verdict, the Court upheld the verdict concerning the unlawful disclosure of national defense information, but struck down the jury's verdict on the material support charge on the basis of insufficient evidence, pointing out that the government had presented no evidence of coordination between the defendant and Al Qaeda.

The most logical explanation for jury's verdict was that the jury confused the value of defense information for material support in the form of personnel. The same risk is present, here. Namely that the jury focuses on the nature of the materials provided rather than the relationship between Fong and HTS. For these reasons the Mr. Hong's proffered expert testimony related to the materials allegedly provided to HTS in Counts 1 and 2 fail the 403 expert balancing test set out in Daubert II.

**d. Count Three**

Count Three differs from Counts One and Two, in as much as it charges attempting to provide training instead of compiling and archiving the materials that Mr. Fong allegedly attempted to provide to HTS. Training, however, does not change the analysis.

The term "training" in the context of material support is defined in 18 U.S.C. 2339A(b)(2) as "instruction or teaching designed to impart a specific skill, as opposed to general knowledge." The material that the government proffers in SA Hong's expert testimony for Count Three is testimony concerning the contents of a 1965 Army booby-traps manual. There is no evidence that Mr. Fong used the manual as part of a training presentation he conducted

or even possessed the manual. Instead, the evidence is that Mr. Fong provided a link to the website where the manual could be found.

While providing a link to a website may be sufficient to constitute providing material support if it was sufficiently coordinated with, or directed by, HTS, it does not amount to providing actual training. Thus, whether the materials themselves, if incorporated into a presentation by Mr. Fong, could constitute training is irrelevant to the training allegation in Count Three.[2] .

The analysis is the same when it comes to the alternative allegation that Mr. Fong provided the manual via a link to a website where it could be found and downloaded, as with respect to the materials charged in Counts One and Two. If anything, the probative value of expert testimony regarding the 1965 manual is even less than that of expert testimony concerning the materials allegedly provided in Counts One and Two, as there is no direct evidence that Mr. Fong read the manual before sending the link.[3]

For these, reasons expert testimony concerning the 1965 booby traps manual should also be excluded under the *Daubert II* test for relevance and prejudicial effect.

IV.  **CONCLUSION**

For the above stated reasons, the defendant prays that this court exclude the proffered expert testimony of SA Hong.

Respectfully submitted this 9th day of December 2022.

By: /s/ Charles Swift

---

[2] The defense understands the training allegation to arise from the discussion between Mr. Fong and an undercover operative wherein Mr. Fong described a training program he was preparing and its possible use by HTS. The matter in dispute here is whether Mr. Fong's actions went beyond mere plans and preparation.

[3] The government's decision not to charge compiling and archiving the materials is reflective of the lack of evidence concerning whether Mr. Fong had reviewed the manual in advance of sending the link.

Charles D. Swift, CLCMA
*Pro Hac* Attorney for Fong
100 N. Central Expy, Suite 1010
Richardson, TX 75080
(972) 914-2507

By: /s/ Karren Kenney
Karren Kenney, Kenney Legal Defense
Attorney for Fong
2900 Bristol Street, Suite C204
Costa Mesa, CA 92626
(855) 505-5588