KARREN KENNEY, CA. SBN 174872
KENNEY LEGAL DEFENSE
2900 Bristol Street, Suite C204
Costa Mesa, CA 92626
TELEPHONE:(855) 505-5588
E-MAIL: KARREN.KENNEY@GMAIL.COM

CHARLES D. SWIFT, WA Bar No. 41671
CONSTITUTIONAL LAW CENTER FOR
MUSLIMS IN AMERICA
100 N. Central Expy. SUITE 1010
Richardson, TX  75080
TELEPHONE: (972) 914-2507
FAX: (972) 692-7454
EMAIL: CSWIFT@CLCMA.ORG

ATTORNEYS FOR THE DEFENDANT

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA | ) Case No.: SACR 20-00146-DOC |
| Plaintiff(s), | ) |
| vs. | ) |
| JASON FONG | ) |
| Defendant(s). | ) |

**MOTION IN LIMINE-DEFENDANT'S DAUBERT OBJECTIONS TO GOVERNMENT EXPERT'S PROPOSED TESTIMONY – COLIN DWYER**

Comes now Defendant, Jason Fong, and objects to the government's proposed expert testimony for Special Agent (SA) Colin Dwyer, FBI Special Weapons and Tactics. The government's expert disclosure includes proposed testimony on Mr. Fong's unrelated firearms, as well as testimony that would explain the contents of the materials Mr. Fong sent, including the

two military manuals. The testimony regarding Mr. Fong's uncharged firearms is irrelevant, prejudicial, and has no probative value. The testimony regarding the remainder of the testimony is unhelpful to the jury and unnecessary, and misleading to the jury. SA Dwyer's proposed testimony on these areas should be excluded.

I.   **FACTUAL BACKGROUND**

Mr. Fong is charged in four counts with attempting to provide material support or resources to Hayat Tahrir Al Sham (HTS), and Hamas.

**a.  Charges**

| Count | Charge | Type of Support | Foreign Terrorist Organization |
|-------|--------|-----------------|-------------------------------|
| 1 | Attempt to Provide Material Support to foreign terrorist organization on March 17, 2020 | services, including compiling, archiving, and providing tactical, combat, and weapons training materials and information regarding the making of chemical weapons and improvised explosive devices | Hayat Tahrir Al Sham (HTS) |
| 2 | Attempt to Provide Material Support to foreign terrorist organization on April 1, 2020 | services, including compiling, archiving, and providing tactical, combat, and weapons training materials and information regarding the making of chemical weapons and improvised explosive devices | HTS |
| 3 | Attempt to Provide Material Support to foreign terrorist organization on May 7, 2020 | services, including combat training and information regarding the making of boobytraps and improvised explosive devices | HTS |
| 4 | Attempt to Provide Material Support to foreign terrorist organization on May 18, 2020 | services and currency, including fundraising and money | Hamas |

**b.  Proposed Expert Testimony of SA Colin Dwyer**

The government intends to elicit testimony from SA Dwyer regarding Mr. Fong's unrelated guns, which are not the subject of any counts of the Indictment. This proposed testimony will discuss:

- The way defendant had magazines taped together when his room was searched could allow the user to reload the rifle faster and fire more rounds in a shorter period; and that the way defendant placed his firearms - for example under his pillow and in a makeshift

rack attached to his bed - and body armor staged in his bedroom would have allowed him to access and use them very quickly. Exhibit A.

Beyond defining what "weapons training", "tactical training", and "combat training" refer to, the government intends to elicit testimony from SA Dwyer that:

- The information defendant distributed on March 24, 2020 (Bates 1328-29) is tactical building entry techniques used by military and law enforcement and that this information is generally known as close quarters battle (also referred to as "CQB"),

The government also intends to elicit testimony that:

- The information in some materials that were shared outlines how to-make weapons, which is considered weapons training, and could be used in combat and tactical training;

• USA _ 019267 -68 contains a general outline of weapons, tactical, and combat training;
• USA _19270-7 4 outlines information on manufacturing firearms;
• The replica of the "Improvised Munitions Black Book," which is based in part on a 1969 U.S. Army manual titled the "TM 31-210 Improvised Munitions Handbook," provides and outlines weapons training and manufacturing information, combat, and tactical training;
• The "FM 5-31 Booby traps" manual provides and outlines weapons, combat, and tactical training;

• The materials contained in the above-reference manuals are offensive in nature and would have limited, if any, utility for civilian application or personal protection; and The above-mentioned information and manuals can be used in the context of ambushes. Exhibit A.

## II.    LEGAL STANDARDS

### a.  Expert testimony must be relevant to proving a material fact at issue

Federal Rule of Evidence 702 requires that the expert testimony "assist the trier of fact to understand the evidence or to determine a fact in issue . . ."). Federal Rule of Evidence 401, states that evidence is relevant if it tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evid. 401.

Once qualified, an expert may testify within their area of expertise so long as the expert's testimony "is both relevant and reliable." *Cooper*, 510 F.3d at 942 (citation omitted); *see also*

*Daubert* I, 509 U.S. at 589. In carrying out this responsibility, a court has discretion in determining what evidence is relevant, and helpful to the trier of fact. *See United States v. Cordoba*, 104 F.3d 225, 228 (9th Cir. 1997) ("District Courts must strike the appropriate balance between admitting reliable, helpful expert testimony and excluding misleading or confusing testimony to achieve the flexible approach outlined in *Daubert [I]*.") (citation omitted).

The Ninth Circuit has articulated a two-prong analysis for admissibility of a qualified expert's testimony. First, the proffered testimony must be reliable, i.e., the expert's testimony reflects scientific knowledge, the findings are derived by the scientific method, and the work product amounts to "good science." *Daubert v. Merrell Dow Pharm.*, 43 F.3d 1311, 1315 (9th Cir. 1995) ("Daubert II") (citation and quotation signals omitted). The defendant does not dispute the qualifications of SA Dwyer.

The second prong, requires the testimony to meet the "fit" requirement of relevancy, i.e., "it logically advances a material aspect of the proposing party's case." Id. A court's determination of relevancy "must be 'tied to the facts' of [the] particular case.'" *Coope*r, 510 F.3d at 942 (quoting Kumho Tire, 526 U.S. at 150) (internal quotation signals omitted).

The Ninth Circuit's "fit" requirement, is directed "primarily to relevance." *Daubert I*, 509 U.S. at 591.   "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Id*. (internal quotations omitted).

**b.    Power of expert testimony requires Rule 403 balancing, and not mislead the jury**

However, the "fit" requirement is not merely a reiteration of the general relevancy requirement under Rule 402. *Daubert II*, 43 F.3d at 1321 n.17. Instead, such a determination is meant to take into account that "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over

experts than over lay witnesses." *Daubert I*, 509 U.S. at 595 (citation and quotation signals omitted). "Federal judges must therefore exclude proffered scientific evidence under Rules 702 and 403 unless they are convinced that [the evidence] speaks clearly and directly to an issue in dispute in the case, and that it will not mislead the jury." *Daubert II*, 43 F.3d at 1321 n.17.

### III.    ARGUMENT

The government's proposed testimony for SA Dwyer is not necessary to prove any fact at issue for any of the charges. The proposed testimony regarding Mr. Fong's guns is not just irrelevant, it is highly prejudicial and has no probative value. The only relevant portions of the proposed testimony relate to Count Three, concerning attempted provision of actual training. But for that count, the testimony is unnecessary and would mislead the jury as to the issues in the case.

### a. SA Dwyer's proposed testimony regarding Mr. Fong's unrelated and uncharged guns is not relevant to any fact in issue

The government wants to compound the Rule 404(b) and Rule 403 issues related to evidence of Mr. Fong's unrelated firearms by also admitting expert testimony related to Mr. Fong's firearms.  But the government has not articulated any possible reason that Mr. Fong's guns, or SA Dwyer's commentary that they would be able to reload quickly and access quickly, would be relevant to any fact at issue in this case.

Mr. Fong is charged with attempting to provide material support, in the form of the various services outlined above, to HTS and Hamas. Mr. Fong's unrelated and uncharged guns are not relevant to any of the attempted provision of material support charges. The defense has previously objected to inadmissible evidence relating to Mr. Fong's guns in its Rule 404(b) motion. Doc. 161 at 15-17.

**b. SA Dwyer's proposed testimony regarding Mr. Fong's unrelated and uncharged guns is more prejudicial than probative**

What SA Dwyer's proposed testimony would do instead is mislead the jury by focusing attention away from the issue in dispute, and would scare the jury by implying Mr. Fong was some sort of active shooter in the making, or that he was prepared for some sort of shootout. There is no evidence of this, and Mr. Fong is not charged with any such activity. In fact, when Mr. Fong was interviewed by the FBI and arrested he was very cooperative, peaceful, and there were no incidents involved in the process.

The unrelated evidence of Mr. Fong's guns is highly prejudicial and has no probative value for the charged counts. Misleading the jury by creating an image of a dangerous potential shooter will distract them from the elements of the offense the government must prove: that there was sufficient coordination with, or direction from, HTS, and that the digital materials were provided. This is the precise prejudice advised against in *Daubert I*, and why this Court exercises more control over expert witnesses than lay witnesses.  For these reasons, SA Dwyer's proffered expert testimony related to Mr. Fong's unrelated firearms fail the Rule 403 expert balancing test and should be excluded.

**c. SA Dwyer's proposed testimony on the contents of the materials is unnecessary and irrelevant**

The other proposed testimony for SA Dwyer concerns explaining some of the materials Mr. Fong sent, particularly the manuals. Expert testimony on understanding that the military manuals and other military or weapons training information is unnecessary because the contents of these materials are obvious. SA Dwyer's proposed testimony would thus be unhelpful to the jury, and irrelevant.

To prove Counts One and Two, the government must establish that Mr. Fong knowingly attempted to provide the service of compiling tactical, combat, and weapons training materials to

HTS; at the direction of, or in coordination with, HTS; and that Mr. Fong knew HTS was a foreign terrorist organization, or engaged in terrorist activities.

What Count's One and Two do not require, is proof of the value of the materials provided to the terrorist organization in furthering its activities. This is because the materials, in and of themselves, do not constitute material support in the way that a tangible item such as currency does. *See United States v. Abu-Jihaad*, 600 F. Supp. 2d 362 (D. Conn. 2009) (holding that providing an electronic copy of a carrier battle groups transit plan through the straits of Malacca did not constitute material support in and of itself).

SA Dwyer's proposed expert testimony concerning the documents Mr. Fong allegedly complied, archived and provided to HTS, therefore does not meet the relevance requirement of Rule 702 as it does not "logically advance a material aspect of the charged conduct."

**d. SA Dwyer's proposed testimony concerning the materials is more prejudicial than probative.**

SA Dwyers's proposed testimony regarding the materials Mr. Fong sent does not speak clearly and directly to an issue in dispute in the case as required under *Daubert I.* As explained above, expert testimony describing and explaining the nature of the materials posted by Mr. Fong on his Signal chat group is not directly relevant to any elements of the charged offense. Whatever tangential relevance the testimony might have, it is collateral and does nothing to establish the issue in dispute - whether Mr. Fong's activities were sufficiently coordinated with, or directed by, HTS, to constitute a service to HTS.

What the testimony would do instead is mislead the jury by overemphasizing the contents of the materials. It would focus attention away from the issue in dispute which the jury must decide: whether there was sufficient coordination with, or direction from, HTS. It would also scare the jury by spending significant time explaining the different types of weapons training, tactical

training, combat training, and categorizing the training as "offensive", all of which is irrelevant to proving any fact at issue.

To reach this conclusion, the Court the outcome of the material support charge in *Abu Jihad* is instructive. *United States v. Abu-Jihaad*, 600 F. Supp. 2d 362 (D. Conn. 2009). In *Abu Jihad* the defendant was charged both with material support and unlawfully disclosing national defense information. *Id.* at 364. The disclosing defense information Count necessarily was supported by expert testimony concerning the value of the information. *Id.* at 385. The jury returned a guilty verdict on both counts. Post-verdict, the Court upheld the verdict concerning the unlawful dissemination of defense information, but struck down the jury's verdict on the material support charge on the basis of insufficient evidence, pointing out that the government had presented no evidence of coordination between the defendant and Al Qaeda.

The most logical explanation for the jury's verdict was that the jury confused the value of defense information for material support in the form of personnel. The same risk is present, here. Namely that the jury will focus on the nature and contents of the materials provided rather than the relationship between Mr. Fong and HTS. For these reasons, SA Dwyer's proffered expert testimony related to the materials fails the Rule 403 expert balancing test set out in *Daubert I.*

### e. Count Three

Count Three differs from Counts One and Two, in as much as it charges attempting to provide training instead of compiling and archiving the materials that Mr. Fong allegedly attempted to provide to HTS. Training, however, does not change the analysis.

The term "training" in the context of material support is defined in 18 U.S.C. 2339A(b)(2) as "instruction or teaching designed to impart a specific skill, as opposed to general knowledge." The material that the government proffers in SA Dwyer's expert testimony for Count Three is information about what is contained in the 1965 Army booby-traps manual. There is no evidence

that Mr. Fong used the manual as part of a training presentation he conducted, or that he even possessed the manual.  Instead, the evidence is that Mr. Fong provided a link to the website where the manual could be found.

While providing a link to a website may be sufficient to constitute providing material support if sufficiently coordinated or directed, it is not providing training.  Thus, whether the materials themselves if incorporated into a presentation by Mr. Fong could constitute training is irrelevant to the training allegation.[1]  .

The analysis is the same when it comes to the alternative allegation that Mr. Fong provided the manual via a link to a website where it could be found and downloaded, as with respect to the materials charged in Counts One and Two.  If anything, the probative value of expert testimony regarding the 1965 manual is even less than that of expert testimony concerning the materials allegedly provided in Counts One and Two as  there is no direct evidence that Mr. Fong read the manual before sending the link, and it is self-explanatory what the manual is about.[2]

For these reasons expert testimony concerning the 1965 booby traps manual should also be excluded under the *Daubert II* test for relevance and for its prejudicial effect.

## IV.       CONCLUSION

For the above stated reasons, the defendant prays that this court exclude the proffered expert testimony of SA Dwyer.

---

[1] The defense understands the training allegation to arise from the discussion between Mr. Fong and an undercover operative wherein Mr. Fong described a training program he was preparing and its possible use by HTS. The matter in dispute here is whether Mr. Fong's actions went beyond mere plans and preparation, or were at the direction of, or in coordination with, HTS.

[2] The government's decision not to charge compiling and archiving is reflective of the lack of evidence concerning whether Mr. Fong had reviewed the manual in advance of sending the link.

Respectfully submitted this 9ᵗʰ day of December 2022.


By: /s/ Charles Swift
Charles D. Swift, CLCMA
*Pro Hac* Attorney for Fong
100 N. Central Expy, Suite 1010
Richardson, TX 75080
(972) 914-2507


By: /s/ Karren Kenney
Karren Kenney, Kenney Legal Defense
Attorney for Fong
2900 Bristol Street, Suite C204
Costa Mesa, CA 92626
(855) 505-5588