KARREN KENNEY, CA. SBN 174872
KENNEY LEGAL DEFENSE
2900 Bristol Street, Suite C204
Costa Mesa, CA 92626
TELEPHONE:(855) 505-5588
E-MAIL: KARREN.KENNEY@GMAIL.COM

CHARLES D. SWIFT, WA Bar No. 41671
CONSTITUTIONAL LAW CENTER FOR
MUSLIMS IN AMERICA
100 N. Central Expy. SUITE 1010
Richardson, TX  75080
TELEPHONE: (972) 914-2507
FAX: (972) 692-7454
EMAIL: CSWIFT@CLCMA.ORG

ATTORNEYS FOR THE DEFENDANT

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>　　　　　　Plaintiff(s),<br><br>　vs.<br><br>JASON FONG<br><br>　　　　　　Defendant(s). | Case No.: SACR 20-00146-DOC |

**MOTION IN LIMINE-DEFENDANT'S DAUBERT OBJECTIONS TO GOVERNMENT EXPERT'S PROPOSED TESTIMONY – MATTHEW LEVITT**

Comes now Defendant, Jason Fong, and objects to portions of the government's proposed expert testimony for Matthew Levitt, Ph.D. The government's expert disclosure includes sections of proposed testimony that are not relevant to any facts of consequence that are at issue, are more prejudicial than probative, and risk misleading the jury. The defense request that these portions of Dr. Levitt's testimony be excluded.

### A. FACTUAL BACKGROUND

Mr. Fong is charged in four counts with attempting to provide material support or resources to Hayat Tahrir Al Sham (HTS), and Hamas.

### a. Charges

| Count | Charge | Type of Support | Foreign Terrorist Organization |
|---|---|---|---|
| 1 | Attempt to Provide Material Support to foreign terrorist organization on March 17, 2020 | services, including compiling, archiving, and providing tactical, combat, and weapons training materials and information regarding the making of chemical weapons and improvised explosive devices | Hayat Tahrir Al Sham (HTS) |
| 2 | Attempt to Provide Material Support to foreign terrorist organization on April 1, 2020 | services, including compiling, archiving, and providing tactical, combat, and weapons training materials and information regarding the making of chemical weapons and improvised explosive devices | HTS |
| 3 | Attempt to Provide Material Support to foreign terrorist organization on May 7, 2020 | services, including combat training and information regarding the making of boobytraps and improvised explosive devices | HTS |
| 4 | Attempt to Provide Material Support to foreign terrorist organization on May 18, 2020 | services and currency, including fundraising and money | Hamas |

### b. Proposed Expert Testimony of Dr. Matthew Levitt (Exhibit A)

In addition to testimony regarding Hayat Tahrir al-Sham (HTS) and Hamas, the government intends to elicit testimony from Dr. Levitt on the following other foreign terrorist organizations (FTOs) and other groups that are not designated:

- Al Qa'ida – including testimony regarding its designation, its aliases, affiliation with al-Shabaab, and their tactics involving violence and armed attacks.

- Islamic State of Iraq and the Levant (ISIL)/ISIS – including testimony regarding its designation, aliases, and an FTO in the Philippines, Abu Sayyaf Group, its alignment with AQ and ISIS, and their tactics involving violence and armed attacks.

- Ajnad Al Kavkaz, Incite the Believers (ITB), and Khorasan Group including testimony regarding its connection to AQ affiliate, Al Nusrah Front.

The government further proffers it intends elicit testimony from Dr. Levitt regarding the following individuals and FTO ideology:

- Anwar al-Awlaki – including testimony of his background, AQ and its affiliate connections, writings and lectures that provided an ideological catalyst for other jihadists, his encouragement of American Muslims to emigrate for hijrah, or to wage violent jihad in the US.

- FTOs goals and ideology- including testimony regarding the fundamentalist version of Islam the FTOs espouse, that ISIS and AQ supported the use of violence (rape, beheadings, burning people alive etc.),and promoted use of violence in Europe and the US.

In addition to providing testimony regarding the common meaning of terms found in online discussions concerning religiously motivated participation in combat, the government intends to elicit testimony regarding profile testimony from Dr. Levitt:

- "that individuals radicalized by common aspects of these FTOs extremist ideology have sometimes considered seeking to join one of these FTO's before later deciding to join or support another."

- It is common for individuals who embark on violent jihad to adopt a nom de guerre, often referred to as a *kunya*, that symbolizes their identity as a holy warrior.

The government intends to elicit testimony regarding terminology:

- That specific terms and concepts used by defendant and others he communicated with are commonly used by supporters of the stated FTOs to describe themselves and their world. Terms including *jihad*, *martyrdom, kuffar, mujahid, shaheed, Jannah, murtaddin*.

- Testimony that the meanings of words and expressions used in defendant's communications such as *hijrah*, *sham*, *Baqiyah*, *haram, fitna, Mujahideen Amerikeoon, kaffir, Dar ul-Harb, khawariji*, and *haq*, are significant given their connection to beliefs associated with the FTOs.

The government intends to elicit testimony regarding the use of social media and encrypted communications and platforms by terrorist groups, and that cryptocurrency is sometimes used by FTOs.

### B. LEGAL STANDARDS

**a. Expert testimony must be relevant to proving a material fact at issue**

Federal Rule of Evidence 702 requires that expert testimony "assist the trier of fact to understand the evidence or to determine a fact in issue . . . ."). Federal Rule of Evidence 401, states that evidence is relevant if it tends to make the existence of any fact that is of consequence

to the determination of the action more probable or less probable than it would be without the evidence. Fed. R. Evid. 401.

Once qualified, an expert may testify within their area of expertise so long as the expert's testimony "is both relevant and reliable." *Cooper*, 510 F.3d at 942 (citation omitted); *see also Daubert I*, 509 U.S. at 589. In carrying out this responsibility, a court has discretion in determining what evidence is relevant, and helpful to the trier of fact. *See United States v. Cordoba*, 104 F.3d 225, 228 (9th Cir. 1997) ("District Courts must strike the appropriate balance between admitting reliable, helpful expert testimony and excluding misleading or confusing testimony to achieve the flexible approach outlined in *Daubert [I]*.") (citation omitted).

The Ninth Circuit has articulated a two-prong analysis for admissibility of a qualified expert's testimony. First, the proffered testimony must be reliable, i.e., the expert's testimony reflects scientific knowledge, the findings are derived by the scientific method, and the work product amounts to "good science." *Daubert v. Merrell Dow Pharm.*, 43 F.3d 1311, 1315 (9th Cir. 1995) ("Daubert II") (citation and quotation signals omitted). The defendant does not dispute the qualifications of Mr. Hong.

The second prong, requires the testimony to meet the "fit" requirement of relevancy, i.e., "it logically advances a material aspect of the proposing party's case." Id. A court's determination of relevancy "must be 'tied to the facts' of [the] particular case.'" *Cooper*, 510 F.3d at 942 (quoting Kumho Tire, 526 U.S. at 150) (internal quotation signals omitted).

The Ninth Circuit's "fit" requirement, is directed "primarily to relevance." *Daubert I*, 509 U.S. at 591.   "Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Id*. (internal quotations omitted).

### b. Power of expert testimony requires Rule 403 balancing, and not misleading the jury

However, the "fit" requirement is not merely a reiteration of the general relevancy requirement under Rule 402. *Daubert II*, 43 F.3d at 1321 n.17. Instead, such a determination is

meant to take into account that "[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses." *Daubert I*, 509 U.S. at 595 (citation and quotation signals omitted). "Federal judges must therefore exclude proffered scientific evidence under Rules 702 and 403 unless they are convinced that [the evidence] speaks clearly and directly to an issue in dispute in the case, and that it will not mislead the jury." *Daubert II*, 43 F.3d at 1321 n.17.

### c. Profile evidence is inadmissible as substantive evidence of guilty with limited exceptions

Criminal profiling evidence is itself inadmissible as substantive evidence of guilt with few exceptions, as this Circuit recognized in *United States v. Wells*. 879 F.3d 900, 921 (9th Cir. 2018) ("[T]estimony of criminal profiles is highly undesirable as substantive evidence because it is of low probativity and inherently prejudicial."). Profile evidence is only permissible in narrow and limited circumstances (i.e. background evidence, investigative tool, or rebuttal evidence). *Id.*; *see also United States v. Lui*, 941 F.2d 844 (9th Cir. 1991) (noting that profile evidence may be admitted for limited purposes, such as to show how an arrest occurred). Courts scrutinize, however, whether the government's asserted purpose is the true purpose and whether the true purpose is proper. *See United States v. Quigley*, 890 F.2d 1019, 1023-24 (8th Cir. 1989) ("This point by point examination of profile characteristics with specific reference to defendant constitutes use of the profile not as background to explain or justify an investigative stop, but as substantive evidence that defendant fits the profile and, therefore, must have intended to distribute the cocaine in his possession.").

## C. ARGUMENT

### a. Portions of Dr. Levitt's testimony should be excluded because they are irrelevant to any fact of consequence

Mr. Fong is charged with attempting to provide material support, in the form of the various services outlined above, to HTS (Counts One through Three) and Hamas (Count Four). To prove Counts One through Three, the government must prove that Mr. Fong knowingly attempted to provide the service of compiling tactical, combat, and weapons training materials to HTS; at the direction of, or in coordination with, HTS; and that Mr. Fong knew HTS was a foreign terrorist organization, or engaged in terrorist activities. For Count Four they must prove Mr. Fong knowingly attempted to provide fundraising and currency to Hamas, at the direction of, or in coordination with Hamas, and that Mr. Fong knew Hamas was a foreign terrorist organization, or engaged in terrorist activities.

Mr. Fong is not charged in any Count with attempting to provide material support to ISIS, Al Qa'idah, Ajnad Al Kavkaz, Khorasan, ITB, or al-Shabaab. There is no reason for the government to elicit testimony on these uncharged foreign terrorist organizations. They are not relevant to proving a fact of consequence to any element of the charged counts and would have a more prejudicial impact on the jury than any probative value.

### b. Portions of Dr. Levitt's testimony should be excluded because they would be more prejudicial than probative and will mislead the jury

Mr. Fong is charged with attempting to provide support to HTS and Hamas. But the government is seeking to elicit highly prejudicial testimony about unrelated, infamous terrorist organizations. This testimony would include Al Qaeda and ISIS's use of violence including rape, beheadings, burning people alive, and more. The government also seeks to elicit evidence of ISIS and Al Qaeda's promotion of the use of violence in Europe and the US.

This testimony of uncharged FTOs is highly prejudicial because it will invoke fear of AQ and ISIS terrorist attacks against the United States, it will invoke the hatred of Al Qaeda and memories of 9/11, it will instill disgust and horror in the jury of the bloody and brutal tactics these other organizations use. In Al-Moayad, the defendants were charged with conspiring and attempting to provide material support to Hamas and Al-Qaeda, and the Second Circuit found that the impact of evidence of the organizations activities caused undue prejudice. *United States v. Al-Moayad*, 545 F.3d 139, 166 (2d Cir. 2008). The Second Circuit noted,

> [t]here can be little doubt that in the wake of the events of September 11, 2001, evidence linking a defendant to terrorism in a trial in which he is not charged with terrorism is likely to cause undue prejudice… In this case, the defendants were charged with conspiring to, attempting to, and providing material support to Hamas and Al-Qaeda, but not with violent terrorist acts like the deadly bus bombing about which Black testified. Given the inflammatory, highly charged, and extensive nature of [expert's] testimony, we believe there was a significant danger that it caused undue prejudice, and lure[d] the fact finder into declaring guilt on a ground different from proof specific to the offense charged. *United States v. Al-Moayad*, 545 F.3d 139, 166 (2d Cir. 2008) (internal citations omitted).

Further, the testimony would also mislead the jury by focusing attention away from the issue in dispute, whether Jason knew that HTS and Hamas were terrorist organizations or engaged in terrorist activities. In fact, HTS and Hamas have never called for attacks against the United States, unlike AQ and ISIS. Mr. Fong also specifically denounces acts of rape, beheadings, and other violence of terrorist organizations. This prejudicial and misleading testimony will create a serious risk that the jury will convict Mr. Fong out of its fear and disgust of ISIS, AQ, Khorasan, ICT, and other groups that Mr. Fong is not charged with attempting to support. Because of this risk and the increased control the Court has over expert witness testimony, this Court should exclude the proffered testimony as it does not speak directly to facts at issue and has a high likelihood of misleading the jury. *See Daubert II*, 43 F.3d at 1321 n.17.

    c. **Portions of Dr. Levitt's testimony should be excluded as inadmissible profile-type evidence offered for an improper purpose**

Portions of the government's proffered testimony for Dr. Levitt include several pieces of profile-type evidence that are inadmissible because they are offered for an improper purpose. This proposed testimony will state, "many individuals discover the ideological content espoused by these groups online in the form of sermons, books, posts on chat forums and social media platforms, and propaganda videos. One of the most popular ideologues found online is Anwar al-Awlaki" and that "individuals radicalized by common aspects of these FTOs extremist ideology have sometimes considered seeking to join one of these FTO's before later deciding to join or support another."

This testimony is inadmissible because it will suggest that the stereotypical "jihadist" is radicalized online and often through Anwar al-Awlaki. That shifts the government burden from having to prove the elements of the offenses, to having to prove that Mr. Fong was radicalized online and read something about Anwar al Awlaki. There is no evidence or information such a profile is reliable or admissible, and it will mislead the jury as to what Mr. Fong is charged with.

The proposed testimony will also cover specific terms and concepts used by Mr. Fong and others he communicated with, but it will be framed as language that is commonly used by supporters of the stated FTOs to describe themselves and their world, or as language that is connected to the beliefs of the FTOs. These terms include *jihad*, *martyrdom*, *kuffar*, *mujahid*, *shaheed*, *Jannah*, and *murtaddin*, *hijrah*, *sham*, *Baqiyah*, *haram*, *fitna*, *Mujahideen Amerikeoon*, *kaffir*, *Dar ul-Harb*, *khawariji*, and *haq*.

This testimony is only admissible to define the terms. But characterizing Mr. Fong's use of the terms as using the language that terrorist organization supporters use, or as using language connected to the beliefs of foreign terrorist organizations, presents a profile of an FTO supporter that Mr. Fong fits, because he uses their supposed language. In this Circuit, Courts have admitted testimony on specific terminology but not testimony that would be better gained from lay

witnesses. *See United States v. Flores*, No. 12-cr-00119-SI, 2014 U.S. Dist. LEXIS 184440, 2014 WL 12686740, at *1 (N.D. Cal. June 16, 2014) (admitting expert testimony on gang colors and symbols, tattoos and graffiti, and specific terminology but not testimony "that would more properly be elicited from percipient witnesses," such as the contention "that certain gangs operate in South San Francisco," "that they committed acts of violence to enhance the gang's standing," "that rival gangs fight and engage in retaliatory killings, and that they dislike 'snitches'"); *see also United States v. Williams*, No. 13-cr-00764-WHO, 2016 U.S. Dist. LEXIS 30318, 2016 WL 899145, at *5 (N.D. Cal. Mar. 9, 2016) (allowing expert testimony on a gang's "common slang," "gang territory," and "gang symbols," but excluding opinions related to "gang alliances and rivalries," "general characteristics] of gangs, including common values and behaviors," and gangs' "use of rap music").

It is apparent from the government's disclosure of Dr. Levitt's proposed testimony that the government does not seek to offer the profile-type portions of the testimony for a proper purpose. Dr. Levitt's profile portions on behavior and language typical of FTO supporters is not being used to explain why the government was investigating Mr. Fong, nor is it offered in rebuttal to the defendant opening the door, or as background. Instead, the government improperly seeks to demonstrate that Mr. Fong's actions and speech are in conformance with his stereotype of terrorist organization supporters. Mr. Fong requests that this Court exclude the profile-type evidence.

**CONCLUSION**

For the reasons above, the defendant respectfully requests that this Court exclude the ireelevant and highly prejudicial portions of Dr. Levitt's proposed testimony.

Respectfully submitted this 9th day of December 2022.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

By: /s/ Charles Swift
Charles D. Swift, CLCMA
*Pro Hac* Attorney for Fong
100 N. Central Expy, Suite 1010
Richardson, TX 75080
(972) 914-2507

By: /s/ Karren Kenney
Karren Kenney, Kenney Legal Defense
Attorney for Fong
2900 Bristol Street, Suite C204
Costa Mesa, CA 92626
(855) 505-5588