KARREN KENNEY, CA. SBN 174872
KENNEY LEGAL DEFENSE
2900 Bristol Street, Suite C204
Costa Mesa, CA 92626
TELEPHONE:(855) 505-5588
E-MAIL: KARREN.KENNEY@GMAIL.COM

CHARLES D. SWIFT, WA Bar No. 41671
CONSTITUTIONAL LAW CENTER FOR
MUSLIMS IN AMERICA
100 N. Central Expy. SUITE 1010
Richardson, TX  75080
TELEPHONE: (972) 914-2507
FAX: (972) 692-7454
EMAIL: CSWIFT@CLCMA.ORG

ATTORNEYS FOR THE DEFENDANT

JASON FONG

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No.: SACR 20-00146-DOC |
| Plaintiff(s), | ) ) ) | |
| vs. | ) ) | |
| JASON FONG | ) ) ) | **DEFENDANT'S REPLY TO GOVERNMENT MOTION TO EXCLUDE EXPERT TESTIMONY OF DR. PEGEEN CRONIN, FOR EVIDENCE OF INSANITY OR MENTAL DISEASE OR DEFECT** |
| Defendant(s). | ) ) ) ) ) ) ) | |

- 1 -

Comes now the defendant Jason Fong, through counsel, in opposition to the government's motion to preclude the testimony of Dr. Pegeen Cronin. The defendant respectfully requests this court permit the testimony of Dr. Cronin concerning the defendant's diagnosis of Autism Spectrum Disorder, and its impact on the defendant's specific intent in the alleged attempts to provide material support to HTS and Hamas – designated foreign terrorist organizations (FTOs).

**Background**

The defendant, Jason Fong, allegedly created a Signal chat group entitled "Mujahedeen in America" in February 2020. The stated purpose for this group chat was to provide training to American Muslims regarding self-defense to be utilized in the event of a civil war in the United States of America.[1] The defendant was a member of the US Marine Corp Reserve. Between February-May 2020 the defendant expressed his intent to create a curriculum/training plan regarding military skills including tactics, firearms, explosive devices, first aid, survival gear, etc. which he would then give to the group. As part the training plan/curriculum the defendant posted screenshots from military and other training materials that Mr. Fong intended to provide training on as part of the curriculum.

The government charges that the materials posted by Mr. Fong on Mujahideen in America on March 17, 2020, regarding making of chemical weapons and improvised explosives constituted attempted material support of Hay'at Tahrir al- Sham ("HTS").  The government further charges Mr. Fong for again posting additional screenshots of  materials on Mujahideen in America concerning tactical combat, weapons training materials, and information regarding the making of chemical weapons and improvised explosive devices on April 1, 2020 as material support to HTS.

---

[1] Prior to establishing Mujhaideen in America, the defendant had participated in other social media groups concerning the potential for a civil war in America, and the need for individuals to prepare for such an event.

- 2 -

The government allegations of attempted material support arise from the presence of at least one or two undercover operatives who had allegedly expressed the desire to travel to Syria and join HTS on the Mujahideen in America group chat.  As explained further below the defense maintains that for the charged activities on March 17, 2020 and April 1, 2020 the defendant's actions must have been specifically intended to benefit HTS, and be done in coordination or at the direction of HTS.

Outside of the Mujahideen in America group chat, the government charges Mr. Fong with providing combat training and information regarding the making of booby-traps and improvised explosives. This charge stems from a private chat Mr. Fong allegedly had with two undercover operatives on May 7, 2020. During this chat one of the undercovers posed as an HTS commander. The factual basis for the charge is that Mr. Fong spontaneously provided a link to an Army 1965 Manual concerning booby traps, and Mr. Fong's discussion of the training program and the potential of that training program to be used by HTS fighters.

The defense again maintains that for this discussion to constitute attempted material support, Mr. Fong must have had the specific intent to provide material support to HTS, and Mr. Fong must have believed that his actions were done in coordination with, or at the direction of, HTS.[2]

Following the alleged private chat, Mr. Fong terminated the Mujhahideen in America chat in order to remove the two undercovers associated with HTS from further participation. Thereafter, Mr. Fong started a new chat on May 8, 2020 on the Signal app named Ikhwan, Ikhwan is Arabic for

---

[2] The government contends in their Response that the defense's formulation of the *mens rea* required for the offense of attempt to provide material support or resources to an FTO is erroneous because the offense does not require defendant to have actually taken "actions . . . under the direction of, or in coordination with foreign groups . . .". Dkt. 196.2 at 14 n.6 citing *United States v. Mehanna*, 735 F.3d 32, 50 (1st Cir. 2013) ("a direct link is neither required by statute nor mandated by [Holder]". The First Circuit, however, has embraced the "in coordination with, or at the direction of" jury instruction for "services" in *United States v. Wright,* 937 F.3d 8, (1st Cir. 2019). In *Wright*, the trial court gave the instruction that services had to be done in coordination with, or at the direction of, the foreign terrorist organization. The appellate court implicitly endorsed the instruction by reviewing the sufficiency of the evidence utilizing the "in coordination with, or at the direction of" requirement. *Id*. at 24 (1st Cir. 2019).

Brotherhood. In this chat on May 18, 2020 Mr. Fong expressed that he wanted to get support for Palestine as he felt it was largely neglected. Thereafter Mr. Fong discussed with other group members if Hamas was worthy or not, and shared a link for a webpage affiliated with Hamas concerning Bitcoin donations.

The government maintains that Mr. Fong's activities on May 18, 2020 constitutes attempted material support, in the form of attempted fundraising on behalf of Hamas, and the attempted provision of currency to Hamas.

The defense maintains that Mr. Fong was not acting in coordination with, or under the direction of, Hamas when he expressed his belief that Hamas was worthy of support, and therefore his actions constituted independent advocacy – protected First Amendment activity. The defense further maintains that Mr. Fong's actions constituted mere plans and preparations rather as a substantial step.

In support of the above arguments the defense intends to offer testimony of Dr. Pegeen Cronin to rebut that the defendant had the specific intent to support HTS and Hamas, and the closely related requirement that Mr. Fong acted in coordination with, or at the direction of, either FTO.  Specifically, the defense intends to offer Dr. Cronin's testimony that Mr. Fong presents with Autism Spectrum Disorder (ASD) that is notable for impairments in social perception and social communication, and repetitive behaviors/interests. Further with respect to the charges, the defense intends to offer Dr. Cronin's opinions that on March 17, 2020 and April 1, 2020 Mr. Fong demonstrated characteristics in his conversations that were consistent with Autism Spectrum Disorder, and that his actions were consistent with all-consuming activities which focused on what types of training materials should be included in his proposed training plan/curriculum, and that the defendant would have difficulty picking up on certain social cues.

With regards to May 7th, 2020 the defense intends to offer the opinion that Mr. Fong's discussion on that date is both consistent with someone on the Autism Spectrum to share information regarding their restricted interests in an environment devoid of social interactions. With regards to the May 18th, 2020 the defense intends to offer Dr. Cronin's opinions that Mr. Fong's discussions were consistent with Autism, and that it would be typical of someone with Autism to provide information and response to queries in an effort to return to their restricted areas without action.

**ARGUMENT**

>    1.  ***Expert testimony regarding Mr. Fong's mental condition is appropriate here because the charges require a specific intent***

18 U.S.C. 2339B is ordinarily a general intent crime.  In this case, however, because  Mr. Fong is charged with attempted support in all four counts, the government must show a specific intent to support the alleged designated foreign terrorist organizations.  The Ninth Circuit held in *United States v. Gracidas-Ulibarry*, 231 F.3d 1188, 1192 (9th Cir. 2000) "that Congress' use of the term "attempts" in a criminal statute manifested a requirement of specific intent to commit the crime attempted, even when the statute did not contain an explicit intent requirement." *Id* at 1192. (emphasis in the original). *Gracidas-Ulibarry*, was decided *enbanc* and unambiguously requires specific intent for attempts such as charged here.

The  *Gracidas-Ulibarry* Court explained:

> [t]he reason for requiring specific intent for attempt crimes is to resolve the uncertainty whether the defendant's purpose was indeed to engage in criminal, rather than innocent, conduct. This uncertainty is not present when the defendant has completed the underlying crime, because the completed act is itself culpable conduct. When the defendant's conduct does not constitute a completed criminal act, however, a heightened intent requirement is necessary to ensure that the conduct is truly culpable.  *Id* at 1193

*Gracidas-Ulibarry* Court held that to determine if the term attempt required a showing of specific intent, a Court should first look to the text of the statue and then the legislative history. *Id*.

With regards to the text, the  Court held that the in the absence of further definition, the term "attempt" implies the common law meaning that includes specific intent. *Id.*

Neither the text of 18 U.S.C. § 2339B nor its legislative history gives any indication that Congress intended not to incorporate the common law meaning of the term "attempt" requiring specific intent into the crime of attempted material support. While multiple other terms are defined directly in § 2339B, or incorporated through reference, the term attempt is not defined. Accordingly, in the absence of clear legislative history regarding the meaning of an attempt, an attempted material support charge under § 2339B requires the establishment of the specific intent to provide material support to a designated terrorist organization.

**2. The legislative history of 18 U.S.C. §§ 2339A and 2339B is silent as to the meaning of intent**

The legislative history is concerned with what constitutes material support and the appropriate maximum punishment, it is silent on what constitutes an attempt.[3] Accordingly applying *Gracidas-Ulibarry* this court should find that an attempt under 18 U.S.C. § 2339B requires the establishment of the specific intent to provide material support to a designated terrorist organization.

This court would not be alone in making such a requirement. The First Circuit *United States v. Mehanna*, 735 F.3d 32, 43-44 (1st Cir. 2013) analyzed the defendant's alleged attempted provision of personnel in violation of § 2339B from the perspective of whether the evidence showed "the defendant's (*Mehanna*) specific intent" in provision of himself as personnel to a terrorist organization. *Id* at 43-44. The First Circuit is consistent with the fact that attempted material support unlike material support requires a specific intent.

---

[3] The legislative history focuses on clarifying the definitions of what constitutes material support, and provided for increasing levels of punishment. *See* P.L. 108-458, §6603, 118 Stat. 3762 (2004); *see also* Intelligence Reform and Terrorism Prevention Act of 2004, *see also* P.L. 114-23, tit. VI, §704, 129 Stat. 300 (2015).

***3. Evidence of mental condition is admissible to rebut specific intent***

The *Gracidas-Ulibarry* Court explained "[t]he practical difference between these two levels of mental culpability is that certain defenses, such as voluntary intoxication and subjective mistake of fact, can negate culpability only for specific intent crimes." *Id* at 1196.

Although not listed, specific psychiatric evidence concerning the defendant's mental condition has also been recognized in the Ninth Circuit as a defense to specific intent. *See United States v. Frisbee*, 623 F. Supp. 1217, 1223 (N.D. Cal. 1985); *see also United States v. Twine*, 853 F.2d 676, 677 (9th Cir. 1988) (calling *Frisbee* "[t]he seminal case addressing this issue"). *Frisbee* focuses on "the proffered link or relationship between the specific psychiatric evidence offered and the *mens rea* at issue in the case." *United States v. Cameron* 907 F.2d, 1051, 067 n.31. (11th Cir. 1990). Admissibility turns on whether the evidence goes to the issue of specific intent, as opposed to "unarticulated, general psychiatric evidence of mental abnormality." *Id*. at 1054.

***4. Dr. Cronin's testimony goes to the specific intent***

In this case Dr. Cronin's proffered testimony provides the link or relationship to the specific intent to support the designated terrorist organizations required for admissibility. At issue is whether Mr. Fong specifically intended to support HTS, and Hamas. For practical purposes, this element merges with the "in coordination with, or at the direction of" requirement for the services charged in this case. Simply put, the evidence that would establish the services to be at the direction of, or in coordination with, HT, would likewise establish a specific intent for attempted provision of material support to the respective designated foreign terrorist organizations.

Dr. Cronin's testimony establishes that Mr. Fong falls on the autism spectrum and demonstrated traits consistent with autism when communicating on "Mujahedeen in America". Further, her proffered testimony establishes that it would be consistent with his autism for Mr. Fong to focus on his stated goal of creating a training program for American Muslims to use for self-

defense in the event of civil war, rather than focusing on how participants of the group might use the materials he furnished thereby negating the specific intent.  Likewise, Dr. Cronin's opinion that Mr. Fong exhibited symptoms of autism with respect to his research of what he posted in the Mujahedeen in America group and its interest to him as research, which would tend to negate that he had the specific intent to provide currency and or advocate for Hamas. Instead that Jason may simply have been engaged in a research project, specifically researching what group of Muslim's fighting oppressive governments was worthy of support and how the group could be supported, as opposed to taking a substantial step with the specific intent to support the group.

**5. *The cases cited by the government are not to the contrary***

In support of its argument, the government cites cases which are not analogous to Mr. Fong's case. The government cited *United States v. Litzky*, 18 F.4th 1296, 1303–04 (11th Cir. 2021) to note that expert testimony for a child pornography defendant regarding an intellectual disability was excludable even if the defendant's motive was the product of their mental condition. But in *Litzky*, the Court never addressed whether the child pornography offense was a general or specific intent crime. Instead it found that even if it was a specific intent crime, the expert testimony was inadmissible because it did not demonstrate how the psychiatric evidence would negate intent because the psychiatrist's report lacked "focus on the [defendant's] state of mind at the time of the alleged criminal incidents." *Id.* Here, Dr. Cronin's report does establish the link between the proffered psychiatric evidence and Mr. Fong's specific alleged online criminal conversations. Dr. Cronin's report applies her analysis to the specific charges laid out in Mr. Fong's indictment. Further, the government correctly notes that other cases have found proffered expert testimony that mental conditions like narcissistic personality disorder can potentially be relevant to specific intent charges such as aiding and assisting in the filing of a false tax return. Doc. 196.2 citing *United States v. Cohen*, 510 F.3d 1114, 1125 (9th Cir. 2007).

The government also cites *George v. United States*, No. 2:17-CV-337-WKW, 2020 WL 5507839, at *4 (M.D. Ala. Aug. 4, 2020), report and recommendation adopted, No. 2:17-CV-337-WKW, 2020 WL 5503645 (M.D. Ala. Sept. 11, 2020) where the Court rejected defendant's argument that his Asperger's syndrome negated his intent in the unlawful act of receipt of child pornography. That is a general intent crime, unlike the specific intent crimes Mr. Fong is charged with.

Here, the defense is not contesting that Mr. Fong made the statements in the chat groups or that he did not send the charged digital documents. Instead the defense is similar to that contended in *United States v. Fleury*, 20 F.4th 1353, 1360 (11th Cir. 2021), where defendant was charged with transmitting interstate threats online.[4] There, testimony regarding the defendant's autism was admissible  for the contention that the defendant did not have the requisite intent for conviction because he did not understand his actions would cause substantial emotion distress others. The defendant's father testified that the defendant has ADD and Autism Spectrum Disorder, and Obsessive Compulsive Disorder and existed in his own fantasy world. *Id.* The defense here is similarly contending, among other things, that Mr. Fong did not understand how his words and actions would be perceived by others and that his intent and purpose in his   actions was different from what the government contends.

**6. The government's objections regarding lack of specificity and methodology are misplaced**

The government argues that Dr. Cronin's failure to connect her diagnosis of Mr. Fong's autism with her opinions regarding how the diagnosis affected his conduct constitutes a failure to establish a valid scientific connection to the pertinent inquiry. Counsel disagrees. Dr. Cronin in fact

---

[4] The statute for the charges for making interstate threats, 18 U.S.C. 875(c), was considered by the Supreme Court in *Elonis v. United States*, 575 U.S. 723, 724, 135 S. Ct. 2001, 2003 (2015). These cases established a specific intent requirement for the statute, thus evidence regarding mental capacity is relevant and admissible if linked to negating that specific intent.

cannot opine as to whether Mr. Fong has the mental state while making statements and sending documents to support, and act in coordination with the FTOs. Such opinions are lay opnions left for the trier of fact.

But, Dr. Cronin can offer opinions on how Mr. Fong's autism affected his ability to perceive the impact, meaning, understanding, and implication of his actions, or to perceive and navigate the intentions of others. Rule 704(b) provides that "[i]n a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone." FED. R. EVID. 704(b). "Rule 704(b) applies to all instances in which expert testimony is offered as to mental state or a condition constituting an element of the crime charged or defense thereto." *United States v. Watson*, 260 F.3d 301, 308 (3d Cir. 2001) (citation omitted).

However, expert testimony *is* admissible if it merely "support[s] an inference or conclusion that the defendant did or did not have the requisite *mens rea*, so long as the expert does not draw the ultimate inference or conclusion for the jury and the ultimate inference or conclusion does not necessarily follow from the testimony." *United States v. Morales*, 108 F.3d 1031, 1038 (9th Cir. 1997). "It is only as to the last step in the inferential process-a conclusion as to the defendant's mental state-that Rule 704(b) commands the expert to be silent." *United States v. Dunn*, 846 F.2d 761, 762, 269 U.S. App. D.C. 373 (D.C. Cir. 1988). As one Court has observed, it is "a fine line" in evaluating whether an expert's testimony encroaches. *United States v. Watkins*, Case No. 91 CR 63, 1997 U.S. Dist. LEXIS 3710, at *1 (N.D. Ill. Mar. 27, 1997) (finding that under similar circumstances an expert could testify regarding the potential impact of a thought disorder on the defendant's ability perceive how his conduct affected others in relation to threats made against officers.)

Like *Watkins*, Dr. Cronin's opinion is both relevant and admissible because it does not constitute an opinion on the ultimate issue, as she does not apply the law to her opinion. Specifically, Dr. Cronin does not opine that Mr. Fong did not intend to support HTS or Hamas, or to act in coordination with, or at their direction, which is the ultimate issue. Likewise, the ultimate inference does not follow from Dr.Cronin's opinion because her testimony does not preclude the possibility that Mr. Fong had sufficient capacity to intend to act at the direction of, or in coordination with, HTS or Hamas. Dr. Cronin's qualifications to diagnose, and her diagnosis are well-established for the opinions she provides. For these reasons, the government's insistence that Dr. Cronin's testimony is inadmissible because she does not opine on the final inferences that are for the trier of fact alone, is misplaced.

**CONCLUSION**

For the reasons above, this Court should admit Dr. Cronin's proffered testimony.

Respectfully submitted this 3rd day of January, 2023,

By: /s/ Charles Swift
Charles D. Swift, CLCMA
*Pro Hac* Attorney for Fong
100 N. Central Expy, Suite 1010
Richardson, TX 75080
(972) 914-2507

By: /s/ Karren Kenney
Karren Kenney, Kenney Legal Defense
Attorney for Fong
2900 Bristol Street, Suite C204
Costa Mesa, CA 92626
(855) 505-5588